**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BLOCK, INC. SECURITIES LITIGATION<br><br>This Document Relates To:    All Actions | Master Case No. 1:22-cv-08636-RA |

**OFFICIAL INTELLIGENCE PTY LTD.'S OBJECTIONS TO**
**THE CONSOLIDATION AND LEADERSHIP ORDER**

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
Jeffrey S. Abraham
Michael J. Klein
450 Seventh Avenue, 38th Fl.
New York, New York 10123
Tel:    (212) 279-5050
Email: jabraham@aftlaw.com
mklein@aftlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
Yitzchak Eliezer Soloveichik
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel:    (212) 697-6484
Email: peretz@bgandg.com
soloveichik@bgandg.com

*Attorneys for Plaintiff Official Intelligence, Pty Ltd.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY ................................. 2

OBJECTIONS........................................................................................................................ 6

I.     PLAINTIFF SOTIROPOULOS' APPOINTMENT AS LEAD PLAINTIFF FOR THE EXCHANGE ACT CLAIMS DID NOT AND CANNOT EXTEND TO THE SECURITIES ACT CLAIMS........................................................................................ 6

II.    PLAINTIFF OFFICAL INTELLIGENCE'S SECURITIES ACT CLAIMS DIFFER MATERIALLY FROM THE EXCHANGE ACT CLAIMS FURTHER SUPPORTING APPOINTING SEPARATE LEAD PLAINTIFFS AND COUNSEL ............................................................................................................. 9

III.  COURTS IN SIMILAR SITUATIONS ALLOW FOR SEPARATE PROSECUTION OF SECURITIES ACT CLAIMS AND EXCHANGE ACT CLAIMS ............................................................................................................... 11

CONCLUSION..................................................................................................................... 16

**TABLE OF AUTHORITIES**

**Cases**

*Aaron v. SEC*,
446 U.S. 680 (1980)..................................................................................................... 10

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
568 U.S. 455 (2013)..................................................................................................... 11

*Axar Master Fund, Ltd. v. Bedford*,
806 F. App'x 35 (2d Cir. 2020) ..................................................................................... 9

*Bristol Cnty. Ret. Sys. v. Adient PLC*,
2022 WL 2824260 (2d Cir. July 20, 2022).................................................................. 11

*Citibank, N.A. v. Picard*,
212 L. Ed. 2d 217, 142 S. Ct. 1209 (2022).................................................................. 10

*Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*,
873 F.3d 85 (2d Cir. 2017) .................................................................................... 10, 11

*Feiner v. SS&C Technologies, Inc.*,
47 F. Supp. 2d 250 (D. Conn. 1999)............................................................................ 15

*Firefighters Pension & Relief Fund v. Bulmahn*,
2013 WL 6388583 (E.D. La. Dec. 6, 2013)................................................................. 14

*Freidus v. Barclays Bank PLC*,
734 F.3d 132 (2d Cir. 2013) .......................................................................................... 8

*Genesee Cty. Emples. Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*,
825 F. Supp. 2d 1082 (D.N.M. 2011) ............................................................................ 6

*Giarraputo v. UNUMProvident Corp.*,
2000 WL 1701294 (D. Me. Nov. 8, 2000) .................................................................. 14

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
____ U.S. ___, 141 S. Ct. 1951 (2021)....................................................................... 11

*Golla v. Neovasc, Inc.*,
2023 WL 2469770 (2d Cir. Mar. 13, 2023).................................................................. 10

*Gross v. AT&T Inc.*,
2019 WL 7759222 (S.D.N.Y. June 24, 2019) ............................................................. 14

*Harold Roucher Trust U/A DTD 09/21/72 v. Franklin Bank Corp.*,
2009 WL 1941864 (S.D. Tex. July 6, 2009)................................................................. 14

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004) ......................................................................................... 8

*In re Bernard L. Madoff Inv. Sec. LLC*,
12 F.4th 171 (2d Cir. 2021) ...................................................................................... 10

*In re BP, PLC Sec. Litig.*,
758 F. Supp. 2d 428 (S.D. Tex. 2010) ....................................................................... 14

*In re Carlotz, Inc. Sec. Litig.*,
2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) .......................................................... 7

*In re Cent. European Distrib. Corp. Sec. Litig.*,
2012 WL 5465799 (D.N.J. Nov. 8, 2012) ................................................... 11, 12, 13

*In re Fannie Mae 2008 Sec. Litig.*,
No. 1:08-cv-07831-GEL (S.D.N.Y. Apr. 16, 2009) ................................................ 14

*In re Initial Pub. Offering Sec. Litig.*,
214 F.R.D. 117 (S.D.N.Y. 2002) ................................................................................ 8

