**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BLOCK, INC. SECURITIES LITIGATION<br><br>_____<br><br>*This Document Relates To:*<br><br>*ALL ACTIONS* | Master Case No. 1:22-cv-08636-RA<br><br>**CLASS ACTION**<br><br>**LEAD PLAINTIFF'S RESPONSE IN OPPOSITION TO OFFICIAL INTELLIGENCE PTY LTD.'S (1) MOTION FOR APPOINTMENT AND (2) OBJECTIONS TO CONSOLIDATION AND LEADERSHIP ORDER** |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ...................................................................................................4

        A.      The PSLRA...............................................................................................4

        B.      Procedural History ...................................................................................5

III.    ARGUMENT........................................................................................................7

        A.      The *Official Intelligence* Action Should Be Consolidated .....................7

        B.      The Court's Existing Lead Plaintiff Appointment Order Controls.........17

IV.     CONCLUSION...................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010)..........................................................3, 12, 16, 18

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
2011 WL 4538428 (S.D.N.Y. Sept. 29, 2011).........................................................4, 12, 13, 16

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
2012 WL 1308993 (S.D.N.Y. Apr. 16, 2012)..................................................................12, 16

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
2009 WL 2168767 (S.D.N.Y. July 16, 2009) ..........................................................................20

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ...........................................................................................10

*In re BP, PLC Sec. Litig.*,
758 F. Supp. 2d 428 (S.D. Tex. 2010) ....................................................................................17

*Burnham v. Qutoutiao Inc.*,
2020 WL 6484490 (S.D.N.Y. Nov. 4, 2020)...........................................................................10

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
2018 WL 1902725 (D. Minn. Apr. 20, 2018)..........................................................................15

*Cohen v. Luckin Coffee, Inc.*,
2020 WL 3127808 (S.D.N.Y. June 12, 2020) ...................................................................11, 20

*Crews v. Rivian Automotive, Inc.*,
2022 WL 17883615 (C.D. Cal. July 1, 2022)..........................................................................10

*Dube v. Signet Jewelers Ltd.*,
2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017)..........................................................................19

*Einhorn v. AxoGen, Inc.*,
2019 WL 5636382 (M.D. Fla. Apr. 20, 2019)..........................................................................11

*In re Enron Corp., Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002)............................................................................................18

*In re Facebook, Inc.*,
822 F. App'x 40 (2d Cir. 2020) ...............................................................................................17

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
  2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013) ................................................................. *passim*

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
  288 F.R.D. 26 (S.D.N.Y. 2012) ........................................................................9, 10, 11

*In re Fannie Mae 2008 Sec. Litig.*,
  1:08-cv-07831-GEL, slip op. (S.D.N.Y. Apr. 16, 2009) ..........................................17

*Feiner v. SS&C Tech., Inc.*,
  47 F. Supp. 2d 250 (D. Conn. 1999)..........................................................................24

*Firefighters Pension & Relief Fund v. Bulmahn*,
  2013 WL 6388583 (E.D. La. Dec. 6, 2013)................................................................24

*Fishbury, Ltd. v. Connetics Corp.*,
  2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) ...........................................................17

*In re Fuwei Films Sec. Litig.*,
  247 F.R.D. 432 (S.D.N.Y. 2008) ...............................................................................21

*Garnett v. RLX Tech. Inc.*,
  2021 WL 3913541 (S.D.N.Y. Aug. 31, 2021)...........................................................10

*Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014)..........................................................................10

*In re Gen. Elec. Sec. Litig.*,
  2009 WL 2259502 (S.D.N.Y. July 29, 2009) ............................................................10

*Giarraputo v. UNUMProvident Corp.*,
  2000 WL 1701294 (D. Me. Nov. 8, 2000)..................................................................24

*Glick v. Arqit Quantum, Inc.*,
  2023 WL 2764741 (E.D.N.Y. Mar. 31, 2023)...........................................................20

*In re Global Crossing Ltd. Sec. Litig.*,
  313 F. Supp. 2d 189 (S.D.N.Y. 2003).........................................................................22

*Greenberg v. Bear Stearns & Co., Inc.*,
  80 F. Supp. 2d 65 (E.D.N.Y. 2000) ...........................................................................19

*Gross v. AT&T Inc.*,
  2019 WL 7759222 (S.D.N.Y. June 24, 2019) ...........................................................17

*Harold Roucher Trust U/A DTD 09/21/72 v. Franklin Bank Corp.*,
  2009 WL 1941864 (S.D. Tex. July 6, 2009)...............................................................17

*Hevesi v. Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004)......................................................................................... *passim*

*Hom v. Vale, S.A.*,
  2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) .......................................................................8, 19

*Horowitz v. SunEdison, Inc.*,
  2016 WL 1161600 (E.D. Mo. Mar. 24, 2016) ........................................................................19

*Hung v. iDreamSky Tech. Ltd.*,
  2016 WL 299034 (S.D.N.Y. Jan. 25, 2016) ...........................................................................10

*In re Initial Public Offering Sec. Litig.*,
  214 F.R.D. 117 (S.D.N.Y. 2002) ......................................................................................21, 24

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*,
  2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015) .......................................................................20

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*,
  32 F.3d 697 (2d Cir. 1994)......................................................................................................10

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ...........................................................................................8, 9

*Kniffin v. Micron Tech., Inc.*,
  379 F. Supp. 3d 259 (S.D.N.Y. 2019).....................................................................................20

*Kolominsky v. Root, Inc.*,
  2022 WL 190053 (S.D. Ohio Jan. 21, 2022) ..........................................................................11

*Kux–Kardos v. VimpelCom, Ltd.*,
  151 F. Supp. 3d 471 (S.D.N.Y. 2016).......................................................................................9

*Lax v. First Merchants Acceptance Corp.*,
  1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ...........................................................................18

*Marquez v. Bright Health Grp.*,
  2022 WL 1314812 (E.D.N.Y. Apr. 26, 2022) ...................................................................17, 23

*Miller v. Ventro Corp.*,
  2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ......................................................................24

*In re Nanophase Techs. Corp. Litig.*,
  1999 WL 965468 (N.D. Ill. Sept. 30, 1999) ...........................................................................17

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012)...............................................................................................21, 22

*In re NYSE Specialists Sec. Litig.*,
  240 F.R.D. 128 (S.D.N.Y. 2007) ...................................................................................23

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
  2020 WL 1181366 (D. Conn. Mar. 10, 2020) ...........................................................19

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
  432 F. Supp. 3d 131 (D. Conn. 2019)........................................................................22

*In re OSI Pharms., Inc. Sec. Litig.*,
  2005 WL 6171305 (E.D.N.Y. Sept. 21, 2005) ...........................................11, 20, 22

*Owens v. Elastos Foundation*,
  2021 WL 5868171 (S.D.N.Y. Dec. 9, 2021) ..............................................................21

*Parot v. Clarivate Plc*,
  2022 WL 1568735 (E.D.N.Y. May 18, 2022) ......................................................10, 17

*In re Peregrine Sys., Inc. Sec. Litig.*,
  2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) .....................................................17, 23

*Perez v. HEXO Corp.*,
  2020 WL 905753 (S.D.N.Y. Feb. 25, 2020)...............................................................10

*In re PHLCORP Sec. Tender Offer Litig.*,
  1989 WL 251578 (S.D.N.Y. Nov. 16, 1989).............................................................24

