UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE BLOCK, INC. SECURITIES
LITIGATION

                                    22 CV 8636 (RA)

                                    Oral Argument
                                    (via Microsoft Teams)
------------------------------x
                                    New York, N.Y.
                                    December 4, 2023
                                    4:00 p.m.

Before:

                    HON. RONNIE ABRAMS,

                                    District Judge

                    APPEARANCES

HAGENS BERMAN SOBOL SHAPIRO LLP
     Attorneys for Lead Plaintiffs
BY:  REED R. KATHREIN

ABRAHAM FRUCHTER & TWERSKY, LLP
     Attorneys for Plaintiff Official Intelligence Party, Ltd.
BY:  JEFFREY S. ABRAHAM

ORRICK HERRINGTON & SUTCLIFFE LLP
     Attorneys for Defendants
BY:  JAMES N. KRAMER

(case called)

THE COURT:  This is Judge Abrams.  I hope you are all well.

We are here regarding In Re Block, Inc. Securities Litigation.  We are here for oral argument regarding Official Intelligence's motion for appointment as lead plaintiff and objections to this Court's consolidation order.  It also seeks appointment as lead plaintiff for the claims brought under the Securities Act.

Unless anyone has any kind of initial comments, I'm ready to hear from counsel for Official Intelligence.

MR. ABRAHAM:  Certainly, your Honor.  Jeffrey Abraham for Official Intelligence.

Official Intelligence filed its lead plaintiff motion and a complaint in response to the statutory process set in motion by the January 31, 2023 PSLRA notice issued by plaintiff Hart.

Now, it is true that plaintiff Hart's action was consolidated into the prior action filed in which plaintiff Sotiropoulos was appointed lead plaintiff and its counsel selected as lead counsel.  But in that consolidation order, which is ECF number 52, the PSLRA notice was never withdrawn, and it is a statutory process provided for by the Securities Act as mended by the PSLRA.

I'd also note here that the securities and the

transaction through which Official Intelligence received Block securities, it's a discrete transaction done pursuant to a prospectus which was actually not registered with the SEC, directed primarily towards Australian shareholders. They received primarily different securities, SQ CHESS Depository Interests, which I will refer to as CDIs, in exchange for their Afterpay stock, pursuant to that prospectus which I mentioned was not registered with the SEC.

The Section 10(b) case relates to a relatively discrete four-month period. The Securities Act case, the Section 12(a)(2) claims, which my client is seeking to bring on behalf of the class as a lead plaintiff, relates to exactly one offering, that offering which took place for the Afterpay -- former Afterpay shareholders.

Now, plaintiff Sotiropoulos, we don't doubt that he's adequate to be the lead plaintiff for the Section 10(b) claims, but as point in fact he has no financial interest in pressing forward with the Section 12(a)(2) claims because he will not benefit from any recovery with respect to those claims.

THE COURT: But don't members included in the Hart complaint, class members from Hart, have that ability?

MR. ABRAHAM: I think there is a little bit of a problem there because plaintiff Hart actually does not have standing to pursue the Section 12(a)(2) claims. So the filing of the complaint was, in a certain sense, a legal nullity

because the plaintiff lacked standing, it wasn't able to toll the statute of limitations for other absent class members. It was as though somebody wrote on a piece of paper, hey, I'm planning to file a Section 12(a)(2) claim.

But if you look at the date of purchase of plaintiff Hart compared to the date the Afterpay transaction took place, it is impossible that plaintiff Hart received stock through this offering, which was an exchange of stock for Afterpay securities. It does not even claim to own the CDIs.

In theory, plaintiff Hart filed a Section 12(a)(2) claim, but it was just a faulty Section 12(a)(2) claim. He lacks standing. In fact, had plaintiff Official Intelligence not filed its Section 12(a)(2) claim, basically on the last day of the one-year period, it's highly likely that those claims would be time barred under current case law, your Honor.

So plaintiff --

THE COURT: Finish up your point. Thank you.

MR. ABRAHAM: Plaintiff Official Intelligence acted to protect the Section 12(a)(2) claim. It is the only party before the Court right now that has standing to pursue those claims and would benefit from any recovery in this action. And Official Intelligence has also a nice-size loss, and they are very interested in pursuing this claim.

