UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE BLOCK, INC. SECURITIES LITIGATION

No. 22-cv-8636 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

By order dated March 7, 2023, the Court consolidated two related putative securities class actions against Defendant Block, Inc. and individual defendants: *Esposito v. Block, Inc.*, No. 22-cv-8636, and *Hart v. Block, Inc.*, No. 23-cv-1579. It further appointed Fotios Sotiropoulos as lead plaintiff in both actions and ordered all future related securities class actions to be consolidated with the *Esposito* and *Hart* actions. On April 3, 2023, Official Intelligence Pty Ltd. filed an additional putative class action against Block and individual defendants, as well as a motion for appointment as lead plaintiff and approval of its proposed lead counsel. On April 17, 2023, Official Intelligence objected to the consolidation of its action with the *Esposito* and *Hart* actions, as well as to Sotiropoulos serving as lead plaintiff for all of the consolidated claims.

For the reasons that follow, Official Intelligence's objections to the consolidation of its action with the *Esposito* and *Hart* actions are denied and all three cases are hereby consolidated. Its objections to Sotiropoulos serving as the lead plaintiff for the class' Securities Act claims are, however, persuasive, and its motion for (1) appointment as lead plaintiff for the class' Securities Act claims and (2) approval of its selected law firms as lead counsel for those claims is granted.

## BACKGROUND

On October 11, 2022, Donna Esposito filed a putative class action against Block and its executives, Jack Dorsey and Amrita Ahuja, asserting claims under Sections 10(b) and 20(a) of the

Securities Exchange Act ("Exchange Act"), and Rule 10b-5 promulgated thereunder.[1] *See* 15 U.S.C. §§ 78j(b), 78t(a). Esposito's claims arise from Block's alleged inadequate disclosures about its security protocols and a data breach involving sensitive customer information. Esposito Compl. ¶ 5.

In December 2021, a Block employee improperly downloaded sensitive information of up to 8.2 million customers of a Block subsidiary, Cash App. *Id.* ¶¶ 3, 19. This information included customers' full names, brokerage account numbers, brokerage portfolio values, brokerage portfolio holdings, and stock-trading activity. *Id*. After Block announced this data breach on April 4, 2022, the price of Block's shares fell. *Id.* ¶¶ 19–20. Esposito contends that these defendants violated Sections 10(b) and 20(a) of the Exchange Act by failing to earlier report the breach to investors. *Id.* ¶¶ 17–18, 40–54. More generally, she contends that they violated the Act by failing to disclose Block's lack of adequate protocols for protecting sensitive customer information in both its Form 10-Q for the period ending on September 30, 2021 and in a February 24, 2022 shareholder letter. ¶¶ 16, 18, 40–54. Esposito brought her suit on behalf of a putative class of people and entities who purchased or otherwise acquired Block securities between November 4, 2021 and April 4, 2022. *Id.* at ¶ 1. Esposito herself had purchased Block securities on January 4, 2022. Notice of Errata Ex. A, at 21, ECF No. 5-1.

On January 4, 2023, the Court appointed Fotios Sotiropoulos as the lead plaintiff in Esposito's suit. Lead Plaintiff Order at 1, ECF No. 45. It also appointed Hagens Berman Sobol Shapiro LLP as lead counsel and the Schall Firm as additional counsel for the suit. *Id.* at 2.

On January 31, 2023, Jordan Michael Hart also filed a putative class action against Block and its executives, asserting claims under Sections 10(b) and 20(a) of the Exchange Act and Rule

---

[1] Esposito filed a notice to class members on October 11, 2022 in accordance with the Private Securities Litigation Reform Act (PSLRA). Notice of Publication of PSLRA Notice Ex. A, Nov. 10, 2022, ECF No. 16.

10b-5(a) and (c) promulgated thereunder, *see* 15 U.S.C. §§ 78j(b), 78t(a), and under Sections 5, 12(a)(1)–(2), and 15 of the Securities Act, *see* 15 U.S.C. §§ 77l(a)(1)–(2), 77o. Hart Compl. ¶¶ 1–2, 25, 79, 86, 91, 96, 98. In addition to Dorsey and Ahuja, Hart named as a defendant Anthony Eisen, an executive of Afterpay, an independent Australian public company acquired by Block on January 31, 2022.[2] *Id.* ¶¶ 23, 33. Like Esposito, Hart brought his suit on behalf of persons and entities who purchased or otherwise acquired Block securities between November 4, 2021 and April 4, 2022 and were harmed by Block's failure to disclose the data breach and its alleged false and misleading statements about its security practices. *Id.* ¶ 1, 10–13. Hart's action also includes former shareholders of Afterpay who acquired unregistered shares of Block through the acquisition. *Id.* ¶ 1. According to Hart, the defendants in his action failed to adequately disclose the data breach and inadequate security protocols before the acquisition occurred, including during a fairness hearing in New South Wales held as part of the acquisition process. *Id.* ¶ 41, 62, 65, 92.

Hart contends that he is among those who acquired unregistered shares of Block through the acquisition. *See* Hart Comp. ¶ 20 (alleging that that "Block acquired Afterpay by means of the Merger" and "offered and sold approximately 113 million unregistered Block Shares directly to plaintiff and other similarly situated former Afterpay shareholders in exchange for their Afterpay shares"); *see also id.* ¶ 95 (alleging Hart "hold[s] Block securities issued . . . pursuant to the offering materials"). In a certification appended to his complaint, however, Hart asserts only that he acquired shares of Block on December 2, 2021, well before Block's January 31, 2022 acquisition of Afterpay occurred. Hart Certification at 2, No. 23-cv-1579, ECF No. 1-2. Hart filed a PSLRA notice on January 31, 2023. Decl. of Jeffrey S. Abraham Ex. A, ECF No. 57.