In re Morgan Stanley Info. Fund Sec. Litig. (Morgan Stanley),
592 F.3d 347 (2d Cir. 2010) ..................................................................................... 10

*In re Nanophase Techs. Corp. Litig.*,
1999 WL 965468 (N.D. Ill. Sept. 30, 1999) ............................................................ 14

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
293 F.R.D. 483 (S.D.N.Y. 2013) ....................................................................... 11, 12

*In re Peregrine Sys., Inc. Sec. Litig.*,
2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ................................................... 14, 15

*In re Philip Morris Int'l Inc. Sec. Litig.*,
437 F. Supp. 3d 329 (S.D.N.Y. 2020) ................................................................. 10, 13

*In re PHLCORP Sec. Tender Offer Litig.*,
1989 WL 251578 (S.D.N.Y. Nov. 16, 1989) ........................................................... 15

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y.1995) ................................................................................ 8

*In re Select Comfort Corp. Sec. Litig.*,
    202 F.R.D. 598 (D. Minn. 2001) ................................................................................ 15

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ................................................................................. 8

*Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co.*,
    32 F.3d 697 (2d Cir. 1994) .......................................................................................... 6

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) .................................................................................... 11

*Marquez v. Bright Health Grp., Inc.*,
    2022 WL 1314812 (E.D.N.Y. Apr. 26, 2022) ........................................................... 14

*McMahan & Co. v. Wherehouse Ent., Inc.*,
    65 F.3d 1044 (2d Cir. 1995) ...................................................................................... 11

*Miller v. Thane Int'l, Inc.*,
    519 F.3d 879 (9th Cir. 2008) ....................................................................................... 9

*Miller v. Ventro Corp.*,
    2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ........................................................ 14

*Priest v. Zayre Corp.*,
    118 F.R.D. 552 (D. Mass. 1988)................................................................................ 15

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ................................................................................ 10, 13

*Seagrape Invs. LLC v. Tuzman*,
    2020 WL 5751232 (S.D.N.Y. Sept. 25, 2020)............................................................ 9

*Smith v. Suprema Specialties*,
    206 F. Supp. 2d 627 (D.N.J. 2002) ........................................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................... 10

*Wang v. Athira Pharma, Inc.*,
    2021 WL 4726458 (W.D. Wash. Oct. 5, 2021) ......................................................... 14

iv

**Statutes, Rules & Regulations**

15 U.S.C. §77l (Section 12(a)(2)) ............................................................................ *passim*

15 U.S.C. §77m ................................................................................................................. 8

15 U.S.C. §77z-1 ............................................................................................................... 7

15 U.S.C. §78j(b) (Section 10(b)) ............................................................................. *passim*

15 U.S.C. §78t-1(a) ........................................................................................................... 6

15 U.S.C. §78u-4 ................................................................................................... 4, 6, 7, 10

Fed. R. Civ. P. 42(a) ....................................................................................................... 12

Plaintiff Official Intelligence, Pty Ltd. ("Official Intelligence") respectfully submits this objection to the Stipulation and Order Consolidating Cases and Setting Schedule for Filing of Consolidated Complaint and Related Briefing (the "Consolidation and Leadership Order") stipulated to by the parties in *Esposito v. Block*, Case No. 1:22-cv-08636-RA, and *Hart v. Block*, Case No. 1:23-cv-01579-RA and SO ORDERED by the Court on March 7, 2023.

**PRELIMINARY STATEMENT**

The Consolidation and Leadership Order does not, by its very terms, apply to the recent action filed by Plaintiff Official Intelligence asserting claims arising under the Securities Act of 1933 (the "Securities Act"). Nor should it apply because doing so would upend and otherwise be inconsistent with the statutory provisions of the Securities Act governing the appointment of a lead plaintiff requiring the appointment of a lead plaintiff that is a member of the purported Securities Act class. Here, Plaintiff Sotiropoulos, previously appointed as the lead plaintiff in the claims being asserted pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), did not purchase a single one of the more than 113 million shares of Block, Inc. ("Block" or the "Company") securities having a value in excess of $29 billion issuance pursuant to the relevant transaction. Plaintiff Sotiropoulos lacks standing to pursue the Securities Act claim and, therefore, is not a member of that putative class.

Indeed, even absent those specific statutory provisions, appointing a separate lead plaintiff is appropriate because the Securities Act claims asserted by Official Intelligence differ materially from the claims previously asserted arising under Section 10(b) of the Exchange Act. These material differences start with the Securities Act claims not being subject to the heightened pleading standards governing fraud claims because scienter is not an element of the

1

claim, the Securities Act claimants not being required to prove reliance, and Defendants having the burden of proof on key aspects of the claim.