*Plymouth Cty. Ret. Ass'n v. Innovative Tech., Inc.*,
  2021 WL 4298191 (S.D.N.Y. Sept. 21, 2021)..........................................................10

*Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
  721 F.3d 95 (2d Cir. 2013)........................................................................................17

*Priest v. Zayre Corp.*,
  118 F.R.D. 552 (D. Mass. 1988)...............................................................................24

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014)......................................................................9, 10

*In re Select Comfort Corp. Sec. Litig.*,
  202 F.R.D. 598 (D. Minn. 2001)...............................................................................24

*Smith v. Suprema Specialties*,
  206 F. Supp. 2d 627 (D.N.J. 2002) ...........................................................................17

*Steppacher v. Alfi, Inc.*,
  2022 WL 1115049 (S.D. Fla. Apr. 13, 2022) ...........................................................10

*In re Synergy Pharms. Inc. Sec. Litig.*,
2019 WL 6150713 (E.D.N.Y. Nov. 20, 2019).................................................................. *passim*

*Taubenfeld v. Career Educ. Corp.*,
2004 WL 554810 (N.D. Ill. Mar. 19, 2004)..............................................................................9

*Taylor v. Barnes & Noble, Inc.*,
2014 WL 12769396 (S.D.N.Y. July 16, 2014) .........................................................................9

*In re Thornburg Mortg., Inc. Sec. Litig.*,
629 F. Supp. 2d 1233 (D.N.M. 2009) .....................................................................................19

*Turnofsky v. Electrocore, Inc.*,
2020 WL 1969913 (D.N.J. Apr. 24, 2020) .............................................................................10

*Wang v. Athira Pharma, Inc.*,
2021 WL 4726458 (W.D. Wash. Oct. 5, 2021) .................................................................17, 23

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y. 2003) ............................................................................................22

*Welch v. Meaux*,
2020 WL 4758269 (W.D. La. Aug. 17, 2020).........................................................................10

*Werner v. Satterlee, Stephens, Burke & Burke*,
797 F. Supp. 1196 (S.D.N.Y. 1992)..........................................................................................8

Lead Plaintiff Fotios Sotiropoulos respectfully submits this response in opposition to Official Intelligence Pty Ltd.'s motion to appoint itself lead plaintiff and its counsel lead counsel (ECF No. 55) (the "Motion") in the recently filed consolidated action, *Official Intelligence Pty Ltd. v. Block, Inc. et al.*, No. 1:23-cv-02789-RA (S.D.N.Y., commenced April 3, 2023) (the "*Official Intelligence* action"), and its objection to the Consolidation and Leadership Order dated March 7, 2023 (ECF No. 62). As explained below, pursuant to this Court's existing lead plaintiff appointment and consolidation orders, consistent with Fed. R. Civ. P. 42, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and well-settled Second Circuit precedent, the *Official Intelligence* action should be consolidated into *In re Block, Inc. Sec. Litig.*, No. 1:22-cv-08636-RA (S.D.N.Y.) (the "Consolidated Action"), and Official Intelligence's Motion should be denied in its entirety.

## I.      INTRODUCTION

Official Intelligence's belated filings are an improper attempt to end run the PSLRA and Court's existing lead plaintiff appointment and consolidation orders (ECF Nos. 45 and 53). This redundant action serves no purpose other than to interject it's personal counsel into an additional leadership position in the Consolidated Action. Courts within the Second Circuit and nationwide have consistently rejected similar maneuvers by other niche plaintiffs (and their self-serving counsel) as violating the PSLRA and infringing upon the appointed lead plaintiffs' statutory authority to direct "the litigation as a whole." *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004) ("the main purpose of having a lead plaintiff [is] to empower one or several investors … *to exercise control over the litigation as a whole*") (emphasis added). The same result is warranted here.

Months ago, on January 4, 2023, this Court followed the PSLRA process to a tee and appointed Fotios Sotiropoulos as Lead Plaintiff for the Consolidated Action as a whole, on behalf

- 1 -

of a putative "class consisting of *all persons and entities* other than Defendants *that purchased or otherwise acquired Block, Inc. ('Block' or 'SQ') securities* between November 4, 2021 and April 4, 2022, both dates inclusive (the 'Class Period')," ECF No. 45, which Class Period also necessarily encompasses the small subset of all persons who received Block securities in connection with Block's January 31, 2022 stock-for-stock merger and acquisition of Afterpay.

Consistent with their responsibilities to the Class, Lead Plaintiff and counsel have undertaken an intensive investigation in order to thoroughly analyze all claims (under both the Exchange Act and Securities Act) potentially available to class members. And pursuant to the Court's March 7, 2023 case schedule, Lead Plaintiff is in the process of preparing a detailed consolidated amended complaint ("CAC") (that was to be filed on April 21, 2023, but which deadline was since stayed by court order) that will reflect Lead Plaintiff's considered judgment on which of the potential claims and allegations will best serve the interests of the putative class, as is Lead Plaintiff's prerogative and duty under the PSLRA. Indeed, the PSLRA was enacted to promote the exact type of considered analysis and decision-making exhibited by the already court-appointed Lead Plaintiff here.

The *Official Intelligence* action brings nothing new to the litigation—no new claims, no new remedies, no new class members—and rather undermines "the main purpose" of the PSLRA's lead plaintiff provisions. With no attempt to consult Lead Plaintiff concerning Lead Plaintiff's forthcoming CAC, Official Intelligence filed a redundant copycat complaint that asserts but a partial subset of Securities Act claims already asserted in the Consolidated Action. The only differences from the already consolidated *Hart* action are that Official Intelligence (1) failed to include important claims under Section 12(a)(1) of the Securities Act (likely because their belated complaint would be untimely as to those claims) and (2) grafted on a recent article from a short

seller. Neither distinction warrants uprooting the Court's existing appointment and consolidation orders.

Consolidation of *Official Intelligence* into this Consolidated Action—which already encompasses each and every claim, remedy, and putative class member included in the narrower follow-on complaint in *Official Intelligence*—is not only warranted under Fed. R. Civ. P. 42, but necessary to enforce the lead plaintiff provisions of the PSLRA and preserve the leadership structure established by this Court's March 7 Order. The PSLRA vests the Court-appointed Lead Plaintiff with the authority to direct the course of this litigation and decide which claims should be asserted. Lead Plaintiff's decisions about which claims to assert cannot be overridden by niche plaintiffs. As numerous courts have explained, "[p]ermitting other plaintiffs to bring additional class actions now, with additional lead plaintiffs and additional lead counsel, would interfere with Lead Plaintiffs' ability and authority to manage the Consolidated Securities Actions." *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 2010 WL 1438980, at *1-2 (S.D.N.Y. Apr. 9, 2010) (Chin, J.) ("*BoA I*"); *see also Hevesi*, 366 F.3d at 82 n.13 ("Any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff—namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole.").

Similarly, courts have consistently recognized that allowing niche copycat class actions, like the *Official Intelligence* action, to proceed independently or reopen the lead plaintiff process would encourage litigants to file duplicative class actions whenever they disagreed with a lead plaintiff's litigation decision, would open the floodgates to "the type of lawyer-driven litigation that the PSLRA seeks to avoid, and would likely promote near-endless skirmishes about securities holders who fall outside a class definition." *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,

2011 WL 4538428, at *2 (S.D.N.Y. Sept. 29, 2011) ("*BoA II*"). Instead, the remedy for a plaintiff who disagrees with the lead plaintiff's litigation strategy is to opt out of the class action and bring their own individual action. *See In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 2013 WL 4399215, at *6 (S.D.N.Y. Aug. 13, 2013) ("[T]he Exchange Act Plaintiffs will not suffer any prejudice if they are not permitted to bring their own separate class action. The Exchange Act Plaintiffs remain free to pursue their claims through an individual action, which would permit them to obtain a ruling on the merits of their claims.").