THE COURT: Can we stop there on the size of the loss. To the extent you were, arguendo, able to get over the

timeliness issue, there wasn't much in your papers or in the complaint about the loss such that I would really be able to assess Official Intelligence's financial stake.

I saw in the certification submitted by Simon Smith, he stated that Official Intelligence held 16,376 ordinary shares of Afterpay which were converted to 6,141 Block Inc. Chess Depository Interests as a result of Block's acquisition of Afterpay, but that's the only indication of loss I could find.

MR. ABRAHAM:  We can calculate out a loss based upon the drop in the price of the stock, your Honor.  But when he moved, he was the only person who had any loss resulting from that transaction.

But the 6141 shares of CDIs is a significant position. It's not like he only has two or ten or less than a hundred shares.  We could calculate that out for you, your Honor, and make a supplemental submission, if you would like.  I can't do it on the fly right now.

I think the key point is that plaintiff Official Intelligence is the only party before the Court with Section 12(a)(2) claims, and they are significant.  I don't think anybody would deny that, except for maybe the defendants, but certainly on the plaintiff's side of the V.

We did everything we are supposed to do under the PSLRA.  There was a complaint filed.  It's true that the

plaintiff who filed it lacked standing.  We did more than just file a lead-plaintiff motion.  We went out there and protected the interests of that class, the Section 12(a)(2) claim class, by filing a complaint within the one-year statute of limitations applicable to Section 12(a)(2) claims.

In fact, we believe that if you take the plaintiff Official Intelligence out of this case, whoever comes in later, assuming there is such a person, will lack standing to bring Section 12(a)(2) claims because plaintiff Hart's complaint asserting Section 12(a)(2) claims was ineffective at tolling the statute of limitations because it's plainly obvious on the face, from looking at the certification, that plaintiff Hart lacked standing to do so, to bring those claims.

THE COURT:  Let me ask you a question.

In your August submission you attached an order from *Hub Cyber Security* stating that where a later complaint covers a broader class and class period, it's likely that individuals who could have been potential lead plaintiffs would have disregarded the earlier notice of a narrower complaint.

And I'm wondering what aspects of the Esposito complaint, either that were in the Esposito complaint or missing from the Esposito complaint led Official Intelligence to believe that it was not eligible for appointment as lead plaintiff.

MR. ABRAHAM:  Well, there was nothing in the Esposito

notice that would have notified somebody that had they acquired CDI securities through the Afterpay transaction that they should move.

I guess in the most global sense, if somebody -- it mentioned purchasers of securities, but it didn't mention the existence of 12(a)(2) claim. It didn't mention the CDIs. It didn't mention the Afterpay transaction.

I think when it comes to notices to potential class members, I think that Judge Subramanian's recent decision, consistent with a lot of other decisions in the Southern District, requires greater clarity than challenging plaintiffs to try to figure out what's covered, your Honor.

THE COURT: You talk a lot in your briefing about standing with respect to the Securities Act versus the Exchange Act causes of action. Case law from courts in this circuit have provided that a lead plaintiff need not have standing as to every cause of action as long as there is a class representative or named plaintiff with standing for each cause of action.

I was going to ask, but I think you just sort of answered it a minute ago, but if the Securities Act and Exchange Act claims remain consolidated, my question is, why don't members of the Hart class have standing to sue for the same claims that Official Intelligence seeks to bring? Again, I think you just addressed that a minute ago.

MR. ABRAHAM: The theoretical Hart class members do have standing, but they don't have standing based upon the filing of the Hart complaint. They might have standing based upon the filing of the Official Intelligence complaint to do so.

Can I address the *Hevesi* issue for a second?

THE COURT: Sure.

MR. ABRAHAM: I think we point out in our papers, and I won't belabor it, but *Hevesi* arose out of the MCI securities litigation, which was a multiyear pervasive accounting fraud. In that case, as well as a couple of cases the Second Circuit relied upon, there were sound principles of case administration that counseled in favor of a single unified class.

For example, the IPO litigation before former Judge Scheindlin had over 300 potential subclasses. The Prudential litigation had hundreds of potential claimants. We have here a four-month class period with one offering, and the one offering involves the Afterpay transaction.

The other thing is, in *Hevesi*, the lead plaintiff -- hello?

THE COURT: Mr. Abraham, I lost you for a minute, but we didn't miss anything.

MR. ABRAHAM: That was the scariest thing at a video conference.