---

[2] At the time the acquisition with Afterpay commenced, Block was known as "Square, Inc." and Afterpay shareholders were to acquire Square securities. Hart. Compl. ¶¶ 3, 20, 33.

On March 7, 2023, pursuant to an agreement among the parties in both actions, the Court ordered the *Esposito* and *Hart* suits consolidated. Consolidation Order, at 3, ECF No. 53. It further ordered that "[a]ll related Securities Class Actions against Block, Inc. subsequently filed in or transferred to this District shall be consolidated into this action." *Id.* The Order incorporated the terms of the Court's January 4, 2023 Order appointing Sotiropoulos as lead plaintiff for the *Esposito* action. *Id.*

On April 3, 2023, Official Intelligence filed a putative class action against Block, Dorsey, and Jim McKelvey, another Block executive, asserting violations of Sections 12(a) and 15 of the Securities Act in connection with Block's allegedly inadequate disclosures. Official Intelligence Compl. ¶ 4. Official Intelligence makes allegations similar to Hart.

On the same day it filed its complaint, Official Intelligence also filed a motion to serve as lead plaintiff in its suit and for the approval of its selected lead counsel. Mot. to Appoint Official Intelligence Pty Ltd. Lead Plaintiff, ECF No. 54. On April 7, 2023, Block, Dorsey, and Ahuja filed a notice of automatic case consolidation, asserting that the Court's March 7, 2023 Order required that the *Official Intelligence* action be consolidated with the *Esposito* and *Hart* actions. Notice of Automatic Case Consolidation, ECF No. 61. On April 17, 2023, Official Intelligence filed objections to the Court's March 7, 2023 Order, arguing that its action should remain unconsolidated with the others and that, if the actions were to remain consolidated, a separate lead plaintiff and lead counsel should be appointed for the class' Securities Act claims. Objs. to the Consolidation Order, ECF No. 62. Those objections and Official Intelligence's motion to serve as lead plaintiff are now before the Court.

## DISCUSSION

### I.      Consolidation

The Court first addresses whether to consolidate the *Official Intelligence* action with the *Hart* and *Esposito* actions.[3] *See, e.g.*, *Fishbury, Ltd. v. Connetics Corp.*, No. 06-cv-11496, 2006 WL 3711566, at *1 (S.D.N.Y. Dec. 14, 2006) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)) ("The [PSLRA] provides that outstanding motions to consolidate should be decided prior to the resolution of motions for the appointment of lead plaintiff.").

The decision to consolidate actions involving common questions of law or fact lies within "the sound discretion of the Court." *May v. Barclays PLC*, No. 23-cv-2583, 2023 WL 5950689, at *5 (S.D.N.Y. Sept. 13, 2023) (internal quotation marks omitted); Fed. R. Civ. P. 42(a). "Consolidation is appropriate where it serves the interest of judicial economy, timeliness, and cost reduction while honoring the 'paramount concern of a fair and impartial trial.'" *May*, 2023 WL 5350689, at *5 (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir. 1990)). Consolidation in securities litigation "is appropriate even in cases where there are '[d]ifferences in causes of action, defendants, or the class period,' as long as there are common questions of fact and law." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 35 (S.D.N.Y. 2012) (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)). Plaintiffs often "proceed as a single class" where they assert both Securities Act and Exchange Act claims. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 37 (2d Cir. 2009). In addition, when multiple securities

---

[3] *Official Intelligence* originally argued that claims under the Securities Act should not be consolidated with claims under the Exchange Act and instead "should proceed separately from the Exchange Act claims either as a separate class or subclass, or in a coordinated, instead of consolidated, action." Official Intelligence's Objs. at 13; *see also id.* at 2, 6. During oral argument, however, counsel for Official Intelligence explained that it does not take issue with the consolidation of the Exchange Act and Securities Act claims in principle; rather, it opposes consolidation as outlined in the Court's March 7, 2023 Order, with Sotiropoulos serving as lead plaintiff for all the consolidated claims. Oral Arg. Tr. 15:16–16:2.

actions against common defendants rely on the same public statements and reports, consolidation is particularly appropriate. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. at 35–36 (stating that class actions "that seek relief on behalf of similar classes, asserted against some of the same defendants, arising out of the same series of events, and assert claims under federal securities laws" warrant consolidation).

That is the case here. The *Esposito*, *Hart*, and *Official Intelligence* actions each involve common factual questions related to Block's security protocols, data breach, and disclosures. The complaints further rely on common public statements and reports. Each complaint alleges that Block's SEC forms contain false statements and omissions regarding its ability to prevent data breaches. Esposito Compl. ¶¶ 16–18; Hart Compl. ¶¶ 49–51, 62–63; Official Intelligence Compl. ¶ 37. The *Hart* and *Official Intelligence* complaints, moreover, each assert that Block failed to disclose both its inability to prevent security breaches and the December 2021 breach before Block acquired Afterpay. Hart Compl. ¶¶ 10–11, 62, 65–68; Official Intelligence Compl. ¶ 31. Furthermore, all three complaints allege that disclosure of the breach caused Block security owners to suffer financial damages. Esposito Compl. ¶¶ 20, 32; Hart Compl. ¶¶ 63, 70; Official Intelligence Compl. ¶¶ 2, 36. Each action also share Block and Dorsey as common defendants.