Plaintiff Official Intelligence also objects to the provision of the Consolidation and Leadership Order to the extent it enables Plaintiff Sotiropoulos' counsel at the Hagens Berman law firm to control the litigation of the Securities Act claims. Those provisions are, once again, inconsistent with the statutory provisions of the Securities Act providing for the appointment of a lead plaintiff which directs the activities of lead counsel rather than independently vesting authority for control of an action with counsel especially where, as here, that counsel does not represent any client having standing to pursue the Securities Act claims. Accordingly, a separate appointment of lead counsel for the Securities Act claims is necessary.

Therefore, and for the reasons discussed below in greater detail, Plaintiff Official Intelligence objects to expanding or interpreting the Consolidation and Leadership Order to make Plaintiff Sotiropoulos lead plaintiff over the Securities Act claims or allow his counsel to serve as lead counsel for or otherwise exercise control over the Securities Act claims. Plaintiff Official Intelligence also believes that for those reasons the Securities Act claims should *not* be consolidated with the Exchange Act claims as provided for in the Consolidation and Leadership Order and, instead, should remain unconsolidated but coordinated as necessary.

## SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY

On or about January 31, 2022, Block completed the acquisition of Afterpay, Ltd. ("Afterpay"), an Australian company, in a transaction (the "Transaction") through which Block issued 113,387,895 shares of its Class A common stock ("Common Stock"), including Common Stock underlying 95,377,954 CHESS Depositary Interests ("CDIs" and together with the

Common Stock, the "Block Securities"), having a market value of approximately $29 billion, to former Afterpay shareholders in exchange for their Afterpay stock. *See Official Intelligence* ECF No. 1.  On April 4, 2022, Block disclosed that in December 2021, it had experienced a data breach (the "Data Breach") affecting 8.2 million users of its Cash App financial service tools.  In reaction to this disclosure the price of Block Securities fell 6.4%.  *Id.* at ¶¶3-4.

On October 11, 2022, in response to the Data Breach disclosure, a securities fraud class action was filed asserting exclusively Exchange Act claims, arising under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), on behalf of persons who purchased Block securities on the open market between November 4, 2021 and April 4, 2022.  ECF No. 1, ¶22.  On October 11, 2022, counsel for the plaintiff who filed the first action issued a notice pursuant to the requirements of the PSLRA advising investors of the claims and that they had until December 12, 2022, to seek appointment as lead plaintiff and advising investors the plaintiff "pursues claims under Section 10(b) and 20(a) of the [Exchange Act.]"  ECF No. 26-3.

On December 12, 2022, Plaintiff Sotiropoulos, among others, moved to be appointed as lead plaintiff.  Plaintiff Sotiropoulos's moving papers explain that he purchased Common Stock in open-market purchases on December 30, 2021.  ECF No. 25 at 2, ECF No. 26-1.  Plaintiff Sotiropoulos's motion to serve as lead plaintiff acknowledged that April 4, 2022, is when the "truth emerged" and Block disclosed the Data Breach, causing the Company's stock price to fall 6.4% and injuring himself and other Block stockholders.  ECF No. 25 at 4.  No movant for lead plaintiff acquired Block Securities pursuant to the Transaction.  *See* ECF Nos. 20-2, 30-1, 35-3.

On January 4, 2023, Plaintiff Sotiropoulos was appointed lead plaintiff for the Exchange Act claims asserted and his choice of counsel was approved as lead counsel.  ECF No. 45.  The

Proposed Order submitted by Plaintiff Sotiropoulos, entered by the Court, appointed him "to serve as Lead Plaintiff in the above-captioned action pursuant to Section 21D(a)(3)(B) of the Securities [sic] Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995." ECF No. 45, ¶1.  Typographical errors aside, the Order clearly intended to reference only the Exchange Act.

On January 31, 2023, Plaintiff Hart filed *Hart v. Block, Inc. et al*, Docket No. 3:23-cv-00455 (N.D. Cal.), purporting to assert the Securities Act claims and Exchange Act claims, among other claims.  *Hart* Complaint ¶¶1-2.  However, as Plaintiff Hart only acquired nine (9) shares of Block stock on the open market on December 2, 2021 (*Hart* ECF No. 1-2), he could not have acquired *any shares* of Block Securities issued in connection with the Transaction, which closed on January 31, 2022.  Plaintiff Hart's counsel issued a January 31, 2023, notice as required by the PSLRA (the "PSLRA Notice") disclosing the filing of the complaint and advising putative class members that lead plaintiff motions must be filed with the Court within 60 days (ECF No. 67-1), corresponding to April 3, 2023.