Here, Official Intelligence is not seeking to pursue individual claims but has instead filed a duplicative class action that second guesses and would interfere with existing Lead Plaintiff's control and management of the Consolidated Action, all for no benefit to the Class but rather in a belated attempt to inject its late-coming lawyers into a leadership role. This end-run around the Court's already concluded PSLRA appointment order should be rejected. The *Official Intelligence* action should be consolidated with the Consolidated Action and Official Intelligence's improper and moot motion for lead plaintiff appointment should be denied in its entirety.

## II.      BACKGROUND

### A.      The PSLRA

"In 1995, Congress enacted the Private Securities Litigation Reform Act (the 'PSLRA') in order to 'reduce abusive and meritless suits by imposing unique requirements and limitations on private class actions alleging securities fraud.'" *In re Synergy Pharms. Inc. Sec. Litig.*, 2019 WL 6150713, at *2 (E.D.N.Y. Nov. 20, 2019) (quoting Wright & Miller, 7B Fed. Prac. & Proc. Civ. § 1806 (3d ed.)). The "purpose was in part … to ensure that parties with significant financial interests in the litigation participated and exercised control over the selection and actions of plaintiffs' counsel." *Id.* (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Labranche & Co.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004)). "The PSLRA's goals were to be achieved by encouraging

institutional investors to serve as lead plaintiffs in a single consolidated proceeding," and to that end the PSLRA "sets forth a detailed procedure governing the appointment of a lead plaintiff or plaintiffs for [federal securities claims] brought as a class action." *Id.* Under this procedure, an initial "plaintiff filing a securities class action must, within 20 days of filing a complaint, provide notice to members of the purported class in a widely circulated business publication … and inform potential class members that, within 60 days, they may move to serve as the lead plaintiff." *Id.* (quoting Wright & Miller, 7B Fed. Prac. & Proc. Civ. § 1806 (3d ed.)). "The court must then consider motions to appoint lead plaintiff within ninety days of the published notice." *Id.* "Once the lead plaintiff is appointed, that lead plaintiff has the autonomy and authority to direct the course and strategy of the litigation." *Id.*; *see also In re Facebook*, 2013 WL 4399215, at \*2.

The detailed procedure was already followed and implemented in the Consolidated Action. *See infra*.

## B.     Procedural History

On October 11, 2022, this first securities class action in the Consolidated Action was commenced in the this Court under the caption *Esposito v. Block, Inc., et al.*, Case. No. 22-cv-08636 (S.D.N.Y.), asserting Exchange Act claims on behalf of all purchasers of Block securities during the period of November 4, 2021 to April 4, 2022.

On January 4, 2023, pursuant to the process prescribed by the PSLRA, the Court issued an order appointing Plaintiff Fotios Sotiropoulos as Lead Plaintiff on behalf of "all persons and entities other than Defendants that purchased or otherwise acquired Block, Inc. ('Block' or 'SQ') securities between November 4, 2021, and April 4, 2022, both dates inclusive (the 'Class Period')." ECF No. 45. The Court also appointed Hagens Berman Lead Counsel for the putative class. *Id.*

Almost a month after appointment, on January 31, 2023, plaintiff Jordan Michael Hart ("Hart") filed a related putative securities class action in the Northern District of California,

- 5 -

alleging claims for violations of the Securities Act against defendants Block, Jack Dorsey, Anthony Eisen, and Amrita Ahuja on behalf of persons and entities who purchased or otherwise acquired Block securities between November 4, 2021, and April 4, 2022, including all purchasers of Block securities pursuant to the stock-for-stock exchange in connection with Block's merger and acquisition of Afterpay (the "*Hart* action"). That same day, Hart's counsel issued a press release announcing the pendency of the newly filed action. After learning of the *Hart* action, Lead Counsel promptly contacted Hart's counsel and, consistent with this Court's January 4, 2023 lead plaintiff order and relevant case authority, Hart's counsel stipulated to the transfer and consolidation of the *Hart* action with this action. On February 24, 2023, the *Hart* action was transferred to this Court as related to the *Esposito* action.

On March 7, 2023, this Court entered an order consolidating the *Hart* and *Esposito* actions into *In re Block Inc. Securities Litigation*, Master Case No. 1:22-cv- 08636-RA (S.D.N.Y.) (ECF No. 53) (the "March 7 Order"). The March 7 Order contains an automatic consolidation provision that applies to any related securities class action filed against Block, Inc.: "All related Securities Class Actions against Block, Inc. subsequently filed in or transferred to this District shall be consolidated into this action. This Order shall apply to every such action, absent an order of the Court. A party objecting to such consolidation, or to any other provisions of this Order, must file an application for relief from this Order within ten (10) days after the date on which a copy of this Order is mailed to the party's counsel." *Id.*

Again almost a month later after consolidation of the *Hart* action, and four months after appointment of the lead plaintiff, on April 3, 2023, a different plaintiff, Official Intelligence, a member of the putative classes already alleged in the Consolidated Action, belatedly filed a partial copycat class action to the *Hart* action now consolidated in this district, asserting a subset of the

Securities Act claims already alleged in the Consolidated Action (claims under Sections 12(a)(2) and 15, but not 12(a)(1)) against a subset of the defendants named in the Consolidated Action. *See Official Intelligence Pty Ltd. v. Block, Inc. et al.*, No. 1:23-cv-02789-RA (S.D.N.Y.) (the "*Official Intelligence* action"). At the same time, Official Intelligence filed a motion for appointment of itself as lead plaintiff and its counsel as lead counsel, styled as "pursuant" to the PSLRA.

On April 7, 2023, counsel for Defendants filed a Notice of Automatic Case Consolidation, which explained that, per the March 7 Order, the newly filed case must automatically be consolidated with *In re Block Inc. Securities Litigation*, Case No. 1:22-cv-08636-RA (S.D.N.Y.), the master docket for this action.

On April 17, 2023, the Court ordered Lead Plaintiff to file a response to Official Intelligence's motion for appointment and stayed all other deadlines until Official Intelligence's motion is resolved. ECF No. 63. That same day, Official Intelligence filed an additional objection to the Court's Consolidation and Leadership Order dated March 7, 2023, which objection largely repeated the same arguments and citations as in its motion for appointment. *See* ECF No. 62. On April 18, 2023, the Court ordered that Lead Plaintiff's response address both Official Intelligence's motion and objection. ECF No. 64.

### III.    ARGUMENT

**A.    The *Official Intelligence* Action Should Be Consolidated**

The *Official Intelligence* action, like the *Hart* action before it, should be consolidated into the instant case and remain subject to this Court's January 4, 2023 order appointing Lead Plaintiff and Lead Counsel in the Consolidated Action.