THE COURT: It's all right. We survived it.

MR. ABRAHAM:  We survived it, yes.

I think one of the key things about *Hevesi* is that the Exchange Act lead plaintiff took steps to protect the interests of the acts and Securities Act plaintiffs who were going to be class representatives.

In this case we have exactly the contrary.  We have a statute of limitations about to expire for the Section 12(a)(2) plaintiffs, and we have a lead plaintiff that's relying on a complaint filed by plaintiff Hart who on the face of the complaint lacks standing.  And by not causing somebody else or not bringing in a plaintiff who had proper Section 12(a)(2) standing to assert the section 12(a)(2) claims, they endangered the timeliness of those claims.

*Hevesi* is not on point for that reason, and I'd also like to point out, it's in our papers, that *Hevesi* -- the real holding of *Hevesi* is that the Second Circuit declined to adopt the per se rule that a class may not be certified where lead plaintiff does not have standing to bring every available claim, and none of the additional plaintiffs have been vetted under the PSLRA, and that's at 366 F.3d at 82.

In a very technical way I know that *Hevesi* is often read the other way, but *Hevesi* does not opine whether it would have been appropriate to appoint the Securities Act lead plaintiff had somebody moved.  And it's not clear, for example, whether the original plaintiff may have had standing to assert

certain Securities Act claims and not others. It's just not clear from the opinion there.

THE COURT: Thanks very much.

Mr. Kathrein, would you like to respond?

MR. KATHREIN: Sure. There is a mouthful there to respond to.

First of all, it's his burden really to overturn the consolidation order of this case and really to show that consolidation isn't appropriate here.

The notices that were put out in the two cases are identical. The only difference between the notice in the Esposito case and the later notice on which he asserts he is relying on that should have been withdrawn is that it clarifies further that it includes purchasers of Afterpay stock. They are always a subclass of the original notice. The original notice says all persons who purchased or acquired Block securities, so the notice covers them both.

What he's relying on is saying, well, we could put up a second notice for a subclass, and therefore the statute should run again and the Court should appoint another lead plaintiff. And that has been soundly rejected by courts over and over again because that would just extend, as it has here, just push out appointment of the lead plaintiff until every subclass who files a notice is done filing notices or filing new complaints. The *Lax* case says this. The *Teva* case says

this.  It's in our briefs.

He's really -- the notices are no different.  His client had notice to file the complaint.  Indeed when we talked to the Hart plaintiff, they conceded as much and that's why they agreed to be rolled into this case and consolidated into this case.

The second thing he really seems to be hitting home on is that we have somehow failed to preserve the statute of limitations, but we haven't.  We have class standing under NECA.  That preserves the statute of limitations.  All we have to have is Article III standing against the lead plaintiff -- against a defendant in the case for the same -- essentially, the same facts of the same concern.  And we have that here.

We have standing.  It's preserved.  And indeed if you look at the *IndyMac* case, which he cites, the Court says that if you think that the statute of limitations isn't preserved, the proper procedure to follow is to intervene as an additional named plaintiff or file your own timely action, which they could have filed their own timely action.  Is it *IndyMac* that says that?  I think it's *IndyMac*.  That's what I've got here. That's basically a quote from the case.

He could have filed as an additional named plaintiff to preserve.  He could have asked us to amend the complaint sooner.  We were in the process of amending the complaint.  We have three people who are Afterpay purchasers who are in the

same situation as Simon Smith who we will be bringing into the case for standing at the motion-to-dismiss stage.

And indeed if you look at the *Hevesi* case, the initial public offering case, *Global Crossing*, those cases all say that -- in fact, *Global Crossing* makes it most clear -- that we have a duty to bring a plaintiff on at that stage. You don't have that duty at the lead-plaintiff stage, and the PSLRA does not require that you bring them on at the lead-plaintiff stage or that the Court appoint a separate lead plaintiff for every subclass. For the reasons in those cases where it says it's not what the PSLRA says, it makes it more lawyer driven.

So indeed that is our plan to do. We have got three people. I've personally talked to one, and we have his retainer, and we will be adding them to the complaint.

That's not to say that we might not consider whether or not we would keep OI as an additional plaintiff. We have not had that discussion with Mr. Abraham. And we might be willing to do that.