Where certain actions exclusively assert claims under the Securities Act, others exclusively assert claims under the Exchange Act, and others still assert claims under both statutes, that is considered a "minor difference[]" that can be resolved through the filing of a consolidated complaint. *Olsen v. N.Y. Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 104–05 (E.D.N.Y. 2005); *see also In re Facebook, Inc.*, 288 F.R.D. at 35–36. The naming of "different individual defendants" also does not require that each action proceed separately. *Olsen*, 233 F.R.D. at 104–05. That claims under the Exchange Act require a showing of scienter, whereas claims under the Securities Act do

not, is also not a bar to consolidation. *See In re Facebook, Inc.*, 288 F.R.D. at 35–36 (rejecting Exchange Act plaintiffs' argument that their case should not be consolidated with Securities Act plaintiffs' because "to prevail, first, they would have to prove scienter, which is not a relevant issue in the Securities Actions").

Accordingly, Official Intelligence's objections to the consolidation of its action with the *Esposito* and *Hart* actions are denied and the cases consolidated.

## II.    Lead Plaintiff

Given that all three actions will be consolidated, the Court construes Official Intelligence's motion to serve as lead plaintiff as a motion to substitute Official Intelligence for Sotiropoulos with respect to the class' Securities Act claims.[4] *See In re NYSE Specialists Sec. Litig.*, 240 F.R.D.

---

[4] Official Intelligence frames its motion as one for the initial appointment of a lead plaintiff and argues that such a motion is timely because it runs from the notice provided with the filing of the *Hart* action, which, unlike the *Esposito* action, included claims under the Securities Act. "[A] movant for lead plaintiff must either (1) file the complaint or (2) make a motion for lead plaintiff associated with the first-filed complaint within sixty days" of the filing of the PSLRA notice associated with the first-filed complaint. *May v. Barclays PLC*, No. 23-cv-2583, 2023 WL 5950689, at *6 (S.D.N.Y. Sept. 13, 2023). Esposito issued her PSLRA notice on October 11, 2022. Official Intelligence filed both its complaint and its motion for appointment as lead plaintiff on April 3, 2023, well over sixty days later. While reopening the appointment process may be done on occasion where new claims are brought, it is "generally disfavored" if they do not raise different factual allegations. *Teamsters Local 455 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-cv-1898, 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005); *see also May,* 2023 WL 5950689, at *7. The "inquiry is . . . qualitative, turning on a comparison of the two complaints and an assessment of whether, in light of the amendments, entire classes of potential lead plaintiffs were left out of the notice procedure." *Dube v. Signet Jewelers Ltd.*, No. 16-cv-6728, 2017 WL 1379385, at *1 (S.D.N.Y. Apr. 14, 2017) (internal quotation marks and alterations omitted). Because the claims alleged in the *Official Intelligence* complaint and the *Esposito* complaint arise from many of the same alleged facts, and because the *Esposito* notice asserted that its claims were brought "on behalf of persons and entities that purchased or otherwise acquired Block . . . securities between November 4, 2021 and April 4, 2022," Esposito's Notice of Publication of PSLRA Notice at 1, ECF No. 16-1, new notice was not required to run from the later-filed *Hart* action, *see Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, No. 17-cv-558, 2020 WL 1181366, at *7, *12 (D. Conn. Mar. 10, 2020).

The supplemental authority submitted by Official Intelligence in an attempt to establish that the Esposito notice was inadequate is inapposite. *See* Official Intelligence Letter, Aug. 14, 2023, ECF No. 73 (citing Order Regarding Notice, *Efrat Invs., LLC v. Hub Cyber Sec. Ltd.*, 23-cv-5764 (AS) (S.D.N.Y. Aug. 9, 2023), ECF No. 15). Unlike here, in that case, the first-filed action was brought on behalf of a subset of shareholders who acquired the defendant's securities in a specific merger, whereas the second-filed action was brought on behalf of persons who generally acquired the defendant's securities. ECF. No. 73-1, at 1. For that reason, the court ordered the plaintiffs in the second-filed action to issue a new PSLRA notice, as the second-filed action potentially included a larger group of plaintiffs who were to be afforded the opportunity to seek appointment as lead plaintiff. *Id.* Here, no such additional notice was necessary because both the *Esposito* and *Hart* notices alleged the same facts, overall class, and class period. *Cf. Hachem v. Gen.*

128, 133 (S.D.N.Y. 2007) ("Overall, courts have considered or acknowledged the ability to consider motions to disqualify, remove, withdraw, substitute, and add lead plaintiffs throughout the litigation of a securities class action."). The Court also considers the arguments made in Official Intelligence's objections.

### A.  Overview of PSLRA Provisions Governing Appointment and Reconsideration of Lead Plaintiff

The PSLRA "governs motions for appointment of lead plaintiff and approval of lead counsel in putative class actions brought under federal securities laws" and "directs the Court to appoint as lead plaintiff the party or parties 'most capable of adequately representing the interests of class members.'" *Turpel v. Canopy Growth Corp.*, No. 23-cv-4302, 2023 WL 8276633, at *3 (S.D.N.Y. Nov. 30, 2023) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). It also establishes the "rebuttable presumption that the most adequate plaintiff is the person who: (1) either 'filed the complaint' or 'made a motion in response to a notice'; (2) has the 'largest financial interest in the relief sought by the class'; and (3) 'satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Id.* (internal citations omitted) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc)). "[T]his presumption may be rebutted 'only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(a)(a) will not fairly and adequately protect the interests of the class; or (b)(b) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 164 (2d Cir.