On February 20, 2023, Plaintiff Hart stipulated to the transfer of the *Hart* Action to this Court and on February 21, 2023 the Northern District of California so ordered the venue transfer. *See Hart* ECF No. 7.  On February 24, 2023, *Hart v. Block, Inc.*, Docket No. 1:23-cv-01579, was opened in this Court and six business days later, on March 6, 2023, counsel for all parties in the *Esposito* and *Hart* actions stipulated to consolidating the two actions, with Plaintiff Sotiropoulos serving as lead plaintiff and Plaintiff Hart's counsel serving as additional counsel in support of lead counsel.  *See* ECF No. 52.  That proposed order states, in relevant part, that "[t]he terms of Order Granting Motion of Fotios Sotiropoulos For Appointment As Lead Plaintiff And Approval

Of Selection Of Lead Counsel (ECF No. 45), including the authority and responsibility of Lead Counsel and Defendants right to rely on all agreements made by Lead Counsel, are incorporated herein for the consolidated actions."  ECF No. 52, ¶4.  The stipulation also provided for consolidation of the *Esposito and Hart* Actions and the automatic consolidation of any future related actions while stating that "[a] party objecting to such consolidation, or to any other provisions of this Order, must file an application for relief from this Order within ten (10) days after the date on which a copy of this Order is mailed to the party's counsel."  ECF No. 52, pp.2-3 (the second ¶2).

On March 7, 2023, this Court SO ORDERED the Consolidation and Leadership Order. *See* ECF No. 53.  However, the Consolidation and Leadership Order does not address, and it appears that this Court was not informed of, the PSLRA Notice and the statutory procedures of the Securities Act for the appointment of a lead plaintiff set in motion by Hart by the PSLRA Notice.

On April 3, 2023, Plaintiff Official Intelligence filed *Official Intelligence, Pty Ltd. v. Block, Inc.*, 1:23-cv-2789-RA, in this Court, asserting the Securities Act claims.  Plaintiff Official Intelligence – unlike Plaintiff Hart or Plaintiff Sotiropoulos – acquired Block Securities in connection with the Transaction and, therefore, has standing to pursue those claims.  *Official Intelligence* ECF No. 1-1.  Also on April 3, 2023, Plaintiff Official Intelligence moved to be appointed lead plaintiff pursuant to the PSLRA Notice and to have his counsel appointed as lead counsel with respect to Securities Act claims.  ECF Nos. 54-58.

On April 7, 2023, Defendants filed a notice of automatic case consolidation in the *Official Intelligence* Action and the Consolidated Action requiring that any objections be filed

within ten (10) days.  ECF No. 61.  The Consolidation and Leadership Order, which was proposed by the parties, does not provide for a response by any party.  However, to the extent the Court exercises its discretion to allow any party to respond, Official Intelligence intends to reply to that response within two weeks.

**OBJECTIONS**

Plaintiff Official Intelligence objects to the Consolidation and Leadership Order applying to the *Official Intelligence* Action to the extent it could be read to make Plaintiff Sotiropoulos lead plaintiff or provide his counsel with authority to make decisions with respect to litigating the Securities Act claims.  Instead, the Securities Act claims should proceed independently of the Exchange Act claims with a separate lead plaintiff represented by separate lead counsel.

## I.    PLAINTIFF SOTIROPOULOS' APPOINTMENT AS LEAD PLAINTIFF FOR THE EXCHANGE ACT CLAIMS DID NOT AND CANNOT EXTEND TO THE SECURITIES ACT CLAIMS

Plaintiff Sotiropoulos was only initially appointed to serve as lead counsel for Exchange Act claims, pursuant to Section 21D(a)(3)(a) of the Exchange Act (15 U.S.C. §78u-4).  ECF No. 45, ¶1.  The Consolidation and Leadership Order did not alter the terms of this appointment since it once again only references the relevant statutory provisions of the Exchange Act.  *See* Consolidation and Leadership Order ¶4.  That lead plaintiff appointment is statutorily limited in scope to claims arising under "this chapter" (15 U.S.C. §78u-4(a)(3)(A)(ii)) which means that it only applies to the Exchange Act.  *See, e.g., Jackson Nat. Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 703 (2d Cir. 1994) (holding that a "reference to 'this chapter'" in 15 U.S.C. §78t-1(a) "is to the [Exchange Act]"); *Genesee Cty. Emples. Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*, 825 F. Supp. 2d 1082, 1123 (D.N.M. 2011) ("the PSLRA's heightened pleading

6

requirements apply only in 'private action[s] arising under this chapter,' 15 U.S.C. § 78u-4(b)(1), and 'this chapter' refers to Chapter 2B of Title 15. **The Securities Act of 1933, however, is Chapter 2A**") (emphasis added).

Even had the Consolidation and Leadership Order referenced the relevant lead plaintiff provisions of the Securities Act – which it did not do – it would have been legally improper and ineffective because the Securities Act separately requires the appointment of lead plaintiff with standing to prosecute Securities Act claims, that is, by a member of the putative plaintiff Securities Act class. *See* 15 U.S.C. §77z-1(a)(3)(B)(i) (the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class….").