Indeed, this Court has already ordered that: "All related Securities Class Actions against Block, Inc. subsequently filed in or transferred to this District shall be consolidated into this action." ECF No. 53. That ruling is consistent with Rule 42(a) and the PSLRA, which both

empower and direct district courts to consolidate related actions "when the actions involve 'a common question of law or fact.'" *In re Synergy*, 2019 WL 6150713, at *3 (quoting *Hom v. Vale, S.A.*, 2016 WL 880201, at *2 (S.D.N.Y. Mar. 7, 2016)). District courts are endowed with "broad discretion to determine whether to consolidate actions," *id.* (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)), but "[n]either Rule 42 nor the PSLRA demands that actions be identical before they may be consolidated." *Id.* (quoting *Pinkowitz v. Elan Corp.*, 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002)); *see also Hom*, 2016 WL 880201, at *2 ("Under Rule 42 and the [PSLRA], actions need not be 'identical' to allow for consolidation."). "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan*, 240 F.R.D. at 91. Courts in this district routinely consolidate related securities class actions where, as here, there are "numerous areas where the facts of the two cases overlap." *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992).

There is no dispute that the Consolidated Action and the *Official Intelligence* action share numerous "common questions of law and fact," for the *Official Intelligence* complaint has a mere subset of the claims asserted in the *Hart* action, which itself was already consolidated into the Consolidated Action. As such, the *Official Intelligence* action merely asserts a small subset of the *same* claims against the *same* defendants in violation of the *same* securities laws by concealing the *same* facts about Defendants' alleged lack of data security practices, which were ultimately revealed across the *same* disclosures and materializations of risk and damaged the *same categories of* securities (Block common stock and derivative Chess depositary interests). *See Official Intelligence*, ECF No. 1. Moreover, Official Intelligence specifically identified the Consolidated

Action as a "related case" and, in its complaint and motion and objection, admit to basing its claims on review of the already consolidated *Hart* complaint. This is an understatement. As the simple comparison of the complaint demonstrates, Official Intelligence duplicated Hart and Lead Plaintiff's complaints here, simply cutting and pasting vast swaths, save for those few, obvious short seller allegations that emerged after *Hart* was already filed and consolidated, but which have since already been reviewed by Lead Plaintiff and incorporated into Lead Plaintiff's forthcoming amended complaint.

The marginal differences Official Intelligence overstates in its brief are no basis for contravening the Court's March 7 consolidation order. This Court's holding was consistent with the black-letter principle that "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate" where, as here, "the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan*, 240 F.R.D. at 91; *see also Kux–Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016); *Taylor v. Barnes & Noble, Inc.*, 2014 WL 12769396, at *4 (S.D.N.Y. July 16, 2014) (consolidating actions, despite eight-month "non-overlapping period," where allegations were all "of the same 'nature' and 'pattern'"); *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 394 (S.D.N.Y. 2014); *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 288 F.R.D. 26, 35-36 (S.D.N.Y. 2012); *Taubenfeld v. Career Educ. Corp.*, 2004 WL 554810, at *1 (N.D. Ill. Mar. 19, 2004).

Official Intelligence contends that Exchange Act and Securities Act claims are categorically incompatible and cannot be consolidated simply because their substantive elements

only partially (not completely) overlap. *See* Mot. at 6-11. That is a gross misstatement of law,[1] contrary to well-settled practice in this district and nationwide. In truth, "courts in this district have routinely consolidated actions Securities Act and Exchange Act claims." *In re Facebook*, 288 F.R.D. at 36; *see also In re Gen. Elec. Sec. Litig.*, 2009 WL 2259502, at *3 (S.D.N.Y. July 29, 2009) (consolidating Securities Act and Exchange Act actions, because, like here, "there is substantial overlap in the complaints," and "consolidating the actions is the most efficient course" to avoid "duplicative efforts, wasting both the Court's time and the parties' time and money."); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (recognizing claims under the Securities Act and Exchange Act are "well-suited for consolidation").[2] For good reason: Consistent with *Hevesi,* courts in this district have consistently

---

[1] Official Intelligence's suggestion that the PSLRA's identical usage of "this subchapter" in both the Exchange Act and Securities Act somehow prevents a single lead plaintiff appointment for both Exchange and Securities Act claims makes no sense, has never been adopted by any court nationwide, and Official Intelligence misleadingly cites two cases having nothing to do with lead plaintiff appointment. *See* Mot. at 6-7. In *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, the court dealt not with lead plaintiff appointment but with what predicate violations would support derivative claims under Section 20A of the Exchange Act. 32 F.3d 697, 703 (2d Cir. 1994). And in *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Tr. 2006-3*, the court was dealing only with heightened pleading requirements, not lead plaintiff appointment. 825 F. Supp. 2d 1082, 1123 (D.N.M. 2011). Neither cited case says anything even arguably supportive of Official Intelligence's gross misstatement of law.

[2] Contrary to Official Intelligence's misstatement otherwise, courts in this District and throughout the country routinely appoint a single lead plaintiff to oversee a combination of Securities Act and Exchange Act claims. *See, e.g.*, *Burnham v. Qutoutiao Inc.*, 2020 WL 6484490, at *2-3 (S.D.N.Y. Nov. 4, 2020); *Parot v. Clarivate Plc*, 2022 WL 1568735, *3-4, *6-7 (E.D.N.Y. May 18, 2022); *Plymouth Cty. Ret. Ass'n v. Innovative Tech., Inc.*, 2021 WL 4298191 (S.D.N.Y. Sept. 21, 2021), *adhered to on recons. by* 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021); *Garnett v. RLX Tech. Inc.*, 2021 WL 3913541 (S.D.N.Y. Aug. 31, 2021); *Perez v. HEXO Corp.*, 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020), *recons. denied by* 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020); *Hung v. iDreamSky Tech. Ltd.*, 2016 WL 299034, at *4, *6 (S.D.N.Y. Jan. 25, 2016); *Reitan*, 68 F. Supp. 3d at 394, 399-400; *accord Steppacher v. Alfi, Inc.*, 2022 WL 1115049, at *2, *6 (S.D. Fla. Apr. 13, 2022); *Turnofsky v. Electrocore, Inc.*, 2020 WL 1969913, at *3, *6 (D.N.J. Apr. 24, 2020); *Crews v. Rivian Automotive, Inc.*, 2022 WL 17883615, at *2-3, *5 (C.D. Cal. July 1, 2022); *Welch v. Meaux*, 2020 WL 4758269, at *2-3 (W.D. La. Aug. 17,

rejected arguments like Official Intelligence's, instead holding that although "there are notable differences between the Exchange Act and Securities Act claims-particularly with respect to the facts and burdens of proof associated with each claim-the Second Circuit has already determined that such differences do not prevent the appointment of a [single] lead plaintiff, … who only has standing to assert Exchange Act claims." *In re OSI Pharms., Inc. Sec. Litig.*, 2005 WL 6171305, at \*5 (E.D.N.Y. Sept. 21, 2005) (citing *Hevesi*, 366 F.3d at 82-83); *see also Cohen v. Luckin Coffee, Inc.*, 2020 WL 3127808, at \*7-8 (S.D.N.Y. June 12, 2020) (appointing single lead plaintiff for both Exchange Act and Securities Act claims despite purported lack of standing). At the same time, Official Intelligence states the truism that Exchange Act claims can pose additional substantive elements—e.g., scienter, reliance, loss causation—it ignores that it is beyond dispute that the central, overriding element of both categories of claims is material misrepresentation and omission. Where, as here, that overriding element of all claims—Exchange Act and Securities Act alike—turns on the same core facts—i.e., Block's undisclosed derelict data security practices—courts have consistently held that "consolidating the actions is the most efficient course to avoid a fractious litigation of duplicative efforts and unnecessary costs and delays." *In re Facebook*, 288 F.R.D. at 36.