But we will, of course, want to vet his plaintiff too because eventually if we are adding named plaintiffs now, we will want to make sure that they will pass the class cert. situation later on. I believe it was one case, I believe it was the IPO case that said that we should add an additional named plaintiff at least by the class certification stage. We are going to do that. We plan to do that.

There is nothing that is said -- that Mr. Abraham has said that says that *Hevesi* should not be followed. In fact, there is nothing that this Court could do that would be different today by appointment him as a lead plaintiff that's going to preserve the statute of limitations concerns he has raised.

Complaints are filed. The Hart complaint was filed. They had class standing to put defendants on notice of the 12(a) claims or, I guess, the Securities Act claims.

And Mr. Abraham, they filed their complaint. It's already out there. There is nothing that's going to change. With consolidation those claims are all -- have all put the defendants on notice. Whatever arguments they are going to make against the statute of limitations will be made based on the current state of the complaints filed.

Maybe -- and I am not going to concede there is a statute of limitations problem. If there was, they are already on notice. No matter what the Court does, that's the record that's going to go forward on any statute of limitations defense.

With respect to their argument about this chapter, and I'm not clear if he was really talking about that in his oral argument, there is no support for their claims that there has to be a lead plaintiff under the Securities Act and under the Exchange Act. This chapter argument has never been -- it's not

in any cases. The only cases that talk about this chapter that he cites, and he cites to -- one deals with a 20(a) claim and one deals with, I believe, a Section 13 claim and interpreting that those apply under this chapter, which chapter they apply under. There is really no support for that argument there.

We will be amending the complaint. It will cover all of the claims in the case. The statute of limitations is preserved. And most recently *Hevesi* has been reaffirmed in the Facebook case. While it's in the settlement situation, they are talking about conflicts. The Facebook Second Circuit case quotes from *Hevesi*, again saying that the lead plaintiff doesn't have to have all claims.

THE COURT: Thank you.

Mr. Kramer -- I'll give you an opportunity, Mr. Abraham, at the end. I just want to see if Mr. Kramer wants to be heard on behalf of defendants at all.

MR. KRAMER: Yes. Thank you, your Honor.

I would say three things.

First, as the Court pointed out, Hart asserts the same legal claims as Official Intelligence.

Second, as Official Intelligence concedes, the cases share common questions of fact. That's at docket number 62 at page 9.

But the thing that I want to emphasize is, as a repeat player in this space, I'm very concerned of a situation where

consolidation can be upended because someone comes up with a reason why maybe their claims are slightly different or some slight factual difference when the overarching and the overall weight of the facts and the events are the same. We just shouldn't have a situation where we have got different cases, and we should not have a situation where the lead plaintiff and consolidation gets upended.

As a repeat player, again, I think it's important to consolidate these. The PSLRA is very clear about the timing. We take no position on lead plaintiff and who it should be, but we do believe strongly that it should be consolidated so we can have a complaint. Then we can move to dismiss.

Thank you, your Honor.

THE COURT: Thanks very much.

Mr. Abraham.

MR. ABRAHAM: We don't oppose consolidation. It's just a question of how the case proceeds after consolidation.

I want to point out, I think there is an error in what Mr. Kathrein said.

THE COURT: Let me just stop you there. I thought you did oppose consolidation. I thought you want to consolidate the Securities Act claims to be distinct and not consolidated with the Exchange Act claims. Is that incorrect?

MR. ABRAHAM: We have a problem with the consolidation order as it now stands, which lets Sotiropoulos be the lead

plaintiff over all the claims. That's our concern. We are not concerned with the cases being consolidated.

As happens sometimes, this case relates to Sotiropoulos. This case relates to Official Intelligence. Or the way it has happened in other cases, where there is separate lead counsel, and I have mentioned some of the cases, including one that I litigated out in California many years ago, separate lead counsel for Exchange Act claims and separate lead counsel for Securities Act claims.

I do want to point out factually that Official Intelligence did in fact file its own complaint with the express purpose of preserving the statute of limitations and did not just move for lead. It felt the need to file the complaint to eliminate any potential concern that the limitations period had been satisfied here.

We disagree with Sotiropoulos' interpretation of NECA-IBW. In the reply brief we filed with the Court, which is ECF number 72, we cite to cases and we explain that an Exchange Act plaintiff cannot toll the statute of limitations for Securities Act plaintiffs.