---

*Elec. Inc.*, No. 17-cv-8457, 2018 WL 1779345, at *1–2 (S.D.N.Y. Apr. 12, 2018) ("reluctantly" reopening the publication process where the second-filed complaint not only alleged different claims and additional misleading statements, but also had a much broader class period of five years as opposed to the first-filed complaint's three-month class period).

Regardless, the Court, while skeptical of Official Intelligence's assertion that its motion for appointment as lead plaintiff is timely for purposes of the original appointment process, need not decide the issue. Courts in this District "have reserved the right to revisit lead plaintiff appointments at any time the need arises." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 135 (S.D.N.Y. 2007).

1998) (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)). Although the PSLRA does not "address reconsideration of a lead plaintiff's appointment," it does not "limit[] the time at which a court may reconsider a lead plaintiff's ability to adequately represent the interests of the purported class." *See In re NYSE Specialists Sec. Litig.*, 240 F.R.D. at 135.

The question before the Court is thus whether Official Intelligence has rebutted the presumption that Sotiropoulos should serve as lead plaintiff. Official Intelligence argues that Sotiropoulos "will not fairly and adequately protect the interests of the class" because he does not have standing under the Securities Act and because he failed to preserve the Securities Act claims for the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa).

### B. A Lead Plaintiff Need Not Have Standing to Represent All Class Members' Claims

Official Intelligence's argument that Sotiropoulos is an inadequate lead plaintiff because he lacks standing to bring Securities Act claims is without merit. The PLSRA does not require that a lead plaintiff in a consolidated securities action have standing to bring every available cause of action alleged by a class. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) (stating that "it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim"); *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204–05 (S.D.N.Y. 2003) ("[N]othing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case."). Official Intelligence, moreover, "does not have a right to become co-lead plaintiff simply by asserting claims not asserted by the lead plaintiff." *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 486 (S.D.N.Y. 2013).

Even where a lead plaintiff lacks standing to bring a Securities Act claim, "this deficiency can be corrected by the designation of other members of the purported class as named plaintiffs or

class representatives." *Fishbury, Ltd.*, 2006 WL 3711566, at *4; *see also Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 254 (S.D.N.Y. 2003). Indeed, it is a lead plaintiff's "responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined . . . to have distinct interests or claims." *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d at 205. Relatedly, a lead plaintiff "should [have] the opportunity to make [a] decision" about whether he will bring claims on behalf of securities holders where he "advise[s] that [he is] still assessing whether to do so." *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09-mdl-2058, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010). Both in his briefing and at oral argument, Sotiropoulos has stated that he planned to bring claims on behalf of Securities Act plaintiffs. Lead Pl.'s Resp. at 14, 15 n.3; Oral Arg. Tr. 11:24–12:25.[5]

Thus, that Sotiropoulos lacks standing for each of the class' claims does not render him an inadequate lead plaintiff.

## C. A Lack of Diligence May Render a Lead Plaintiff Inadequate

Official Intelligence's argument that Sotiropoulos has not diligently pursued the class' Securities claims, however, counsels in favor of finding him inadequate to serve as lead plaintiff for these claims. To determine whether a lead plaintiff "will not fairly and adequately protect the interests of the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa), courts may look to the "vigor" or "diligence" with which the lead plaintiff will prosecute the class' claims, *see Gross v. AT&T Inc.*,

---

[5] Additionally, Official Intelligence's argument that it must be appointed lead plaintiff for the class' Securities Act claims because it suffered greater financial damage for Securities Act claims than Sotiropoulos, who suffered damages only under the Exchange Act, is also without merit. Courts do not assess a lead plaintiff's financial stake in the litigation per claim. *See Maeshiro v. Yatsen Holding Ltd.*, No. 22-cv-8165, 2023 WL 4684106, at *4–5 & n.6 (S.D.N.Y. July 21, 2023) (dismissing the argument that a loss calculation should be conducted separately under the Securities Act and under the Exchange Act, and instead, considering the total amount of a plaintiff's loss for claims under both acts); *see also Hevesi*, 366 F.3d at 82 (stating that because a lead plaintiff must have the greatest financial stake in the outcome of the case, he need not have standing to sue on every claim).

No. 19-cv-2892, 2019 WL 7759222, at *2 (S.D.N.Y. June 24, 2019); *Williams v. Block.One*, No.

20-cv-2809, 2020 WL 4505569, at *2 (S.D.N.Y. Aug. 4, 2020).

### 1. Preservation of Securities Act Claim

Official Intelligence contends that Sotiropoulos will not adequately represent the class as

to the Securities Act claims because he failed to preserve them within the statute of limitations.