Here, Plaintiff Sotiropoulos cannot serve as the lead plaintiff for the Securities Act claims because he acquired Block Securities in open market trades before the Transaction and not in the relevant offering made to Afterpay shareholders. ECF No. 26-1; *In re Carlotz, Inc. Sec. Litig.*, 2023 WL 2744064, at *8 (S.D.N.Y. Mar. 31, 2023) (Abrams, J.) ("Plaintiffs do not allege that either Berger or Bailey purchased their shares in an initial public offering, and they thus lack standing to bring a Section 12(a)(2) claim as well."). Since Plaintiff Sotiropoulos has no standing for *any* claim under the Securities Act, he is not a member of the purported Securities Act plaintiff class and cannot be appointed lead counsel pursuant to the Securities Act.[1]

---

[1]    Even if Plaintiff Sotiropoulos could serve as the lead plaintiff for the Securities Act claims, he together with Plaintiff Hart and Defendants, were not free to short circuit the statutory provisions of the Securities Act allowing for any lead plaintiff motion to be made within 60 days of a PSLRA notice and requiring the Court to analyze which plaintiff or other investor is the most adequate plaintiff to serve as the lead plaintiff with respect to those claims. *See* 15 U.S.C. §77z-1(a)(3)(A)(i).

*Hevesi v. Citigroup Inc.*, 366 F.3d 70 (2d Cir. 2004), declined to "adopt a *per se* rule that a class may not be certified where a lead plaintiff does not have standing to bring every available claim and none of the named plaintiffs who have standing to bring the additional claims has been vetted under the PSLRA." *Id.* at 82. *Hevesi* does not opine as to whether it would have been appropriate to appoint a lead plaintiff for the Securities Act claims at issue. Moreover, *Hevesi* relied on two prior cases involving literally hundreds of securities offerings combined into a single class action. *Id.* at 82-83 (citing *In re Initial Pub. Offering Sec. Litig.,* 214 F.R.D. 117 (S.D.N.Y. 2002) (involving over 300 separate offerings) and *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 208 (S.D.N.Y.1995) (involving over 700 separate limited partnerships). *Hevesi* itself involved a multi-year pervasive accounting fraud of WorldCom, which at the time was one of the largest publicly traded companies, with lead plaintiff having demonstrated that it was actively litigating all claims. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003).

Here, in contrast, there is exactly one multi-billion dollar offering of Block Securities at issue in a relatively short four-month class period. In addition, even during the limited pendency of this action, Plaintiff Sotiropoulos has not taken any steps to protect the Securities Act claimants. Specifically, Plaintiff Sotiropoulos has taken the position that the "truth emerged" when Block disclosed the Data Breach on April 4, 2022 (ECF No. 25 at 4), meaning the statute of limitations to file Section 12(a)(2) ran within one year of the date of discovery, *i.e.*, on April 3, 2023. *See Freidus v. Barclays Bank PLC*, 734 F.3d 132, 138 (2d Cir. 2013) (quoting 15 U.S.C. §77m). Nonetheless, Plaintiff Sotiropoulos failed to take any action to timely add a representative plaintiff with proper standing to assert the Securities Act claims, instead fixing the

time for filing an amended complaint for April 21, 2023, *i.e.*, after the limitations period expired. *See* Consolidation and Lead Order ¶5 (the second ¶5, on p.4).

**II.    PLAINTIFF OFFICAL INTELLIGENCE'S SECURITIES ACT CLAIMS DIFFER MATERIALLY FROM THE EXCHANGE ACT CLAIMS FURTHER SUPPORTING APPOINTING SEPARATE LEAD PLAINTIFFS AND COUNSEL**

The Exchange Act claims being pursued by Plaintiff Sotiropoulos and the Securities Act claims being pursued by Plaintiff Official Intelligence share a common factual nexus with respect to the existence of the Data Breach.  However, the factual and legal overlap essentially end at that point, with the claims differing substantially in the elements of the claim.

The elements of a Section 12(a)(2) claim are: (1) an offer or sale of a security; (2) by the use of a means or instrumentality of interstate commerce; (3) by means of a prospectus or oral communication; and (4) that includes an untrue statement of material fact or omits to state a material fact that is necessary to make the statements, in light of the circumstances under which they were made, not misleading.  *See, e.g.*, *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 885 (9th Cir. 2008).  In contrast, the Exchange Act claims have six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Seagrape Invs. LLC v. Tuzman*, 2020 WL 5751232, at *15 (S.D.N.Y. Sept. 25, 2020) (Abrams, J.) (quoting *Axar Master Fund, Ltd. v. Bedford*, 806 F. App'x 35, 37 (2d Cir. 2020)).[2]

---

[2]    Claims arising under Section 10(b), like those arising under Section 12(a)(2), must involve the use of the instrumentalities of interstate commerce or the mails.  *See* 15 U.S.C. §78j (beginning "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails).