Moreover, consolidation is necessary to enforce the PSLRA's lead plaintiff provisions and preserve the leadership structure established by this Court's Order. As numerous courts addressing similar attempts by niche plaintiffs to bring satellite class actions have held, the PSLRA confers on the court-appointed lead plaintiffs the sole authority to direct the course of the litigation on behalf of the class, including determining which claims to assert, which defendants to sue, and to

---

2020); *Kolominsky v. Root, Inc.*, 2022 WL 190053, at \*1, \*3 (S.D. Ohio Jan. 21, 2022); *Einhorn v. AxoGen, Inc.*, 2019 WL 5636382, at \*1, \*3 (M.D. Fla. Apr. 20, 2019).

define the appropriate scope of the class period. *See, e.g.*, *In re Synergy*, 2019 WL 6150713, at *3-6; *In re Facebook*, 2013 WL 4399215, at *3-4; *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 2012 WL 1308993, at *2-3 (S.D.N.Y. Apr. 16, 2012) ("*BoA III*") ("[L]ead plaintiffs have authority and discretion to choose which claims to pursue, and … any lead plaintiff necessarily makes determinations that limit a shareholder class …. [Others] remain free to pursue … claims individually."); *BoA II*, 2011 WL 4538428, at *2; *BoA I*, 2010 WL 1438980, at *1-2. To hold otherwise, and to permit a litigant to bring a niche class action asserting claims that the lead plaintiff determined should not be asserted, would nullify the purpose of the lead plaintiff provisions of the PSLRA, invite a flood of lawyer-driven litigation, and interfere with the lead plaintiff's ability and authority to manage the class action litigation. *See, e.g.*, *BoA II*, 2011 WL 4538428, at *2; *see also Hevesi*, 366 F.3d at 83.

The *BoA* decisions are instructive. In *BoA I*, the lead plaintiffs initially elected to sue only on behalf of common stock purchasers, and not to bring claims on behalf of options- or bond-holders. *See* 2010 WL 1438980, at *1-2. After the lead plaintiffs filed their consolidated complaint, several individual plaintiffs sought to file separate class actions asserting claims on behalf of options- and bond-holders. *Id.* Relying on the Second Circuit's ruling in *Hevesi*, then-District Judge Chin held that these plaintiffs could not maintain separate class actions, reasoning:

> [I]n a securities class action, a lead plaintiff is empowered to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class. … Lead Plaintiffs have the authority to decide what claims to assert on behalf of securities holders. Permitting other plaintiffs to bring additional class actions now, with additional lead plaintiffs and additional lead counsel, would interfere with Lead Plaintiffs' ability and authority to manage the Consolidated Securities Actions.

*Id.* at *2. Following Judge Chin's decision, the lead plaintiffs asserted certain options claims in their consolidated complaint, but, after those claims were dismissed, decided not to pursue those

- 12 -

claims further. *See BoA II*, 2011 WL 4538428. Another plaintiff then sought to bring a separate class action on behalf of the options holders whose claims were no longer being prosecuted, arguing that he should now be permitted to do so because lead plaintiffs had elected not to pursue those claims. *Id.*

Judge Castel, to whom the case had been transferred after Judge Chin's appointment to the Second Circuit, also rejected the options plaintiff's attempt to bring a separate class action, holding, "[s]uch tactical decisions [about which claims to assert] are the prerogative of a lead plaintiff. … Such a decision is within the lead plaintiffs' prerogative 'to exercise control over the litigation as a whole.'" *Id.* (quoting *Hevesi*, 366 F.3d at 82 n.13). Judge Castel explained that if the options holders were permitted to bring a separate class action, such a result would not only contravene the PSLRA, but would lead to a landscape in which:

> [A]ny consolidated securities fraud class action [would] carry with it a corresponding ecosystem of separate class actions seeking relief on behalf of securities holders whose claims vary from the lead plaintiffs. [The options plaintiffs'] approach invites the type of lawyer-driven litigation that the PSLRA seeks to avoid, and would likely promote near-endless skirmishes about securities holders who fall outside a class definition . …

*Id.* at *2; *see also In re Facebook*, 2013 WL 4399215, at *1-2, *4 (after court consolidated cases separately asserting Exchange and Securities Act claims, lead plaintiff amended the complaint alleging only Securities Act claims; court denied the Exchange Act plaintiff's motion to sever because the court-appointed lead plaintiffs have "sole authority to make strategic decisions on behalf of the class" and the Exchange Act plaintiffs could bring individual actions).

*Synergy* is also instructive. In that case, the court rejected two late-comer plaintiffs' attempts to bring niche class actions similar to the lead plaintiff's consolidated case in all but the scope of the class period. 2019 WL 6150713, at *3-4. Specifically, the lead plaintiff had defined the class period to run from November 10, 2016, to November 13, 2017; the two tag-along

- 13 -

plaintiffs pursued a class period running from September 2017 to October 25, 2018 (thus, 11 of its 13 months fell outside the class period in the consolidated case). Relying on the *BoA* and *Facebook* decisions, the *Synergy* court rejected the insurgent plaintiffs' argument that the difference in "time period alone" precluded consolidation and explained that "[t]he question is far broader – whether the actions involve 'a common question of law or fact' … and arise out of the same subject matter." *Id.* at *3-4. In particular, the court rejected the two plaintiffs' "concern that Lead Plaintiffs will not assert [their] claims," repeating *BoA III*'s holding that "a lead plaintiff necessarily makes determinations that limit the class of shareholders. Inevitably, any class definition establishes boundaries as to who may recover. Individuals excluded from the class may pursue individual claims." *Id.*

Here, as discussed above, the Consolidated Action already includes Exchange Act and Securities Act claims that encompass the exact subset of Securities Act claims redundantly asserted in *Official Intelligence*—namely, that Defendants' omitted material information in connection with its sale of unregistered Block securities in the stock-for-stock merger with Afterpay. Again, the existence of such potential claims was no secret: the class period specified in the PSLRA notice pursuant to which the Lead Plaintiffs were previously appointed includes the entirety of the narrower class asserted in *Official Intelligence*, and those exact Securities claims (plus others) were already asserted in the earlier *Hart* action, which is already part of the Consolidated Action. Pursuant to its duties under this Court's lead plaintiff and consolidation orders, Lead Plaintiff has carefully analyzed these and related potential claims and, after thorough consideration, Lead Plaintiffs and their counsel are currently drafting a complaint that includes the claims and class representative necessary to best serve the Class's interests. That determination of claims and representative parties is within the statutory authority vested in Lead Plaintiff by both the PSLRA

and this Court's Order. As noted above, Lead Plaintiff experienced substantial losses in connection

the very same material omissions by Block and has a significant incentive to pursue any and all

viable strategies for recovering those losses. S*ee* ECF No. 23. Consistent with their duties, Lead

Plaintiff will continue to put the Class's interests first and foremost, defined the scope of "the

litigation as a whole" so as to ensure the best chance of success for *all* Class members.[3] *See Hevesi*,

366 F.3d at 82 n.13.[4]

As in the *BoA*, *Facebook*, and *Synergy* decisions, allowing Official Intelligence to bring a

small subset class action arising from the same legal and factual nucleus as the Consolidated

Action, simply because a different late-comer plaintiff wants its late-comer lawyers in a leadership

position, would render the PSLRA's lead plaintiff provisions meaningless. Such a result would

allow *Official Intelligence* to usurp Lead Plaintiff's authority to control the litigation as a whole,

---

[3] Contrary to Official Intelligence's half-baked aspersion, Lead Plaintiff Sotiropoulos has already acted to timely consolidated the *Hart* action, which timely pled claims under Sections 12(a)1, 12(a)(2), and 15 of the Securities Act, already has class standing to assert those claims, already has additional class representatives with individual standing at the ready to be added to the already scheduled consolidated amended complaint, and nothing about the timing of that forthcoming amended complaint will undermine the timeliness of any of the asserted claims. Official Intelligence and its counsel could have learned all of this had they merely reached out to Lead Counsel before filing this wasteful motion.