Your Honor, I have been doing this for maybe 35 years, and I remember the first time this happened was before the late Judge Nickerson in the Eastern District of New York and the *Crazy Eddie* securities litigation where we argued that the limitations period for a Securities Act claim relating to a

bond offering had been tolled by the 10(b) claims being asserted, and we lost.  10(b) claims cannot toll Securities Act claims.  It is a different statute with different statutory standing.  It requires purchasing in the case of a Section 11 claim, which is not present in this case, on an offering document filed with the SEC, and, in the case of in this case, purchasing pursuant to the prospectus to get Section 12(a)(2) standing.

My colleague also is dismissive of the statutory claim, saying that no Court has ever endorsed it, but no Court has ever rejected it either.  And I think a correct reading of the Exchange Act lead-plaintiff provisions and the fact that they are similar, almost identical provisions inserted into the Securities Act, is that when one has a Securities Act claim, there ought to be a notice informing people that there is a Securities Act claim, and you can move for leave.

So there are a lot of considerations present here, including that the lead plaintiff, Sotiropoulos, did not protect the timeliness as best it could of the Securities Act claims.  They are stuck with a legal argument that's uncertain.

None of the plaintiffs that their counsel purportedly represent that have standing have appeared before the Court. There has been in no document filed before the Court showing that they even represent anybody.  I don't doubt at this stage many months later they might.  None of those people applied to

be lead with respect to the first notice.

If you take that into account with, for example, Judge Subramanian's recent decision, as well as an evolving case law within this district and in this circuit, notice should be as clear as possible. Even if you didn't go that way, there is a complete failure by plaintiff Sotiropoulos to protect the interest as best he could of the Section 12(a)(2) claimants, your Honor.

MR. KATHREIN: May I, your Honor, just respond briefly?

THE COURT: Yes, go ahead.

MR. KATHREIN: In the *Hub* case the judge noted that -- this is before the lead plaintiff was appointed -- noted that the first case applied only to those who acquired shares on a one day. Later on, notices were published saying a 10(b) claim over a four-month period. The judge properly noted at that point those are very different classes or very broad classes and ordered additional notice to go out before he appointed lead plaintiff. That's not the case here. It's just the reverse. We had a very broad notice. Not we, but the Esposito plaintiff. It covered everybody. Everyone was on notice. You didn't need a notice for a shorter time period.

With respect to the preservation issue, I think the *Ontario Teachers v. Teva* case that we cite is instructive, which says that if the plaintiff had Exchange Act claims, those

claims give them class standing to preserve the Securities Act claims, so I think that case is very instructive.

In terms of preservation, the Hart complaint had the 12(a)(2) claims. There is nothing that Mr. Abraham filed that provides additional notice to defendants.

Three, we were not sitting on our hands. We were supposed to amend the complaint. The Hart complaint was already brought in. We had a schedule to amend the complaint. Mr. Sotiropoulos and us as lead counsel had not yet filed the amended complaint.

Sure, what Mr. Abraham did was made them feel better that they preserved the claims perhaps better, but that doesn't mean that they should be lead plaintiff. It means that they put them on notice, and *IndyMac* says that that's the proper procedure to do.

Or if you don't feel lead plaintiffs are going to do anything, you can always file an opt-out or intervene in the case to make the lead plaintiffs expand the claims.

We still hadn't filed the amended complaint. We were going to do so, and we are going to do so, which will include all claims.

MR. ABRAHAM: Your Honor, just one little quick point. I know everything has been gone over.

Preserve the claims better is what an adequate class representative ought to do. People ought to not leave

arguments on the cutting room floor that could endanger class certification and the standing of the class representative to represent those claims.

We think that only artificial intelligence filing its complaint preserve the timeliness. I understand Mr. Kathrein's arguments to the contrary. We don't think they are meritorious. But because -- let's say they might be meritorious. They are still endangering the potential standing for the Section 12(a)(2) claim.

I would submit that if somebody was an adequate lead plaintiff they would make sure to button down every possible argument to prevent dismissal of untimeliness claims, as opposed to relying on their interpretation of a particular case that is in question, your Honor.

THE COURT: Thank you.

I am going to ask you all to order the court transcript. I have a court reporter on the line. We'd like to get that transcript as soon as possible. I completely appreciate the importance of getting you a decision on these motions promptly, and I will do so.

Thank you, all, and have a good day.

(Adjourned)