Sotiropoulos responds that the *Hart* action preserved the class' claims because, unlike the *Esposito*

action, it included Securities Act claims. Official Intelligence disputes this, arguing that Hart never

had standing to bring his Securities Act claims to begin with.[6]

In light of Sotiropoulos' reliance on Hart for standing, the Court will examine whether

Sotiropoulos adequately preserved the Securities Act claims by evaluating whether Hart, as a

---

[6] At oral argument, Sotiropoulos maintained that he has Article III standing and that questions of class standing must be addressed at a later stage of litigation. Oral Argument Tr. 11:7–12:11. Sotiropoulos cited *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), for the proposition that Article III standing is sufficient for its ability to represent a class in both its Exchange Act and Securities Act claims. Oral Argument Tr. 11:7–13. *NECA-IBEW* concerned whether a plaintiff had the ability to represent a class of purchasers who acquired securities in different transactions based on different sets of offering documents. *Id.* at 155. The plaintiff in that case had both "Article III standing to sue defendants in its own right because it plausibly alleged," among other things, redressability "through rights of action for damages under §§ 11 and 12(a)(2)" and "statutory standing in its own right" because it made purchases pursuant to allegedly misleading registration statements, including some "directly" from the defendants in a "public offering." *Id.* at 158. Courts in this district, however, have observed that *NECA-IBEW* "is frequently misread, usually . . . in an attempt to create standing where standing does not exist" and have clarified that it "does not stand for the sweeping proposition that an individual may represent absent class members with regard to claims as to which he or she has no individual standing." *Stadnick v. Vivint Solar, Inc.*, No. 14-cv-9283, 2015 WL 8492757, at *17 (S.D.N.Y. Dec. 10, 2015), *aff'd on other grounds*, 861 F.3d 31 (2d Cir. 2017); *see also Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 520 (S.D.N.Y. 2018). But where a lead plaintiff "does not have statutory standing in his own right to pursue a claim under § 12(a)(2)," an assertion of "the similarity between claims under § 11 and claims under § 12(a)(2) is enough" fails where no other named plaintiff can assert standing under § 12(a)(2). *Stadnick*, 2015 WL 8492757, at *18. Sotiropoulos' argument that such an analysis is not proper until the class-certification stage is also unpersuasive. *See id.* (considering whether named plaintiffs had statutory standing in a motion to dismiss brought before class certification had been sought).

Sotiropoulos also cited *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) for the proposition that, where a class member believes a lead plaintiff failed to preserve the statute of limitations, "the proper procedure to follow is to intervene as an additional named plaintiff or file [its] own timely action." Oral Argument Tr. 11:14–21. In *IndyMac*, the Second Circuit explained that proposed intervenors who sought tolling of claims unpreserved by the lead plaintiff should have made a timely motion to intervene as named plaintiffs or filed their own timely actions. *See id.* at 112. *IndyMac*, however, does not address whether the lead plaintiff provided adequate representation in light of its own failure to preserve those claims. And here, Official Intelligence did timely file its own suit, preserving the Securities Act claims.

named plaintiff, in fact has standing. *See Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 329 (S.D.N.Y. 2012) (holding, in the context of "a motion to substitute the *lead* plaintiff, [that the] argument[] essentially go[es] to whether the [lead plaintiff] could represent the class as a *named* plaintiff" because "in order for a claim to be asserted on behalf of a putative class, only the named plaintiffs—but not necessarily the lead plaintiff—must have standing").

Standing under Section 12(a)(2) of the Securities Act requires that a plaintiff "purchased" a security from a "statutory seller," which "is one who, in a public offering, either transferred title to the purchaser or successfully solicited the transfer for financial gain." *In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 310 (S.D.N.Y. 2011). A plaintiff's allegation that he purchased securities pursuant to "pertinent offering documents," such as a prospectus, has "been construed to permit proof that the plaintiff purchased his or her security in the offering." *Id.* at 311 (internal quotation marks omitted).

Under the PSLRA, plaintiffs are required to submit alongside their complaints a certification that "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u–4(a)(2)(A)(iv). Where a complaint "lacks specific allegations with respect to when and from whom lead plaintiffs purchased their shares," courts in this district look to the plaintiff's certification for further clarification. *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 614 (S.D.N.Y. 2022), *aff'd sub nom. Tseng v. De Vries*, No. 22-2787, 2023 WL 8073087 (2d Cir. Nov. 21, 2023).

Hart's complaint alleges that he acquired Block securities as part of Block's acquisition of Afterpay, but Official Intelligence retorts that Hart's certification belies this assertion. Hart claims that he "and the other members of the Class . . . hold Block securities issued and solicited *pursuant*

*to* the offering materials," Hart Compl. ¶ 95 (emphasis added), and that Block "offered and sold approximately 113 million unregistered Block Shares directly to plaintiff and other similarly situated former Afterpay shareholders in exchange for their Afterpay shares," *id.* ¶ 20. However, Hart's certification asserts only that he acquired shares of Block on December 2, 2021, before the acquisition took place. Hart Certification at 2, No. 23-cv-1579, ECF No. 1-2.

While allegations that a plaintiff purchased securities "pursuant to" the relevant offerings, as Hart has pleaded, "could suffice to establish standing," a contradictory certification may "foreclose[]" that possibility." *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 304–05 (S.D.N.Y. 2021) (so holding at the motion-to-dismiss stage). As Official Intelligence noted during oral argument, Hart's certification shows only that he acquired Block securities on December 2, 2021, weeks before the fairness hearing took place and almost two months before the acquisition was finalized. According to Official Intelligence, it is "plainly obvious . . . that plaintiff Hart lacked standing to . . . bring those claims." Oral Arg. Tr. 6:6–13. Hart does not allege another means by which he may have acquired Block securities from Block as a statutory seller. Nor does he refer to any offering materials other than the prospectus distributed to Afterpay shareholders before the acquisition. The Court thus agrees with Official Intelligence that the date Hart certified he acquired Block securities casts significant doubt on Hart's claim that he acquired these securities as part of Block's acquisition of Afterpay. Without Hart, Sotiropoulos is left without a named plaintiff asserting standing under the Securities Act.