Therefore, Securities Act plaintiffs need not plead or prove scienter (*i.e.*, that defendant intentionally, recklessly, or negligently made the alleged misrepresentation or omission). *See, e.g., In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 194 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d 217, 142 S. Ct. 1209 (2022) (citing *Rombach v. Chang*, 355 F.3d 164, 169 n.4 (2d Cir. 2004); *Aaron v. SEC*, 446 U.S. 680, 696-97 (1980)). Instead, Defendants have "the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission[.]" 15 U.S.C. §77l(a)(2).

The Exchange Act claims are also subject to the PSLRA's heightened pleading standard requiring that a "strong inference" of scienter – which is not even an element of Section 12(a)(2) claim – be alleged. *See* 15 U.S.C. §78u-4(b)(2)(A); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). This strong inference standard has proven to be a death knell for many Section 10(b) claims. *See, e.g.*, *In re Philip Morris Int'l Inc. Sec. Litig.*, 437 F. Supp. 3d 329, 358 (S.D.N.Y. 2020) (Abrams, J.) (citing cases).[3]

The Securities Act claims also do not require proving reliance, which is not an element of a Section 12(a)(2) claim. *See Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 98 (2d Cir. 2017) (citing *In re Morgan Stanley Info. Fund Sec. Litig.* (*Morgan Stanley*), 592 F.3d 347, 359 (2d Cir. 2010)). Proving reliance in a Section 10(b) claim based upon open market securities purchases such as those asserted by Plaintiff

---

[3]     The *Hart* Complaint also asserts Section 10(b) claims pursuant to the Exchange Act. Official Intelligence only asserted Securities Act claims because its Exchange Act claims arise out of a discrete offering of securities with the Section 12(a) claims being a far superior vehicle for obtaining a recovery because, as explained in this objection, unlike Section 10(b) claims they do not require the pleading or proof of either scienter or reliance and shift the burden of proof on loss causation to Defendants.

Sotiropoulos requires proving "fraud on the market," that the market for the securities at issue was efficient. *See, e.g.¸ Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 462 (2013). Doing so almost always involves a competing battle of expert witnesses with extensive testimony related to price movements of the stock in rection to news events. *See, e.g.*, *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, ____ U.S. ___, 141 S. Ct. 1951, 1963 (2021).

Finally, Section 10(b) plaintiffs have the burden of demonstrating loss causation. *See, e.g.*, *Bristol Cnty. Ret. Sys. v. Adient PLC*, 2022 WL 2824260, at \*1 (2d Cir. July 20, 2022). In contrast, "Section 12 [of the Securities Act] places the burden on defendants to prove that something other than the subject of the misrepresentations or omissions was responsible for any decrease in value of the" securities at issue. *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.,* 873 F.3d at 99; *McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995).

III.    **COURTS IN SIMILAR SITUATIONS ALLOW FOR SEPARATE PROSECUTION OF SECURITIES ACT CLAIMS AND EXCHANGE ACT CLAIMS**

Consolidation is discretionary, and should only be utilized when no confusion, prejudice, or delay will result. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990). *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, is instructive in recognizing that nothing in the PSLRA mandates consolidation of related cases. 293 F.R.D. 483, 487 (S.D.N.Y. 2013). There, the lead plaintiff indicated that it would not prosecute claims on behalf of an options class. *Id.* Relying in part on *In re Cent. European Distrib. Corp. Sec. Litig.* ("*CEDC*"), 2012 WL 5465799, at \*8 (D.N.J. Nov. 8, 2012), in which a lead plaintiff was appointed and then other claims were

filed in another district by a plaintiff referred to as "Grodko" before being transferred to New Jersey, the court held that "[c]onsolidation is unwarranted when prejudice would result. [Lead plaintiffs] have indicated that they will not prosecute the Grodko action claims. **The Court would prejudice [the] Grodko [plaintiffs] ... by subjecting them to a lead plaintiff that would neglect their claims.**" *New Oriental*, 293 F.R.D. at 487 (quoting CEDC, 2012 WL 5465799, at *9) (emphasis added). Judge Koeltl held that in *New Oriental*, "like *CEDC,* the lead plaintiff has indicated that it will not prosecute the claims of the options class. Therefore, the appropriate remedy at this early stage of the litigation is severance." 293 F.R.D. at 487.