[4] The few "new" facts alleged in the Official Intelligence complaint that were not originally pled in the earlier-filed *Hart* action relate to events that only recently surfaced. Still, much of the Official Intelligence complaint is mere verbatim repetition of the *Hart* complaint's allegations, and, in any event, the core theory of liability is the same, the underlying factual and legal issues are the same, and the newly added allegations all relate to the existing theories already part of the Consolidated Action. "These purported distinctions are at their core a product of the framing of the allegations rather than true differences in the underlying subject matter[.]" *In re Synergy*, 2019 WL 6150713, at *4 (granting motion to consolidate); *see also In re CenturyLink Sales Pracs. & Sec. Litig.*, 2018 WL 1902725, at *4 (D. Minn. Apr. 20, 2018) (consolidating later-filed securities case with existing case and finding that cases are related where, if "the matters were not consolidated, there would be a risk of inconsistent or conflicting rulings regarding Defendants' liability and class members' recoverable damages"); *id.* ("Consolidation will result in substantial judicial economy and avoid the inconvenience, expense, and prejudice from having the parties litigate two identical class actions.").

nullify Lead Plaintiff's decision to begin to define the claims and class as they will in the forthcoming CAC, and create the substantial risk of inconsistent or conflicting factual and legal arguments and judgments during the prosecution of these actions. It would also invite other belated plaintiffs to file additional, separate class actions any time they managed to concoct any or shave off any marginally distinct claims or time period or disagreed with Lead Plaintiff's litigation strategy during the course of the Consolidated Action, and thus would encourage lawyers to file other duplicative niche class actions that differ only superficially from the Consolidation Action simply in an effort to grab a "piece of the pie." This Court appointed Lead Plaintiff to assert appropriate claims arising out of the subject matter of the Consolidated Action, and that is precisely what they have done thus far and will continue to do with the forthcoming CAC.

As the *BoA*, *Facebook*, and *Synergy* courts have all explained, Official Intelligence will suffer no prejudice if it is not permitted to bring its own separate class action because it remains free to pursue any distinct claims that it may have through an individual action. *See Synergy*, 2019 WL 6150713, at *4; *In re Facebook*, 2013 WL 4399215, at *6 ("[T]he Exchange Act Plaintiffs will not suffer any prejudice if they are not permitted to bring their own separate class action. The Exchange Act Plaintiffs remain free to pursue their claims through an individual action, which would permit them to obtain a ruling on the merits of their claims."); *BoA III*, 2012 WL 1308993, at *2-3; *BoA II*, 2011 WL 4538428, at *2; *BoA I*, 2010 WL 1438980, at *1-2. The fact that Official Intelligence waited to file its action until *nearly three months* after Lead Plaintiff's appointment, after their exact subset of Securities Act claims were already incorporated into the Consolidated Action, and just weeks ahead of the forthcoming Consolidated Class Action Complaint, all with no effort whatsoever to contact or coordinate with already court-appointed Lead Counsel,

- 16 -

demonstrates that not even *Official Intelligence* truly believes it is at all prejudiced by the Court's existing lead plaintiff appointment and consolidation orders.[5]

**B.      The Court's Existing Lead Plaintiff Appointment Order Controls**

The PSLRA's strict statutory process for appointing lead plaintiffs over a single consolidated action does not contemplate continuously revisiting the lead plaintiff appointment in

---

[5] Official Intelligence contends that "Courts regularly separate Securities Act claims and Exchange Act claims" due to the differences in the causes of action. Br. at 13-14. But, in the Second Circuit, that is not true. Instead, post-*Hevesi*, courts in this Circuit typically recognize that under the PSLRA a lead plaintiff's "financial stake" in the litigation resulting from "the same wrongful acts" is what matters; not the lead plaintiff's standing to sue on all claims. *Parot v. Clarivate PLC*, 2022 WL 1568735 (E.D.N.Y. May 18, 2022). This is particularly true where, as here, the lead plaintiff assures the Court that it will include a named plaintiff with standing for every claim in a consolidated complaint. *Id.* at *7 (citing *Hevesi*, 366 F.3d at 82-83). In the Second Circuit, these principals are "well settled law." *Fishbury, Ltd. v. Connetics Corp.*, 2006 WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006); *see also Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) (citing *Hevesi*, 366 F.3d at 82 n.13) (noting that requiring a lead plaintiff for each claim would undermine the PSLRA's purpose); *In re Facebook, Inc.*, 822 F. App'x 40, 44 (2d Cir. 2020) (same). Notably, the few cases in this Circuit cited by Official Intelligence appear to ignore this "well settled" principle. *See Gross v. AT&T Inc.*, 2019 WL 7759222, at *2 (S.D.N.Y. June 24, 2019) (appointing a Securities Act co-lead plaintiff without considering that an additional named plaintiff with standing could be included in an amended complaint); *In re Fannie Mae 2008 Sec. Litig.*, 1:08-cv-07831-GEL, slip op. (S.D.N.Y. Apr. 16, 2009) (18 cases consolidated and co-lead plaintiffs appointed without any analysis of lead plaintiff standing); *but see Marquez v. Bright Health Grp.*, Inc., 2022 WL 1314812, at *8 (E.D.N.Y. Apr. 26, 2022) (refusing to appoint separate lead plaintiffs without reference to *Hevesi*).

Likewise, *Wang v. Athira Pharma, Inc.*, 2021 WL 4726458, at *3 (W.D. Wash. Oct. 5, 2021), is inconsistent with Second Circuit authority and, even outside of this Circuit, the court's holding is the exception rather than the rule. *See Harold Roucher Trust U/A DTD 09/21/72 v. Franklin Bank Corp.*, 2009 WL 1941864, at *3 (S.D. Tex. July 6, 2009) (where the initial lead plaintiff removed preferred stockholders from amended complaint because of a lack of standing, and where there was a "limited fund" for potential recovery, appointing a separate preferred stock lead plaintiff); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 438-442 (S.D. Tex. 2010) (creating a subclass because of distinct legal theories and types of misrepresentations, during different time periods); *In re Peregrine Sys., Inc. Sec. Litig.*, 2002 WL 32769239, at *11-*12, *17 (S.D. Cal. Oct. 11, 2002) (appointing separate lead plaintiffs without consideration of potential inclusion of additional named plaintiffs); *In re Nanophase Techs. Corp. Litig.*, 1999 WL 965468, at *5-*6 (N.D. Ill. Sept. 30, 1999) (same); *but see Smith v. Suprema Specialties*, 206 F. Supp. 2d 627, 642 (D.N.J. 2002) (denying motion for appointment as co-lead plaintiff as moot without further analysis).

the event additional facts or circumstances come to light that impact the claims. Rather, once appointed, the lead plaintiff is vested with the authority to prosecute all related claims—a responsibility that necessarily includes the authority to "'vigorously pursue *all available causes of action* against *all possible defendants* under *all available legal theories*.'" *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002); *see also BofA I*, 2010 WL 1438980, at *2 (once appointed, PSLRA lead plaintiffs have the "*authority to decide what claims to assert on behalf of the class*" (emphasis added)).