The Court has no doubt that Sotiropoulos intended to file an amended complaint adding plaintiffs who, unlike Hart, clearly have standing to bring Securities Act claims. *See* Lead Pl.'s Resp. at 14; Oral Argument Tr. at 11:24–12:25. But Sotiropoulos did not file an amended complaint by the time the statute of limitations ran on the class' Securities Act claims.

Furthermore, "[a] plaintiff in a class action cannot get around the standing requirement by asserting that other members of the class have standing." *Fort Worth Emps.' Ret. Fund*, 862 F. Supp. 2d at 331. If Hart did not have standing to bring a Securities Act class action on his own behalf, he cannot claim to have standing on behalf of others.

Official Intelligence argues that even if Sotiropoulos were to name plaintiffs with definitive standing under the Securities Act in the consolidated complaint, doing so would not remedy Sotiropoulos' timeliness issue. The addition of these named plaintiffs would still take place outside the statute of limitations. "Claims under . . . [§] 12(a)(2) are subject to a one-year statute of limitations which commences upon 'the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.'" *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 138 (2d Cir. 2013) (quoting 15 U.S.C. § 77m).[7] Defendants announced the data breach on April 4, 2022, when they filed a report with the SEC explaining that a former employee downloaded customer information. Esposito Compl. ¶ 3; Hart Compl. ¶ 62; Official Intelligence Compl. ¶ 2. The statute of limitations thus ran on April 3, 2023.[8] At oral argument, Official Intelligence maintained that the reason it filed its complaint on April 3, 2023

---

[7] Regarding the Section 15 claims asserted by both Hart and Official Intelligence, "these are derivative of the [§ 12(a)(2)] claims and thus subject to the same time limitation." *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 479 & n.3 (S.D.N.Y. 2010).

[8] Sotiropoulos was scheduled to file a consolidated complaint by April 21, 2023, in accordance with a briefing schedule that he proposed and the Court approved. Stipulation & Proposed Consolidation Order, March 6, 2023, ECF No. 52; Consolidation Order, March 7, 2023, ECF No. 53. While a court may toll the statute of limitations coextensively with an extension of a deadline, it need not do so, especially where the party seeking the extension has not sought such relief. *See Ting Qiu Qiu v. Shanghai Cuisine, Inc.*, No. 18-cv-5448, 2020 WL 2115409, at *4 (S.D.N.Y. May 4, 2020) (granting plaintiffs an extension of time to serve defendants, but declining to toll the statute of limitations during that time period as plaintiffs had "not requested such relief"); *see generally Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003), *as amended* (July 29, 2003) ("When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." (internal quotation marks omitted)). At the time he submitted the proposed briefing schedule, Sotiropoulos did not request that the statute of limitations be tolled, nor has he made such arguments in his responsive brief or at oral argument.

was to "protect[] the interests of . . . the Section 12(a)(2) claim class." Oral Argument Tr. 5:24–6:5.

Although, in some circumstances, tolling preserves putative class members' claims when the original claim was inadequately pleaded, it is uncertain whether that would be the case here. The question of whether tolling applies to a statute of limitations, such as the one governing Section 12(a)(2), "where the initial plaintiff lacked standing[,] is still open in the Second Circuit." *Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 980 F. Supp. 2d 487, 488–89 (S.D.N.Y. 2013) (discussing tolling in the context of Section 11 of the Securities Act). District courts are divided over whether tolling applies when a plaintiff "attempt[s] to join an existing class action via amendment following the expiration of the statute of limitations." *In re VEON Ltd. Sec. Litig.*, No. 15-cv-8672, 2022 WL 1284547, at *4–5 (S.D.N.Y. Apr. 29, 2022), *reconsideration denied,* No. 15-cv-8672, 2023 WL 2118079 (S.D.N.Y. Feb. 17, 2023); *see also In re VEON Ltd. Sec. Litig.*, No. 15-cv-8672, 2023 WL 2118079, at *2 (S.D.N.Y. Feb. 17, 2023) (holding that while "equitable tolling to allow a new lead plaintiff or class representative to join an existing putative class action" is not prohibited by precedent, courts are not compelled "to apply equitable tolling in all instances, without regard to the proposed plaintiff's diligence and the goals of economy and efficiency"); *see also N.J. Carpenters Health Fund v. Residential Cap., LLC*, No. 08-cv-093, 2010 WL 5222127, at *5–6 (S.D.N.Y. Dec. 22, 2010) (collecting cases that "suggest that a plaintiff may be added to cure standing defects in certain situations" and cases that "support the proposition that a limitations period is not tolled where the original plaintiff lacked standing").

Furthermore, even though some courts may "allow tolling where the original plaintiff lacked standing," they do not do so if "the procedural defect was so clear that no reasonable plaintiff could have relied on the class representative under the circumstances." *Monroe Cnty.*

*Emps.' Ret. Sys*, 980 F. Supp. 2d at 490. The contradictions between Hart's general assertion that he acquired securities upon Block's acquisition of Afterpay and the transactional information in his certification may well constitute a clear procedural defect that would preclude a plaintiff's reasonable reliance on his complaint. Where class claims are not equitably tolled, a plaintiff's untimely claims are "barred by the PSLRA's statute of limitations." *In re VEON Ltd.*, 2022 WL 1284547, at *5. Because Hart's complaint contains deficiencies on its face that could make it so no reasonable plaintiff could rely on it to preserve standing, it may implicate the procedural defect exception to equitable tolling.