Judge Koeltl also recognized and considered the danger of consolidating cases and then allowing a lead plaintiff to redefine claims more narrowly, which could result in an "'abandoned' subclass" for purposes of *American Pipe* tolling. *Id.* There, statute of limitations repercussions were theoretical. *Id.* Here, as explained above, Plaintiff Sotiropoulos has no standing to prosecute, and has not taken any actions to protect, the Securities Act claims.

Instead of consolidation, *CEDC* coordinated the separate cases for discovery and case management purposes. 2012 WL 5465799, at *12 (citing Fed. R. Civ. P. 42(a)(3) which "gives the Court the power to 'issue any other orders to avoid unnecessary cost or delay.'"). The court ensured there would not be duplicative discovery requests and held that its "coordination order shall be construed to have the same power and effect as an order consolidating the cases for discovery and case management purposes" while ensuring that the magistrate overseeing discovery had "full discretion as to the degree of coordination." *Id.* at *12 n.7. The same ruling here could create the same efficiencies as consolidation without prejudicing any of the substantive claims before the Court—a similar order on coordination can be crafted to protect the

12

interests of judicial economy and prevent against delays, expense, confusion, and prejudice. *Id.* at *9.

Here, a potential, if not actual, conflict between the Securities Act and Exchange Act claims is plain given the significant differences between the claims identified above. Those differences will impact, at minimum, the pleadings in the actions, how the actions will be litigated, the discovery required and any potential settlement negotiations. Combining the actions under the supervision of Plaintiff Sotiropoulos would be prejudicial to those possessing Securities Act claims – their valuable claims could be subsumed within the Exchange Act claims, and, among other things, their claims may be subjected to a higher pleading standard and a lesser likelihood of recovery.[4]

Accordingly, the Securities Act claims should proceed separately from the Exchange Act claims either as a separate class or subclass, or in a coordinated, instead of consolidated, action.

---

[4]   Under the "sounds in fraud" theory, courts have imposed the heightened scienter pleading requirements ordinarily applicable only to Exchange Act claims to claims brought under the Securities Act when a complaint contains allegations under both of those acts. This heightened standard has been applied notwithstanding the fact that heightened pleading requirements do not ordinarily apply to – nor is scienter an element of – a Securities Act claim. *See Rombach,* 355 F.3d at 171. Indeed, given that the Transaction occurred during the class period alleged by the Exchange Act claims, a combined complaint, alleging a continuous fraud for purpose of the Exchange Act claim could subject the Securities Act claims, which require allegations of negligence only, not fraud, to the PSLRA's heightened pleading standard of alleging fraud with particularity. There is no valid reason to potentially expose the Securities Act claims to the heightened pleading requirements of the Exchange Act by consolidating the *Official Intelligence* Action into the Consolidated Action without creating a separate class or subclass with separate Lead Plaintiff and Lead Counsel. Particularly in light of the fact that dismissals of the vast majority of Section 10(b) cases are based on plaintiffs' failure to satisfy these heightened pleading requirements. *E.g., In re Philip Morris Int'l Inc. Sec. Litig., supra.* Such a conflict between the classes requires a Lead Plaintiff for the Securities Act claims who can assert those claims separately.

Courts regularly separate Securities Act claims and Exchange Act claims for exactly these reasons. *See*, *e.g.*, *Wang v. Athira Pharma, Inc.*, 2021 WL 4726458, at \*3 (W.D. Wash. Oct. 5, 2021) (holding that "a class member with standing to assert Securities Act claims should also be appointed as a co-lead plaintiff" "because the movant with the indisputably greatest Section 10(b) losses faced a tangible risk of being unable to prove scienter as an element of his Exchange Act claims and had "no losses traceable to the IPO and Registration Statement"); *Gross v. AT&T Inc.*, 2019 WL 7759222, at \*2 (S.D.N.Y. June 24, 2019) (appointing a lead plaintiff with standing to Exchange Act claims to "best serve[s] the class" by adding the "ab[ility] to assert claims under the Securities Act"). Other examples are legion.[5]