The authority to plead all available factual and legal theories is broad. Where late-comer plaintiffs plead "substantially the same claims" as those already encompassed by a consolidated action subject to an existing court-appointed lead plaintiff—even if the later plaintiffs allege causes of action different from the earlier-filed complaints or "expand the class period"—no new PSLRA notice is required. *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997). As the court in *Lax* explained in denying a request for republication of PSLRA notice even where a later-filed action asserted different causes of action against different defendants during a different class period, republication "would be inconsistent with the purposes of the PSLRA" because "such a rule would mean that the lead plaintiff could not be appointed until sixty days after the publication of the *last* notice related to that securities litigation. In some cases, appointment of lead counsel could be delayed indefinitely if new complaints … for the class period were filed." *Id.* (emphasis in original). That is why courts roundly "'*disfavor* republication when a complaint is amended unless the amended complaint substantially alters the claims or class

members.'" *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 2020 WL 1181366, at \*10 (D. Conn. Mar. 10, 2020).[6]

Official Intelligence's arguments to the contrary do not withstand scrutiny. While broadly pronouncing a single lead plaintiff cannot represent both Exchange Act and Securities Act claims, Official Intelligence tellingly cites nothing in support of the grand misstatement of law. Because there is none. In fact, not only do courts in this district and nationwide routinely appoint single lead plaintiffs to asserts similarly related claims under both the Exchange Act and Securities Act, but indeed the Second Circuit in *Hevesi* expressly rejected Defendants' position in unmistakable terms:

> Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the

---

[6] Official Intelligence's refrain regarding "corrective" notice is contrary to law. The *Hart* action notice directed Official Intelligence and all other potentially interested former Afterpay shareholders to the public dockets giving fair notice of the transfer and consolidation orders and the existing lead plaintiff appointment order, which controls this Consolidated Action. The PSLRA does not countenance additional costly and potentially confusing notice in these circumstances, where all putative class members were encompassed by original notice and all claims arise out of the same alleged misrepresentations and omissions. *See, e.g.*, *Horowitz v. SunEdison, Inc.*, 2016 WL 1161600, at \*2 (E.D. Mo. Mar. 24, 2016) (finding "PSLRA does not require republication of notice" where original case and subsequent case assert "'substantially the same claim or claims,'" even where class period is expanded); *Hom*, 2016 WL 880201, at \*4 (same); *In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233, 1241-42 (D.N.M. 2009) (republication not required where "[t]he new claims are closely related to the initial claims expressly covered in the notice, and requiring further notice for the amendments here would serve only to delay the progress of this case and would contravene the PSLRA notice provisions' goal of securing lead plaintiffs 'as soon as practicable,'" particularly where original notice "fulfilled its purpose" of adequately "alert[ing] prospective lead plaintiffs of the pendency of an action"); *Greenberg v. Bear Stearns & Co., Inc.*, 80 F. Supp. 2d 65, 69 (E.D.N.Y. 2000) ("[N]either case law nor the provisions of the PSLRA require a second notice to be published" when new claims arise from same core facts and circumstances); *Dube v. Signet Jewelers Ltd.*, 2017 WL 1379385, at \*2 (S.D.N.Y. Apr. 14, 2017) (new notice and reopening of lead plaintiff process is only warranted if subsequent complaints "'*dramatically alter[] the contours of the lawsuit*'") (emphasis added).

- 19 -

outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.

*Hevesi*, 366 F.3d at 82-83 (rejecting purported need for separate lead plaintiffs for Exchange Act versus Securities Act claims). Consistent with *Hevesi,* courts in this district have consistently rejected arguments like Official Intelligence's, instead holding that although "there are notable differences between the Exchange Act and Securities Act claims-particularly with respect to the facts and burdens of proof associated with each claim-*the Second Circuit has already determined that such differences do not prevent the appointment of a [single] lead plaintiff, … who only has standing to assert Exchange Act claims*." *In re OSI Pharms.*, 2005 WL 6171305, at *5 (emphasis added) (citing *Hevesi*, 366 F.3d at 82-83); *see also Cohen*, 2020 WL 3127808, at *7-8 (appointing single lead plaintiff for both Exchange Act and Securities Act claims notwithstanding purported lack of standing); *Glick v. Arqit Quantum, Inc.*, 2023 WL 2764741, at *6 (E.D.N.Y. Mar. 31, 2023) (rejecting argument that PSLRA lead plaintiff might lack standing to pursue related claims of purchasers of different securities, for a "lead plaintiff's claims 'need not be identical' to the claims of the class," and "'similarity of legal theory may control even in the face of differences of fact.'"); *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 266 (S.D.N.Y. 2019) (finding that movant who purchased a single type of security, "and not any other [defendant] securities, does not bar him from serving as lead plaintiff on behalf of a class comprised of those who bought securities generally"); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, 2015 WL 1345931, at *5 (S.D.N.Y. Mar. 19, 2015) ("[P]laintiffs who ... purchased certain securities ha[ve] class standing to assert claims on behalf of purchasers of other related securities where the allegedly fraudulent conduct was a nearly identical misrepresentation ... common to every ... registration statement.") (cleaned up); *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 2009 WL 2168767, at *2 (S.D.N.Y. July 16, 2009) ("there is no requirement under either the Private Securities Litigation

Reform Act of 1995 or the case law in this Circuit for a lead plaintiff to possess 'standing to sue on every available cause of action.'"); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 438 (S.D.N.Y. 2008) ("[T]he Second Circuit has held that there is no requirement that a court select as lead plaintiff only a movant with standing to assert every possible claim against every defendant, nor does the presumptive lead plaintiff fail to satisfy the typicality prong if he or she cannot assert every possible claim."); *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) (finding that any suggestion "that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action ... has been rejected repeatedly by courts in this Circuit and undermines the purpose of the PSLRA").

Official Intelligence's purported Securities Act "standing" concerns are even further off the mark. First, contrary to Official Intelligence's presumptive analysis, Lead Plaintiff does have standing to represented Securities Act class members because all claims in the Consolidated Action—both Exchange Act and Securities Act—turn on the same misrepresented and omitted information and thus "implicate[] 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Owens v. Elastos Foundation*, 2021 WL 5868171, at *11 (S.D.N.Y. Dec. 9, 2021) (holding open market purchaser lead plaintiff with individual standing under Exchange Act also had standing to represent Securities Act class members who purchased unregistered securities directly in offering) (quoting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)); In *NECA,* the Second Circuit held that plaintiffs who purchased certain securities had standing to assert claims on behalf of purchasers of other related securities where the misconduct underlying all claims was a "nearly identical misrepresentation." *Id.* at 162. The fact that the nearly identical misrepresentations and omissions may have appeared in *different* offering documents for *different*

offerings of *different* stock made no difference where those distinctions "ha[d] no effect on a given purchaser's assertion that the representation was misleading." *Id.* at 162-63. Thus the Second Circuit held that "claims brought by a purchaser … from one offering would raise a 'set of concerns' nearly identical to that of a purchaser from another offering." *Id.* at 163. Here, again, all claims turn on the exact same allegedly omitted information regarding Block's data security practices and impact on its business. Accordingly, all the claims "implicate[] 'the same set of concerns'" and Lead Plaintiff has class standing. *Id.*; *see also Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 181 (D. Conn. 2019) (holding that where "claims brought under the Exchange Act, for which [lead plaintiffs] indisputably ha[ve] standing, are based on the same set of misrepresentations and omissions as the Securities Act claims," all "[t]he claims turn on the same proof, and, therefore, implicate the same set of concerns for each set of plaintiffs," and thus the Exchange Act lead plaintiffs "had the class standing to assert the Securities Act claims").