In short, there are significant questions as to whether Sotiropoulos preserved the class' Securities Act claims.

### 2.  Lack of Diligence

The Court must now consider whether Sotiropoulos' potential failure to preserve the class' Securities Act claims rebuts the presumption that he should serve as the lead plaintiff as to those claims.

To determine whether a lead plaintiff "will not fairly and adequately protect the interests of the class," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa), a court may look to proof of the lead plaintiff's lack of diligence, *see Williams*, 2020 WL 4505569, at *2. A lead plaintiff may exhibit a "lack of diligence" "[r]egardless of whether [his] oversights are fatal." *Id.* (declining to appoint a group of plaintiffs with the largest financial stake as lead plaintiffs on adequacy grounds due to defects in their certifications). The Court thus need not determine at this early stage in the litigation, and without more comprehensive briefing, whether Hart definitively acquired his Block securities as part of the acquisition of Afterpay or pursuant to another public offering such that he would have standing under the Securities Act. Nor must the Court decide whether tolling would apply to

the *Hart* complaint should Hart not have standing. Sotiropoulos' failure to definitively address these significant—albeit potential—issues before the statute of limitations ran on the Securities Act claims indicates a lack of diligence that rebuts the presumption he will adequately protect the interests of class members with those claims.

Sotiropoulos' counsel appeared to acknowledge such a lack of diligence at oral argument when he remarked that Official Intelligence "preserved the claims perhaps better" than the filing of the *Hart* action did. Oral Argument Tr. 19:11–13. As Official Intelligence rightly noted, Sotiropoulos "endanger[ed] . . . the Section 12(a)(2) claim[s]" by "leav[ing] arguments on the cutting room floor"—even if the Court were to ultimately find that he preserved them. *See* Oral Argument Tr. 19:24–20:9. Although a court could conclude that Hart's claims under the Securities Act should be tolled for other members of the class, by failing to address this issue by filing a timely amended complaint, or seeking a determination on tolling sooner, Sotiropoulos put the class at risk. In so doing, he demonstrated a lack of diligence.

A lead plaintiff's dependence on allegations that conflict with a PSLRA certification may also rebut the presumption that he should remain lead plaintiff. *Cf. Micholle v. Ophthotech Corp.*, No. 17-cv-210, 2018 WL 1307285, at *8 & n.14 (S.D.N.Y. Mar. 13, 2018) (declining to consider securities transactions alleged by a prospective lead plaintiff where the dates of the alleged purchases were on weekends, thereby "calling the accuracy of his data into question"). Here, Sotiropoulos' dependence on the questionable allegation that Hart acquired Block shares through the acquisition also tends to rebut the presumption that he should serve as the lead plaintiff. Like in the *Micholle* case, the date listed on Hart's certification casts doubt on the assertion that he purchased shares through a public offering, and certainly that he purchased them through Block's acquisition of Afterpay. Sotiropoulos' reliance on Hart for standing in light of this uncertainty is

similarly indicative of the inadequacy of his representation of the Securities Act plaintiffs.

Official Intelligence's argument that that Sotiropoulos has not diligently represented the Securities Act plaintiffs, moreover, is not mere speculation or a conclusory allegation of inadequacy, which would be insufficient to rebut the presumption that Sotiropoulos should remain lead plaintiff. *See Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324–25 (S.D.N.Y. 2004); *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 404 (S.D.N.Y. 2004). To the contrary, Official Intelligence's argument depends on a specific alleged deficiency: that Sotiropoulos failed to preserve its Securities Act claims by relying on allegations in Hart's complaint that conflict with the appended certification.

Indeed, Sotiropoulos' potential failure to preserve the Securities Act claims reflects a greater lack of diligence than other mistakes courts have held insufficient to rebut the presumption of adequacy. *See, e.g.*, *Hansen v. Ferrellgas Partners, L.P.*, No. 16-cv-7840, 2017 WL 281742, at *5 (S.D.N.Y. Jan. 19, 2017) (holding that an inadvertent mistake in a certification that was quickly corrected did not prove a lead plaintiff's inadequacy); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538–39 (S.D.N.Y. 2015) (holding that the failure to correct clerical errors does not "strike at the heart of Rule 23's adequacy requirement"). Instead, it better resembles the types of mistakes courts have found sufficient to rebut the presumption of a lead plaintiff's adequacy. *See In re NYSE Specialists Sec. Litig.*, 240 F.R.D. at 144–45 (holding that a lead plaintiff's failure to have a complaint "filed by the entity which actually purchased shares during the class period is not inconsequential," rendering the lead plaintiff inadequate).[9]

---

[9] Under 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa), proof that a lead plaintiff will not fairly and adequately represent the class' interests is enough to warrant his substitution. Additionally, under 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(bb), where there is an open question as to whether the defendants could subject a lead plaintiff to a unique defense, "[t]here is no need to subject the class to [this] potential issue[] where there is another appropriate movant readily available." *Lundy v. Ideanomics, Inc.*, No. 20-cv-4944, 2020 WL 7389027, at *2–3 (S.D.N.Y. Dec. 16, 2020). In *Lundy*, there