---

[5]    *See, e.g., Firefighters Pension & Relief Fund v. Bulmahn*, 2013 WL 6388583, at \*2 (E.D. La. Dec. 6, 2013) (differing claims and legal theories under the Securities Act and the Exchange Act create a conflict of interest and warrant appointment of separate lead plaintiffs.); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 441 (S.D. Tex. 2010) (where two groups of potential class members have divergent claims which require different legal theories and evidence, it is necessary to appoint separate representation for each of the groups.); *Harold Roucher Trust U/A DTD 09/21/72 v. Franklin Bank Corp.*, 2009 WL 1941864, at \*3 (S.D. Tex. July 6, 2009) (where a Lead Plaintiff does not have an interest in pursuing the claims of other class members, a separate Lead Plaintiff must be appointed to represent those claims.); *In re Peregrine Sys., Inc. Sec. Litig.*, 2002 WL 32769239, at \*11-12 (S.D. Cal. Oct. 11, 2002) (appointing separate lead plaintiffs for the Securities Act and Exchange Act claims due to conflicting interests); *see also In re Fannie Mae 2008 Sec. Litig.*, No. 1:08-cv-07831-GEL, slip op. at 2 (S.D.N.Y. Apr. 16, 2009) (separate lead plaintiffs were appointed for a Preferred Shareholder Class and a Stockholder Class due to conflicting interests); *Miller v. Ventro Corp.*, 2001 WL 34497752, at \*11 (N.D. Cal. Nov. 28, 2001) (appointing separate stockholder and bondholder lead plaintiffs due to varying claims and interests); *Giarraputo v. UNUMProvident Corp.*, 2000 WL 1701294, at \*21 (D. Me. Nov. 8, 2000) (dismissing Exchange Act claims and sustaining Securities Act claims relating to the same conduct); *In re Nanophase Techs. Corp. Litig.*, 1999 WL 965468, at \*5 (N.D. Ill. Sept. 30, 1999) (creating separate classes for Exchange Act claims and Securities Act claims because the pleadings requirements for the two sets of claims are "exceedingly different" and "many of the facts used by the two classes would be different"); *cf. Marquez v. Bright Health Grp., Inc.*, 2022 WL 1314812, at \*8 (E.D.N.Y. Apr. 26, 2022) (distinguishing *Wang*, *supra*, where the presumptive lead plaintiff also had "substantial losses under … the Securities Act" eliminating the concerns that could otherwise have caused it to appoint co-lead plaintiffs); *Smith v. Suprema*

In *In re Peregrine*, for example, the court found that in a class action securities litigation where some plaintiffs were asserting claims under the Securities Act only and other plaintiffs were asserting claims under the Exchange Act, it was appropriate to appoint separate lead plaintiffs with respect to Exchange Act claimants "who made 'open market' purchases of stock in Peregrine Systems in reliance on the material misstatements" and Securities Act claimants "who obtained Peregrine Systems stock in connection with mergers that took place during the relevant time period, also in reliance on the misstatements regarding Peregrine Systems' financial status." 2002 WL 32769239, at *1. Specifically, the court noted that because of the differing levels of proof required for fraud-based claims under the Exchange Act, plaintiffs with solely Exchange Act claims would not meet the typicality requirement to serve as a lead plaintiff with respect to the Securities Act claims, and *vice-versa*. *Id.* at *11-12. The same concerns exist in this action militating in favor of the same result.

---

*Specialties*, 206 F. Supp. 2d 627, 642 (D.N.J. 2002) (denying movant's request for appointment as co-lead plaintiff in part because court had already found a lead plaintiff that had brought claims under both the Securities Act and the Exchange Act and movant's interests were therefore adequately protected); *In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 602, 611-12 (D. Minn. 2001) (certifying class consisting of two subclasses, an offering subclass with Securities Act claims, and a 10b-5 subclass); *Feiner v. SS&C Technologies, Inc.*, 47 F. Supp. 2d 250, 255 (D. Conn. 1999) (where plaintiffs could not demonstrate that all class members could bring both a Securities Act and Exchange Act claim, respective subclasses were created); *In re PHLCORP Sec. Tender Offer Litig.*, 1989 WL 251578, at *2 (S.D.N.Y. Nov. 16, 1989) (noting that the creation of sub-classes is appropriate when it is shown that members of a class have opposing interests in the litigation); *Priest v. Zayre Corp.*, 118 F.R.D. 552, 557 (D. Mass. 1988) (subclasses may be created where there are conflicts among class members).

15

## CONCLUSION

For the foregoing reasons, the Securities Act should be coordinated rather than consolidated with the Exchange Act claims. However, even if consolidated, a separate lead plaintiff and counsel should be appointed to prosecute the Securities Act claims.

DATED: April 17, 2022

*s/* Jeffrey S. Abraham

Jeffrey S. Abraham
Michael J. Klein
**ABRAHAM, FRUCHTER &**
    **TWERSKY, LLP**
450 Seventh Avenue, 38th Fl.
New York, New York 10123
Tel:   (212) 279-5050
Fax:   (212) 279-3655
Email: jabraham@aftlaw.com
       mklein@aftlaw.com

**BRONSTEIN, GEWIRTZ &**
    **GROSSMAN, LLC**
Peretz Bronstein
Yitzchak Eliezer Soloveichik
60 East 42nd Street, Suite 4600
New York, NY 10165
Tel:   (212) 697-6484
Fax:   (212) 697-7296
Email: peretz@bgandg.com
       soloveichik@bgandg.com

*Counsel for Plaintiff Official Intelligence*

16