Second, even if Lead Plaintiff did somehow lack standing in some respect (again, not true), "[a]ny concerns with respect to [lead plaintiff's] capability to represent the Securities Act plaintiffs are mitigated by [lead plaintiff's] obligation, as Lead Plaintiff, to designate appropriate named Plaintiffs to assist in advancing the Securities Act claims." *See In re OSI Pharms.*, 2005 WL 6171305, at *6 (citing *Hevesi*, 366 F.3d at 82-83); *see also Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253-54 (S.D.N.Y. 2003); *In re Global Crossing Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204 (S.D.N.Y. 2003) ("In conducting the lawsuit on behalf of all class members and all those who have brought complaints that have been consolidated under their leadership," lead plaintiffs can "identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, *at the class*

*certification stage*, to have distinct interests or claims."). Had Official Intelligence made any effort to contact Lead Counsel before filing this wasteful motion and objection, it would have learned that its standing concerns are not only meritless and premature in light of controlling Second Circuit precedent but will also be mooted several times over upon the filing of Lead Plaintiff's forthcoming CAC.

Official Intelligence's inapposite and distinguishable citations deserve short shrift. ECF No. 56 at 9. Each of the cases they cite on this point addressed an initial lead plaintiff appointment, not, like here, a belated effort by a redundant, late comer to reopen already existing and sound appointment and consolidation orders. *See id.* Moreover, not only has *Wang v. Athira Pharma. Inc*. been discounted as a "nonbinding, out-of-circuit decision"—i.e., a result unbound by the Second Circuit's contrary and controlling decision in *Hevesi*—but in *Wang*, "the movant with the indisputably greatest Section 10(b) losses" inexplicably conceded a lack of Securities Act standing (Lead Plaintiff certainly does not concede as such here, *see supra*) and also "faced a tangible risk of being unable to prove scienter as an element of his Exchange Act claims and had no losses." *Marquez v. Bright Health Grp.*, 2022 WL 1314812, at \*8 (E.D.N.Y. Apr. 26, 2022) (holding *Wang* inapt and rejecting purported need for "co-lead plaintiff" for Exchange Act and Securities Act claims). So too, *In re Peregrine* dealt with an initial appointment (not reopening the process many months later) and there the movants themselves agreed multiple lead plaintiffs were warranted, and in any event is a dated, outlying decision contrary to the law of this circuit. *Compare In re Peregrine Systems, Inc. Sec. Litig.*, 2002 WL 32769239, at \*11-12 (S.D. Cal. 2002), *with In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 141 n.17 (S.D.N.Y. 2007) ("It is the well established

law of this Circuit that a district court need not choose a lead plaintiff with standing to bring all claims in a securities class action.").[7]

At bottom, the crux of Official Intelligence's position—that the Court should reopen the already concluded lead plaintiff process merely to "cobble together a lead plaintiff group that has standing to sue on all possible causes of action"—"has been rejected repeatedly by courts in this Circuit and undermines the purpose of the PSLRA." *In re Initial Public Offering*, 214 F.R.D. at 123 (citing *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001); *In re Crayfish*, 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002)).[8]

---

[7] Other cases cited by Official Intelligence are plainly inapt, concerning whether at the class certification stage a subclass ought to have its own class representative (as opposed to lead plaintiff), which it will here under the existing structure. *See In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 605-09, 611-12 (D. Minn. 2001); *Feiner v. SS&C Tech., Inc.*, 47 F. Supp. 2d 250, 255 (D. Conn. 1999). Others reflect a *stipulated* appointment of co-lead plaintiffs. In *Miller v. Ventro Corp.*, 2001 WL 34497752, at *10-11 (N.D. Cal. Nov. 28, 2001), for instance, the court did not believe separate representation was necessary but nonetheless appointed a co-lead bondholder plaintiff at the request of the parties. *See also Firefighters Pension & Relief Fund v. Bulmahn*, 2013 WL 6388583, at *2 (E.D. La. Dec. 6, 2013) ("No party opposes the creation of a subclass"). Finally, the remaining authorities are clearly distinguishable and/or provide little support for Official Intelligence's position. *See, e.g.*, *Giarraputo v. UNUMProvident Corp.*, 2000 WL 1701294, at *1, *21 (D. Me. Nov. 8, 2000) (considering whether to dismiss two distinct, unconsolidated complaints without addressing separate lead plaintiff representation); *In re PHLCORP Sec. Tender Offer Litig.*, 1989 WL 251578, at *2 (S.D.N.Y. Nov. 16, 1989) (simply recognizing that sub-classes are available under Rule 23); *Priest v. Zayre Corp.*, 118 F.R.D. 552, 557 (D. Mass. 1988) (same).

[8] As explained *supra*, Official Intelligence's papers are rife with misstatement of law. But even were there any genuine legal support for Official Intelligence's purported standard, Official Intelligence would itself be disqualified as the pot calling the kettle black. For example, were it necessary for the lead plaintiff to have individual standing for all asserted claims, Official Intelligence itself would be disqualified because it only received Block Chess depository receipts and thus, by its own rationale, would lack standing to represent class members who instead received Block common stock. Or, were all lead plaintiffs required to have individual standing or to "act to preserve" all claims, Official Intelligence would itself be disqualified because it omitted the critical Section 12(a)(1) claims from its redundant, subset complaint, either through oversight by its lawyers or in acknowledgment that Official Intelligence's late-comer complaint was filed after the statute of limitation for those class claims already expired. Official Intelligence cannot have it both ways. Were any of its cursory criteria genuine (not so), it would only render Official Intelligence itself plainly unqualified for appointment. Finally, should the Court consider it

## IV.  CONCLUSION

The *Official Intelligence* action brings nothing new—no new claims, no new remedies, no new class members—and rather baselessly seeks to uproot the Court's existing appointment and consolidation orders. That's not how the PSLRA works. Pursuant to the Court's existing lead plaintiff appointment and consolidation orders, consistent with controlling Second Circuit precedent, the *Official Intelligence* action should be consolidated with the Consolidated Action, and Official Intelligence's motion for lead plaintiff appointment should be denied in its entirety.

DATED: May 1, 2023                          Respectfully Submitted,

By: */s/ Reed R. Kathrein*
    Reed R. Kathrein (pro hac vice)
Lucas E. Gilmore (pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Nathaniel A. Tarnor
HAGENS BERMAN SOBOL SHAPIRO LLP
68 3rd Street, Suite 249
Brooklyn, NY 11231
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
nathant@hbsslaw.com

*Lead Counsel*

---

appropriate to consider appointing a separate lead plaintiff for the subclass, Lead Plaintiff reserves all right to present full briefing on Official Intelligence's adequacy and typicality required under the PSLRA.

Brian J. Schall (*pro hac vice* forthcoming)
THE SCHALL LAW FIRM
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Facsimile: (310) 388-0192
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

David William Hall
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94104
Telephone: (415) 766-3534

Michael I. Fistel, Jr.
JOHNSON FISTEL, LLP
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
michaelf@johnsonfistel.com

*Counsel for Plaintiff Hart*