For the foregoing reasons, to ensure that the Securities Act claims in the consolidated action are adequately pursued, the Court appoints Official Intelligence as lead plaintiff for the class' Securities Act claims. Sotiropoulos will continue to serve as lead plaintiff for the class' Exchange Act claims.[10] *See Gross*, 2019 WL 7759222, at *2 ("taking account of the unique circumstances of each case," and appointing co-lead plaintiffs, one with standing under the Exchange Act and the other with standing under both the Exchange Act and the Securities Act, as "the PSLRA does not recommend or delimit a specific number of lead plaintiffs" (quoting *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998)). In fact, "[t]he PSLRA expressly contemplates more than one plaintiff" and recognizes that "differently situated" plaintiffs with "differing aims"

---

was a question about when a lead plaintiff purchased his shares of a security and whether he would thus be able to assert certain elements of his claim based on that purchase price. *Id.* at *2. If the defendants were to bring this defense and succeed, there was a risk that the statute of repose would expire, "barring the putative class members from substituting a new lead plaintiff." *Id.* The court therefore erred on the side of caution and declined to appoint the presumptive lead plaintiff. *Id.* at *3. Here, too, there is no need to subject the class to potential standing issues for their Securities Act claims based on a statute-of-limitations defense.

[10] The magnitude of Official Intelligence's financial stake is unknown, as it has only provided the Court the total amount of shares of Block securities it acquired when Block acquired Afterpay (which it values at over 1,000,000 AUD). Official Intelligence Certification, No. 23-cv-2789, Apr. 3, 2022, ECF No. 1-1; Official Intelligence Mot. for Appointment as Lead Pl. at 4. Official Intelligence has not provided the Court with other financial data, such as its net shares acquired, net funds expended, and the approximate losses suffered. *See Cortina v. Anavex Life Scis. Corp.*, No. 15-cv-10162, 2016 WL 1337305, at *1 (S.D.N.Y. Apr. 5, 2016) (explaining the four factors courts rely on when determining a prospective lead plaintiff's financial interest in the litigation). It need not, however, demonstrate that it suffered a larger financial loss than Sotiropoulos because the "rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

In addition to making a preliminary showing that it meets the "adequacy" requirement of Rule 23, a prospective lead plaintiff must make a preliminary showing that it meets the "typicality" requirement of Rule 23. *See Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57, 62 (S.D.N.Y. 2022). Critically, Official Intelligence has done so here. "Cases in the Second Circuit have held that the typicality requirement is met where 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Marquez v. Bright Health Grp., Inc.*, No. 22-cv-101, 2022 WL 1314812, at *8 (E.D.N.Y. Apr. 26, 2022) (quoting *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 350 (E.D.N.Y. 2018)). Official Intelligence asserts that it, like the other class members, were former Afterpay shareholders who acquired shares of Block securities through Block's acquisition of Afterpay, depended on Defendants' false or misleading statements, and suffered financial injury when Defendants announced the data breach on April 4, 2022.

are still "seeking the same result—the greatest recovery for the class." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 49.

Accordingly, Official Intelligence's Motion for Appointment as Lead Plaintiff is granted, such that Sotiropoulos will be substituted for Official Intelligence with respect to the class' Securities Act claims.

### III.    Lead Counsel

"The PSLRA directs the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval." *Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57, 65 (S.D.N.Y. 2022) (citing 15 U.S.C. § 77z-1(a)(3)(B)(v)). There is "a strong presumption in favor of approving" a lead plaintiff's choice of counsel. *Kaplan v. S.A.C. Cap. Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015). Here, Abraham, Fruchter & Twerksy, LLP and Bronstein, Gewirtz & Grossman, LLC assert that they have represented numerous plaintiffs in securities actions, including suits that have settled for multimillions of dollars. Official Intelligence's Mot. for Appointment as Lead Pl. at 14–15. The Court approves Official Intelligence's choice of counsel.

Accordingly, Official Intelligence's motion for approval of lead counsel for the class' Securities Act claims is granted.

### CONCLUSION

Official Intelligence's objections to the Court's March 7, 2023 Order are denied, insofar as Official Intelligence seeks to preclude its claims from being consolidated with the related *Esposito* and *Hart* actions. The case filed by Official Intelligence, No. 23-cv-2789, shall be consolidated under Master File No. 22-cv-8636.

Official Intelligence's Motion for Appointment—or, as the Court deems it, substitution— as Lead Plaintiff is granted in that Official Intelligence shall represent the class as lead plaintiff for

the Securities Act claims. Sotiropoulos shall continue to represent the class as lead plaintiff for the

Exchange Act claims. Official Intelligence's motion for the appointment of law firms Abraham,

Fruchter, & Twersky, LLP and Bronstein, Gewirtz & Grossman, LLC as co-lead counsel is also

granted, subject to submission of "an acceptable plan for sharing litigation responsibilities." *Gross*,

2019 WL 7759222, at *2 (citing 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v)). To that end,

no later than March 1, 2024, co-lead counsel are to jointly file a proposed plan for the sharing of

litigation responsibilities moving forward. Counsel are on notice that the Court will not approve

duplicative expenses. The plan shall include a proposed schedule for the submission of an amended

complaint.

The Clerk of Court is respectfully to terminate the motions pending at No. 22-cv-8636,

ECF No. 55 and No. 23-cv-2789, ECF No. 5.


Dated:      February 15, 2024
            New York, New York

                                                    _____
                                                    Ronnie Abrams
                                                    United States District Judge

21