**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE BLOCK, INC. SECURITIES LITIGATION**<br><br><br>**This Document Relates To: All Actions** | Master Case No. 1:22-cv-08636-MMG<br><br>CLASS ACTION<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS CONSOLIDATED AMENDED COMPLAINT FOR
VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Dated: September 13, 2024

James N. Kramer (admitted *pro hac vice*)
jkramer@orrick.com
Alexander K. Talarides (admitted *pro hac vice*)
atalarides@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105
Telephone: (415) 773-5700

Jennifer M. Keighley
jkeighley@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5124

*Attorneys for Defendants Block, Inc.,
Jack Dorsey, Amrita Ahuja, and Jim McKelvey*

## TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................................................1

ARGUMENT .......................................................................................................................1

I.      Plaintiffs' Puzzle Pleading Does Not Satisfy The PSLRA And Rule 9(b)............ 1

II.     Plaintiffs Fail To State A Claim Under Section 10(b) And Rule 10b-5(b) ........... 2

      A.     Plaintiffs Fail To Plead An Actionable Statement.................................... 2

           1.    The Pre-Incident Statements Were Not False Or Misleading........ 2

           2.    The Post-Incident Statements Were Not False Or Misleading................................................................................... 6

      B.     Plaintiffs Do Not Allege Facts Creating A Strong Inference of Scienter ............................................................................................... 8

III.    The Afterpay Plaintiffs Fail To State A Claim Under Section 12(a)(2) .............. 11

      A.     The Section 12(a)(2) Claim Is Impermissibly Extraterritorial................. 11

      B.     Afterpay's Scheme Booklet Is Not A Prospectus Under Section 12(a)(2) ................................................................................................. 13

      C.     The Afterpay Plaintiffs Do Not Plead An Actionable Statement ............ 14

CONCLUSION ................................................................................................................. 15

i

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
   677 F.3d 60 (2d Cir. 2012)..................................................................................12, 13

*In re Alphabet, Inc. Sec. Litig.,*
   1 F.4th 687 (9th Cir. 2021) ....................................................................................8, 10

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.,*
   19 F.4th 145 (2d Cir. 2021) ..........................................................................................5

*Anegada Master Fund, Ltd. v. PXRE Grp. Ltd.,*
   680 F. Supp. 2d 616 (S.D.N.Y. 2010)..........................................................................14

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.,*
   28 F.4th 343 (2d Cir. 2022) ...............................................................................5, 8, 10

*Arora v. HDFC Bank Ltd.,*
   671 F. Supp. 3d 305 (E.D.N.Y. 2023) ...........................................................................5

*In re Bristol-Myers Squibb Co. CVR Sec. Litig.,*
   2024 WL 873436 (S.D.N.Y. Feb. 29, 2024)................................................................10

*Canoo Inc. v. DD Glob. Holdings Ltd.,*
   2023 WL 6162296 (S.D.N.Y. Sept. 21, 2023)............................................................12

*In re Cap. One Consumer Data Sec. Breach Litig.,*
   488 F. Supp. 3d 374 (E.D. Va. 2020) .............................................................................5

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC,*
   750 F.3d 227 (2d Cir. 2014)...........................................................................................4

*City of Brockton Ret. Sys. v. Avon Prods., Inc.,*
   2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014)...............................................................3

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.,*
   450 F. Supp. 3d 379 (S.D.N.Y. 2020)..........................................................................14

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,*
   752 F.3d 173 (2d Cir. 2014)................................................................................4, 11, 12

*City of Providence v. Aeropostale, Inc.,*
   2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) ...............................................................8

*In re Complete Mgmt. Inc. Sec. Litig.,*
   153 F. Supp. 2d 314 (S.D.N.Y. 2001)............................................................................9

# TABLE OF AUTHORITIES (CONTINUED)

**Cases**                                                                                                    **Page(s)**

*Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*,
   433 F. Supp. 3d 515 (S.D.N.Y. 2020)...................................................................................1

*In re Equifax Inc. Sec. Litig.*,
   357 F. Supp. 3d 1189 (N.D. Ga. 2019) ...............................................................................3

*In re Facebook, Inc. Sec. Litig.*,
   87 F.4th 934 (9th Cir. 2023) ................................................................................................3

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
   2014 WL 2815571 (S.D.N.Y. June 23, 2014) .....................................................................3

*Gustafson v. Alloyd Co., Inc.*,
   513 U.S. 561 (1995)......................................................................................................13, 14

*In re Heartland Payment Sys., Inc. Sec. Litig.*,
   2009 WL 4798148 (D.N.J. Dec. 7, 2009)........................................................................7, 15

*In re iAnthus Cap. Holdings, Inc. Sec. Litig.*,
   2021 WL 3863372 (S.D.N.Y. Aug. 30, 2021)....................................................................13

*In re Initial Pub. Offering Sec. Litig.*,
   358 F. Supp. 2d 189 (S.D.N.Y. 2004)..................................................................................9

*In re Int'l Bus. Machs. Corp. Sec. Litig.*,
   163 F.3d 102 (2d Cir. 1998)..................................................................................................3

*In re ITT Educ. Servs., Inc. Sec. & S'holder Deriv. Litig.*,
   859 F. Supp. 2d 572 (S.D.N.Y. 2012)...................................................................................7

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
   861 F. Supp. 2d 262 (S.D.N.Y. 2012).................................................................................13

*In re Liberty Tax, Inc. Sec. Litig.*,
   828 F. App'x 747 (2d Cir. 2020) ..........................................................................................4

*In re Lottery.com, Inc. Sec. Litig.*,
   2024 WL 454298 (S.D.N.Y. Feb. 6, 2024)..........................................................................10

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   601 U.S. 257 (2024).................................................................................................................7

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)..........................................................................................................11, 12

## TABLE OF AUTHORITIES (CONTINUED)

**Cases**                                                                                              **Page(s)**

*Odeh v. Immunomedics, Inc.*,
   2020 WL 4381924 (D.N.J. July 31, 2020)..................................................................8

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
   432 F. Supp. 3d 131 (D. Conn. 2019).....................................................................9

*In re PetroChina Co. Ltd. Sec. Litig.*,
   120 F. Supp. 3d 340 (S.D.N.Y. 2015)....................................................................4

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
   11 F.4th 90 (2d Cir. 2021) ....................................................................................4

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Danske Bank*,
   2020 WL 4937461 (S.D.N.Y. Aug. 24, 2020), *aff'd*, 11 F.4th 90 (2d Cir. 2021) .....................2

*In re ProShares Tr. Sec. Litig.*,
   728 F.3d 96 (2d Cir. 2013)....................................................................................2

*In re Qudian Inc. Sec. Litig.*,
   2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019),
   *reconsideration denied*, 2020 WL 3893294 (S.D.N.Y. July 10, 2020) ...................................14

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000)....................................................................................9

*Sgarlata v. PayPal Holdings, Inc.*,
   409 F. Supp. 3d 846 (N.D. Cal. 2019) ...................................................................5

*In re Smart Techs., Inc. S'holder Litig.*,
   295 F.R.D. 50 (S.D.N.Y. 2013) .............................................................................11

*Starshinova v. Batratchenko*,
   931 F. Supp. 2d 478 (S.D.N.Y. 2013).....................................................................13

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
   531 F.3d 190 (2d Cir. 2008)...................................................................................10

*Valentini v. Citigroup, Inc.*,
   837 F. Supp. 2d 304 (S.D.N.Y. 2011)....................................................................12

*Wandel v. Gao*,
   590 F. Supp. 3d 630 (S.D.N.Y. 2022).....................................................................15

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

**Statutes, Rules and Other Authories**                                                                    **Page(s)**

15 U.S.C.

§ 77c(a)(10) – Section 3(a)(10) of the Securities Act of 1933 ........................................13, 14

§ 77l(a)(2) – Section 12(a)(2) of the Securities Act of 1933 ......................................... *passim*

§ 78j(b) – Section 10(b) of the Securities Exchange Act of 1934 ................................. *passim*

§ 78u-4 – Private Securities Litigation Reform Act of 1995 ......................................1, 5, 7, 11

17 C.F.R.

§ 240.10b-5 – Securities and Exchange Commision Rule 10b-5,
promulgated under Section 10(b) of the Securities Exchange Act of 1934..................... *passim*

Fed. R. Civ. P.

Rule 8(a)..................................................................................................................7, 14

Rule 9(b) .......................................................................................................... *passim*

Harold S. Bloomenthal & Samuel Wolff, *10A Int'l Cap. Markets & Sec. Reg.*, § 14:20..............14

v

**INTRODUCTION**

Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Motion" or "Mot.") demonstrates why all of Plaintiffs' claims should be dismissed with prejudice.[1] Plaintiffs' allegations have no factual basis, and impermissibly plead "fraud-by-hindsight" by attempting to transform Block's anodyne disclosures about data security controls and related risks into actionable misstatements. Plaintiffs' brief in opposition ("Opposition" or "Opp.") does not meaningfully address the Motion's arguments or rebut the numerous independently dispositive reasons requiring dismissal of the CAC. Instead, it reinforces the fact that Plaintiffs are relying on conclusory allegations—mostly from their retained expert who lacks any factual foundation for his "opinions"—to try and satisfy the stringent pleading requirements of the PSLRA and Rule 9(b). Plaintiffs' claims under Sections 10(b) and 12(a)(2) fall far short of those requirements. Their Section 12(a)(2) claim is further plagued by Plaintiffs' lack of standing, both because the claim is impermissibly extraterritorial and because it is based on a document that plainly was not a "prospectus" used to solicit the purchase of Block securities by the general investing public. For these reasons, Plaintiffs' CAC fails to state a claim and should be dismissed with prejudice.

**ARGUMENT**

**I.    Plaintiffs' Puzzle Pleading Does Not Satisfy The PSLRA And Rule 9(b)**

As Plaintiffs' own authority confirms, the CAC must be dismissed because it fails to "describe[] 'what portion of each quotation constitutes a false representation'" and places the burden on Defendants "to sort out the alleged misrepresentations." *Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 530 (S.D.N.Y. 2020) (citation omitted). Indeed, even in their Opposition, Plaintiffs fail to identify the specific alleged misstatements at issue and

---

[1] Unless otherwise noted, all defined terms have the same meaning as set forth in the Motion.

instead cite to lengthy block quotes. In an effort to evade this fundamental pleading requirement, Plaintiffs instead assert that Defendants were not prejudiced because they were "able to identify the alleged misstatements…at issue." Opp. at 6. That argument is not only wrong,[2] but misses the point: the CAC "fail[s] to meet Rule 9(b) and the PSLRA's pleading requirements [and that] alone is reason to dismiss a complaint." *Plumbers & Steamfitters Loc. 773 Pension Fund v. Danske Bank*, 2020 WL 4937461, at *3 (S.D.N.Y. Aug. 24, 2020), *aff'd*, 11 F.4th 90 (2d Cir. 2021).

## II.    Plaintiffs Fail To State A Claim Under Section 10(b) And Rule 10b-5(b)[3]

### A.    Plaintiffs Fail To Plead An Actionable Statement

Plaintiffs spend pages of their Opposition arguing that the Data Incident was material. *See* Opp. at 3-5. Putting aside that the Incident was not, in fact, material, its purported materiality is not at issue in the Motion.[4] The relevant issue for purposes of the Motion is whether Block's challenged statements were *false or misleading*. They were not. That is fatal to Plaintiffs' CAC.

#### 1.    The Pre-Incident Statements Were Not False Or Misleading

The Motion demonstrates multiple reasons why the Pre-Incident Statements are not actionable as a matter of law, including because there are no specific facts alleged to show that Block had deficient data security controls at the time the statements were made. In response, Plaintiffs argue that Block violated laws and regulations related to data security and that this purported violation rendered the following statements misleading: (i) that the "reliability and security of [Block's] payment platforms" is "[a] core aspect of [Block's] business," CAC ¶¶ 25,

---

[2] The Opposition challenges a statement that is *not* alleged to be misleading in the CAC, *compare* Opp. at 7 (citing CAC ¶ 17), *with* CAC §§ IV.E & VI.A (cataloging the allegedly misleading statements), thereby underscoring the lack of specificity in Plaintiffs' CAC.

[3] Plaintiffs do not dispute that they cannot maintain their duplicative "scheme liability" claim under subsections (a) and (c) of Rule 10b-5.

[4] In any event, materiality alone does not demand disclosure or render statements actionable under the securities laws. *See In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 101 (2d Cir. 2013).

103; (ii) that Block takes "reasonable measures" to "protect [customer] information from [] theft," *id.* ¶ 17; (iii) that Block has implemented "technical and organizational measures" to secure customer data, *id.* ¶ 47 (emphasis omitted); and (iv) that Block is "subject to laws and regulations" regarding data security, *id.* ¶ 46. *See* Opp. at 7-9.

This argument is baseless—none of these statements are actionable. As an initial matter, the statement quoted in CAC ¶ 17—which is not even alleged to be misleading in the CAC and is challenged for the first time in Plaintiffs' Opposition—was made *before* the alleged class period. *See* CAC ¶ 17 & n.4. As a matter of law, Defendants can be "liable only for those statements made during the class period." *In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998).

Second, none of these statements made any guarantee of effectiveness or compliance. As Plaintiffs' own cited authority notes, "mere[] generalizations regarding [] business practices" do not become actionable unless they contain "qualitative assurances and affirmative guarantees regarding...specific steps [the defendants] had taken to achieve particular results." *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *15-16 (S.D.N.Y. Sept. 29, 2014).[5] These statements do not contain any assurances or affirmative guarantees regarding specific steps or particular results. To the contrary, they warned that Block "cannot guarantee that unauthorized third parties will never be able to defeat [its] [data security] measures or use your personal information," CAC ¶ 47, that "no one can ever guarantee that hackers won't be able to…steal your data," *id.* ¶ 17, and that Block "may suffer" "data security incidents," *id.* ¶ 48.

---

[5] Plaintiffs' cited authorities are easily distinguishable. *See In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2014 WL 2815571, at *5 (S.D.N.Y. June 23, 2014) ("Goldman's representations…were directly at odds with its alleged conduct."); *In re Equifax Inc. Sec. Litig.,* 357 F. Supp. 3d 1189, 1229 (N.D. Ga. 2019) ("Equifax assured the public that it…remain[ed] in compliance with data laws"); *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 948 (9th Cir. 2023) ("Facebook knew Cambridge Analytica had improperly accessed and used Facebook users' data").

3

Third, with one exception discussed below, none of the Pre-Incident Statements relate to laws and regulations—they do not broach that topic at all. These statements thus could not have been rendered misleading by Block's purported violation of any law or regulation. *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (statements not misleading where the subject of the alleged fraud was "not the subject of the representations" (citation omitted)). Such neutral statements about data security controls and related risks also do not give rise to any duty "to disclose uncharged, unadjudicated [alleged] wrongdoing." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014).

The only Pre-Incident Statement that has any connection to laws or regulations is the statement that Block is "subject to laws and regulations," CAC ¶¶ 46, 53(a), "related to…data protection," *id.* ¶ 54. But Block's anodyne statement about being subject to laws and regulations makes no qualitative assessment of Block's compliance with those laws and regulations, and thus could not be rendered misleading simply because Block is later alleged to have violated one of them. *See In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 360 (S.D.N.Y. 2015) (statement that company was subject to rules and regulations was not actionable where company did "not claim to be in compliance"); *In re Liberty Tax, Inc. Sec. Litig.*, 828 F. App'x 747, 751 (2d Cir. 2020) (similar statement regarding laws was not actionable as it "provide[d] no 'qualitative assurances and affirmative guarantees regarding the company's compliance'" (citation omitted)).

Fourth, and in any event, to plead an actionable statement based on a violation of law or regulation, a "plaintiff must specify *what* law or standard the defendant violated and *how* the alleged violation occurred." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021) (emphasis in original). Plaintiffs have not done so. At most, the CAC references "FTC cybersecurity guidelines" or "standards," and notes that a company's

4

"failure to maintain reasonable…data security…is an 'unfair practice' violating the FTC Act." CAC ¶ 26, but it does not allege any facts showing that Block violated any particular FTC law or regulation.[6] Plaintiffs say that their alleged expert "concluded" that Block had "material inadequacies" in its data security controls, Opp. at 8, but that paid-for opinion is entirely conclusory and based on zero facts. It also says nothing about whether or how Block violated any law or regulation. Further, under Second Circuit law, an alleged expert opinion can merely "bolster" a plaintiff's attempt to plead securities fraud, and only if the opinion is "nonconclusory" and "based on particularized facts." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 354 (2d Cir. 2022). The conclusory opinion alleged here plainly does not qualify.[7]

Plaintiffs also argue that the Data Incident "is *ipso facto* evidence that [Block] failed to follow the FTC's standards," Opp. at 9, and "failed to meet the most basic standards of data security," *id.* at 10-11. But such fraud-by-hindsight assertions are insufficient under the PSLRA and Rule 9(b). "Conclusory allegations that a company made false or misleading statements that its controls were effective because a later-revealed instance of impropriety indicates otherwise— absent specific allegations about how or why those controls were ineffective—do not state a claim for securities fraud." *Arora v. HDFC Bank Ltd.*, 671 F. Supp. 3d 305, 314 (E.D.N.Y. 2023). Plaintiffs' allegations neither describe the data security controls that Block had in place nor explain

---

[6] Plaintiffs' citation to *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407 (E.D. Va. 2020), *see* Opp. at 8, is misguided, because that case concerns the burden for alleging a negligence claim under state law, and says nothing about the federal securities laws at issue here.

[7] Plaintiffs cite *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.,* 19 F.4th 145 (2d Cir. 2021) to argue that their alleged expert's opinion is enough to plead falsity, *see* Opp. at 9, but in that case the expert's opinion was coupled with specific factual allegations that, "[when] taken together," were sufficient, 19 F.4d at 150. Here, Plaintiffs cannot offer any specific facts to buttress their alleged expert's conclusory opinion. And while Plaintiffs attempt to distinguish *Sgarlata v. PayPal Holdings, Inc.*, 409 F. Supp. 3d 846, 859-60 (N.D. Cal. 2019) as inconsistent with a subsequent Ninth Circuit case in which the Supreme Court recently granted *certiorari*, *see* Opp. at 9 n.7, it is consistent with *Second Circuit* law and therefore remains persuasive here, *see* Mot. at 13-14, 22.

how they were deficient in a way that allowed the Data Incident to occur or violated any standard.

Finally, Plaintiffs argue that Block's warnings regarding data security risks do not shield Defendants from liability, and are themselves actionable, because "they discussed contingent risks…when those risks already existed because of inadequate controls." Opp. at 10 (citing CAC ¶ 98). Plaintiffs, however, do not allege any specific *contemporaneous* facts to show that Block's data security controls were deficient (much less how) at the time of the Pre-Incident Statements. And while Plaintiffs assert that Block's purportedly "generic" risk warnings "are insufficient to disclaim corporate responsibility and avoid liability," *id.* at 11, the CAC admits that Block repeatedly issued detailed warnings that "acknowledged" and "emphasized" the "substantial risk[]" of security incidents or breaches, *see, e.g.*, CAC ¶¶ 19-20, 98-99. The law is clear: such warnings foreclose Plaintiffs' claim that the Pre-Incident Statements were actionably misleading.[8]

### 2.    The Post-Incident Statements Were Not False Or Misleading

The Post-Incident Statements are also not actionable because Block had no duty to accuse itself of having deficient controls, and the CAC does not allege any specific facts to show that Block had deficient data security controls or had discovered the Data Incident *before* these statements were made. Moreover, the statements in Block's January 12, 2022 press release regarding "the strength and effectiveness" of Block's "information security management system" and Block's "commitment to securing both company and customer data," CAC ¶ 104, are the type of generalized statements that Second Circuit courts routinely hold are inactionable as a matter of law. Plaintiffs' Opposition offers no meaningful response to these points.

Plaintiffs also do not dispute that Block's January 31, 2022 press releases and February 24, 2022 annual shareholder letter, *id.* ¶¶ 106-08, said nothing at all about data security. Instead,

---

[8] Plaintiffs insist that whether a statement is inactionable as a matter of law "cannot be decided at [the pleading] stage," Opp. at 12, but that is false, *see* Mot. at 8-15 (collecting numerous cases).

Plaintiffs assert that these disclosures were misleading because they failed to disclose Block's purportedly deficient data security controls and the Data Incident. *See* Opp. at 15-16. But this argument runs contrary to a voluminous body of Second Circuit case law holding that statements that do not broach a particular topic cannot be rendered actionably misleading for failing to disclose facts about that topic. Plaintiffs' cited cases are not to the contrary. *See, e.g.*, *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264-65 (2024) (holding no Section 10(b) and Rule 10b-5(b) liability for statements that do not broach the topic at issue).

Similarly, Plaintiffs do not dispute the Motion's showing that the warnings regarding data security risks in Block's 2021 Form 10-K, *see* CAC ¶¶ 109-12, were not inconsistent with the potential for data security control weaknesses or the occurrence of the Data Incident. Accordingly, the alleged failure to disclose Block's purportedly deficient controls or the Incident could not have rendered these warnings actionably misleading. *See In re Heartland Payment Sys., Inc. Sec. Litig.*, 2009 WL 4798148, at *5 (D.N.J. Dec. 7, 2009) (holding similar statements about data security controls and related risks were inactionable because "there is nothing inconsistent between Defendants' statements and the fact that Heartland had suffered…a security breach"); *In re ITT Educ. Servs., Inc. Sec. & S'holder Deriv. Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012) ("[T]hese statements are not misleading because they do not suggest that the undisclosed improper activity alleged by Plaintiff was not occurring."). Instead, Plaintiffs' arguments are premised exclusively on the conjecture of their purported expert, who merely speculates that Block "likely" discovered the Incident before its January 12, 2022 press release. Opp. at 13. But his conclusory speculation about what "likely" occurred does not satisfy Plaintiffs' burden under Rule 8(a) to plead *facts* about what *actually* occurred (and not what Plaintiffs speculate *might* have occurred), let alone their burden under Rule 9(b) and the PSLRA to plead such facts *with particularity*. *See*

*Bristol-Myers*, 28 F.4th at 343. While Plaintiffs *ipse dixit* assert that their alleged expert's

"conclusion[s] [are] supported by numerous facts and inferences," Opp. at 13 (citing CAC ¶ 122),

that simply isn't so; the paragraph they cite is merely a speculative statement piled on speculative

statements. Plaintiffs' purported expert offers no facts to show that Block had deficient controls or

that Defendants knew about the Data Incident when the Post-Incident Statements were made.[9] For

that reason, Plaintiffs' citation to SEC guidance about when data security incidents should be

disclosed, *id.* at 12 & 14, is irrelevant—Block obviously could not be charged with disclosing an

incident that it did not discover until *after* the Post-Incident Statements were made.[10]

**B.      Plaintiffs Do Not Allege Facts Creating A Strong Inference of Scienter**

Plaintiffs' Section 10(b) and Rule 10b-5(b) claim should also be dismissed for failure to

plead that any Individual Defendant acted with scienter.[11] As Plaintiffs' CAC makes clear, Block

repeatedly warned investors about data security risks, belying any notion that Defendants sought

to mislead investors about the infallibility of their systems. *See* CAC ¶¶ 19-25, 47, 55, 98-103,

109-12. And, as Plaintiffs' own authorities recognize, conclusory allegations that Defendants were

motivated to fraudulently inflate Block's stock price to complete the Afterpay Merger are

insufficient in the Second Circuit. *See* Opp. at 17-18 (citing *ECA, Loc. 134 IBEW Joint Pension

Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (noting that a generic motive

---

[9] By contrast, in each of Plaintiffs' cited decisions, the plaintiffs alleged particularized facts to show the defendants' knowledge of the materialized risks or adverse event at the time the challenged statements were made. *See City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *14 (S.D.N.Y. Mar. 25, 2013); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021); *Odeh v. Immunomedics, Inc.*, 2020 WL 4381924, at *6 (D.N.J. July 31, 2020).

[10] Plaintiffs' argument that Block had a duty "to update or correct" when it learned of the Incident, Opp. at 14, is a *non sequitur* since Block *did* disclose the Incident upon discovering it, CAC ¶ 33.

[11] Plaintiffs concede that there can be no finding of scienter as to Block without a finding of scienter as to "someone whose intent could be imputed to the corporation," Opp. at 17, but do not identify anyone other than the Individual Defendants whose alleged scienter could be imputed to Block.

8

allegation fails absent specific facts showing that the Individual Defendants "benefitted in some concrete and personal way from the purported fraud")). Here, Plaintiffs do not allege any stock sales or other evidence of profit by the Individual Defendants. *See In re Initial Pub. Offering Sec. Litig.*, 358 F. Supp. 2d 189, 215 (S.D.N.Y. 2004) ("In the absence of such sales, the proposed acquisition…is insufficient to establish motive on the part of the Individual Defendants"). [12]

Plaintiffs' motive allegation also makes no sense, since the timeline of the transaction in relation to the Data Incident contradicts any suggestion that Defendants were "motiv[ated] to conceal" that Incident "until April 4, 2022." CAC ¶ 127. Block and Afterpay agreed on a "fixed exchange ratio" for their stock-for-stock transaction *months before* the Incident occurred. Opp. at 18. Moreover, Plaintiffs do not allege that Defendants knew about the Incident by December 17, 2021, when the Afterpay Merger became legally effective and binding on Afterpay. At that point, any knowledge or disclosure of the Incident could not have undone the transaction, so Plaintiffs' conclusory allegation about Defendants' supposed motivation is illogical.

Plaintiffs also fail to allege specific facts showing that the Individual Defendants acted with conscious misbehavior or recklessness. Plaintiffs assert that "Block knew facts or had access to information that suggest Defendants were aware of or recklessly ignored the Data [Incident] and Block's related cybersecurity failures." Opp. at 22. But under Second Circuit law, where plaintiffs contend that defendants had access to contrary facts at the time of the allegedly misleading statements, the complaint must specifically identify the reports containing this information. *See*

---

[12] Plaintiffs' other authorities do not hold otherwise. *See Rothman v. Gregor*, 220 F.3d 81, 94 (2d Cir. 2000) ("Whether sufficient motive could be shown solely by an allegation of a high stock price artificially maintained in the context one impending acquisition…is not the issue before us."); *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 328-29 (S.D.N.Y. 2001) (insider trading allegations); *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 170 (D. Conn. 2019) (specific facts showing conscious misbehavior and recklessness).

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 196 (2d Cir. 2008). The CAC fails to identify *any* such reports.[13] Instead, in their Opposition, Plaintiffs assert that Block's ISO 27001 certification "mandated management reports" that "would have" included "security incidents and breaches." Opp. at 22. But that assertion says nothing about *when* anyone at Block, much less the Individual Defendants, discovered the Incident. And Plaintiffs do not allege *what* specific information was contained within any purported report that would have contradicted any challenged statement. Given this pleading failure, Plaintiffs predictably fall back on their expert's conclusory opinion about when Block "likely" learned about the Incident, but that "opinion[] cannot substitute for facts." *Bristol-Myers*, 28 F.4th at 354. And, in any event, "it is well established that an expert may not opine on the state of mind or knowledge of a party." *In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, 2024 WL 873436, at *6 (S.D.N.Y. Feb. 29, 2024).

Plaintiffs' argument that "Block failed to check information it had a duty to monitor," Opp. at 22, fails for similar reasons. The CAC does not identify with particularity *what* and *when* any specific information was available that would have revealed the falsity of any challenged statement. *See Dynex*, 531 F.3d at 196. Plaintiffs also argue that Defendants engaged in illegal behavior by failing to comply with the FTC Act, *see* Opp. at 22, 25, but Plaintiffs' naked assertion of such a violation does not make it so. Plaintiffs further point to the existence of a CFPB investigation as purported evidence of scienter but fail to explain how an entirely unrelated investigation into Block's "handling of customer complaints," CAC ¶ 132, has any relation to the data security controls at issue here or how it reveals anything about the Individual Defendants'

---

[13] Plaintiffs' citation to *Alphabet* is misplaced. There, the plaintiffs specifically identified reports that the defendants reviewed that contained the allegedly contrary facts. *See* 1 F.4th at 696. Plaintiffs' citation to the "core operations doctrine" is likewise misguided, as this theory is not pled in the CAC and, in any event, is "not an independent[] means to plead scienter." *In re Lottery.com, Inc. Sec. Litig.*, 2024 WL 454298, at *33 (S.D.N.Y. Feb. 6, 2024) (citation omitted).

alleged knowledge of specific facts contradicting any challenged statement.

At bottom, Plaintiffs' scienter allegations amount to nothing more than conclusory speculation about what Defendants "must have known," which, as a voluminous body of Second Circuit case law makes clear, is insufficient under the PSLRA.

**III.    The Afterpay Plaintiffs Fail To State A Claim Under Section 12(a)(2)**

Plaintiffs' Opposition similarly does not rebut that the Afterpay Plaintiffs' Section 12(a)(2) claim is largely a rehash of the Pre-Incident Statement portion of Plaintiffs' Section 10(b) and Rule 10b-5(b) claim and so likewise fails because, as discussed, none of those statements was actionably false or misleading. The Section 12(a)(2) claim fails for other reasons as well.

**A.    The Section 12(a)(2) Claim Is Impermissibly Extraterritorial**

The Motion shows that the Afterpay Plaintiffs' Section 12(a)(2) claim must be dismissed under *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) and its progeny because the securities at issue were acquired in a foreign transaction, which means that the Afterpay Plaintiffs' Section 12(a)(2) claim is impermissibly extraterritorial. There is no dispute that Block CDIs—the securities the Afterpay Plaintiffs acquired—only trade on the Australian Stock Exchange and were issued pursuant to a merger between two Australian entities after approval by an Australian court.

In response, the Afterpay Plaintiffs argue that the "location where [] Block CDIs trade" does not matter because Block CDIs are "economically equivalent" or "linked" to Block common stock trading on the NYSE. Opp. at 28-29. But this position has been squarely rejected by the Second Circuit. "[I]t is the foreign location of the *transaction* that establishes" the U.S. securities laws' "inapplicability." *Morrison*, 561 U.S. at 267-68 (emphasis in original). And a domestic transaction cannot be established by "the location of an exchange where the security may be dually listed." *UBS AG*, 752 F.3d at 180 (rejecting Plaintiff's "linked" or "economically equivalent" argument); *see also In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 57 & n.11 (S.D.N.Y.

11

2013) (plaintiffs who acquired securities in Canada did not have a viable Section 12(a)(2) claim and "[t]he fact that SMART cross-listed its shares on the NASDAQ…does not change th[at] conclusion"). Nor does the fact that Block CDIs represented a "right to receive" domestically traded Block common stock change the wholly foreign nature of the Afterpay Plaintiffs' acquisition of Block CDIs. *UBS AG*, 752 F.3d at 180 (rejecting Plaintiffs' redemption theory).

Moreover, even if Plaintiffs' authorities could be squared with *Morrison* and *UBS AG*—and they cannot—they are readily distinguishable because "none of the [securities] at issue…were listed on foreign exchanges." *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 324 n.8 (S.D.N.Y. 2011) (listed only on U.S. exchange); *Canoo Inc. v. DD Glob. Holdings Ltd.*, 2023 WL 6162296, at *5 (S.D.N.Y. Sept. 21, 2023) (same). As Plaintiffs' own authorities recognize, "the primary problem the *Morrison* test sought to avoid" was the "threat that federal securities law will be used to 'regulate foreign securities exchanges.'" *Valentini*, 837 F. Supp. 2d at 324 n.8. Here, not only do Block CDIs trade on a foreign exchange, but the Scheme Booklet was "prepared in accordance with the laws and regulations of Australia," Mot. Ex. A at 8, and registered with the Australian authorities, *id.* at 1. Thus, applying Section 12(a)(2) to the Afterpay Plaintiffs' foreign acquisition of Block CDIs would "interfere[] with foreign securities regulations." *Morrison*, 561 U.S. at 269.

Because Block CDIs do not trade on a U.S. exchange, the Afterpay Plaintiffs must plead facts showing that "irrevocable liability [was] incurred or title passe[d] within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012). The CAC is entirely silent on this point. Instead, the Afterpay Plaintiffs argue for the first time in their Opposition that irrevocable liability was incurred in the United States because Block is an American company that issued new common stock underlying the Block CDIs that could "eventually" be redeemed. Opp. at 31. But "a party's residency or citizenship is irrelevant to the

location of a given transaction." *Absolute Activist*, 677 F.3d at 70. It is likewise irrelevant whether "the securities are issued by United States companies." *Id.* at 68. "[T]he *only* [relevant] consideration is whether or not the parties became 'bound to effectuate a transaction'…in the United States." *Starshinova v. Batratchenko*, 931 F. Supp. 2d 478, 484 (S.D.N.Y. 2013) (emphasis in original and citation omitted). Here, it is undisputed that the Afterpay Plaintiffs became bound to receive Block CDIs in Australia when an Australian court approved the Afterpay Merger. Indeed, it is undisputed that the Afterpay Merger was between two Australian entities, and "the acquisition of shares through a merger of foreign entities is not a domestic transaction." *In re iAnthus Cap. Holdings, Inc. Sec. Litig.*, 2021 WL 3863372, at *6 (S.D.N.Y. Aug. 30, 2021).[14]

### B.    Afterpay's Scheme Booklet Is Not A Prospectus Under Section 12(a)(2)

The Afterpay Plaintiffs also lack Section 12(a)(2) standing because they did not purchase their Block CDIs in a public offering by means of a prospectus. The Scheme Booklet was not a "document soliciting the public to acquire securities." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995). As the Afterpay Plaintiffs concede, the Scheme Booklet—disseminated by Afterpay— only solicited Afterpay shareholder *votes* for the Merger, *see* Opp. at 2, 32, and explicitly stated that it was "neither an offer to sell nor a solicitation of an offer to buy securities as such terms are defined under the Securities Act," Mot. Ex. A at 53. Nor did the Afterpay Plaintiffs purchase Block CDIs in an offering "held out to the public at large," *Gustafson*, 513 U.S. at 576—their Afterpay shares were exchanged for Block CDIs under a court-approved merger that was exempt from the Securities Act's registration requirements under Section 3(a)(10) of the Act. *See* CAC ¶¶ 7-8, 67.

---

[14] Thus, whether any Afterpay shareholders redeemed Block CDIs for Block common stock "after [the] merger," Opp. at 30, is irrelevant (the Afterpay Plaintiffs did not do so anyway). The Afterpay Plaintiffs' suggestion that there were conditions to be satisfied before closing, *see* Opp. at 20, does not change the date or location of irrevocable liability, *see Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 269 (S.D.N.Y. 2012).

In response, the Afterpay Plaintiffs argue that Section 3(a)(10) exempt securities are still covered by Section 12(a)(2). *See* Opp. at 32. But this "observation has nothing to do with…whether [the Scheme Booklet] is a document soliciting the public to purchase securities from [Block]." *Gustafson*, 513 U.S. at 579. Despite the Afterpay Plaintiffs' efforts to distinguish cases based on the exemption applied, *see* Opp. at 33, "the relevant inquiry…is whether the sale of the security carries with it the legal obligation to provide a prospectus" to the investing public, *Anegada Master Fund, Ltd. v. PXRE Grp. Ltd.*, 680 F. Supp. 2d 616, 624 (S.D.N.Y. 2010), and here there was none. Unsurprisingly, the Afterpay Plaintiffs cannot cite a single case extending Section 12(a)(2) liability to a defendant based on a foreign non-defendant's vote solicitation for a Section 3(a)(10) merger.[15]

## C.    The Afterpay Plaintiffs Do Not Plead An Actionable Statement

The Afterpay Plaintiffs' Section 12(a)(2) claim sounds in fraud, so Rule 9(b) applies and requires dismissal. The Afterpay Plaintiffs' boilerplate incantations of negligence, *see* Opp. at 26-27, are irrelevant. The Afterpay Plaintiffs "staked their Securities Act claims upon the same factual allegations as their Rule 10b-5 claims and accordingly Rule 9(b) applies." *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 402 (S.D.N.Y. 2020).

Regardless, even under Rule 8(a), the Afterpay Plaintiffs do not plead an actionable statement. The Afterpay Plaintiffs tellingly fail to address *In re Qudian Inc. Sec. Litig.*, 2019 WL 4735376, at *8 (S.D.N.Y. Sept. 27, 2019), *reconsideration denied*, 2020 WL 3893294 (S.D.N.Y. July 10, 2020), which held under Rule 8(a) that, despite suffering a data breach, a company's statements about its data security controls were not misleading in light of cautionary disclosures

---

[15] The most the Afterpay Plaintiffs offer is a treatise where the author suggests that Section 3(a)(10) transactions are "typically" public offerings, while conceding that at least one court has recognized that, under *Gustafson*, Section 12(a)(2) does *not* apply to such transactions. *See* Harold S. Bloomenthal & Samuel Wolff, *10A Int'l Cap. Markets & Sec. Reg.*, § 14:20 (citing *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*, 941 F. Supp. 1369, 1376 (S.D.N.Y. 1996)).

like those incorporated into the Scheme Booklet here. *See, e.g.*, CAC ¶¶ 54-55; Mot. Ex. E at 6 ("[T]he risk of cybersecurity incidents is increasing, and we cannot provide assurances that our preventative efforts will be successful."). And while the Opposition now focuses on Block's neutral statement that it is "subject to laws and regulations," Opp. at 7 (citing CAC ¶ 46), Block did not tout its compliance with those laws and regulations and warned that it "cannot assure [] that [its] employees…will not take actions in violation of…applicable law," Mot. Ex. E at 8. In any event, the CAC fails to allege any violation of law or regulation. *See supra* at 4-5.

The Afterpay Plaintiffs also do not dispute that the Data Incident occurred *after* the Scheme Booklet was issued. *See* CAC ¶¶ 51, 61. Instead, they argue that Block had a contractual duty to update the Scheme Booklet. *See* Opp. at 34. But even if a contractual duty could form the basis of a securities claim (it cannot), Block's duty was limited to providing information "until the date of the [Special] Meeting" so that the Scheme Booklet was not "false[ or] misleading…in any material respect" as of *that* date. CAC ¶ 44. The CAC does not allege—not even in conclusory fashion—that Defendants were aware of the Data Incident on or before December 14, 2021, the date of the Special Meeting. *Id.* ¶ 65. Incredibly, the Afterpay Plaintiffs argue that when Block discovered the Incident is irrelevant, *see* Opp. at 34-35, but it is self-evident that Block could not disclose an unknown event, *see, e.g.*, *Wandel v. Gao*, 590 F. Supp. 3d 630, 640-41 (S.D.N.Y. 2022). Moreover, "there is nothing inconsistent" between the Scheme Booklet's neutral statements that Block had implemented certain data security measures, or its "warning[s] of the possibility of a breach," and "[t]he fact that [the] company ha[d] suffered a security [incident]," and thus any alleged failure to update the Scheme Booklet to disclose the Incident could not have rendered the Scheme Booklet misleading. *Heartland*, 2009 WL 4798148, at *5-6.

## **CONCLUSION**

For these reasons, the CAC should be dismissed in its entirety, and with prejudice.

15

Dated:  September 13, 2024

Respectfully Submitted,

By: /s/ *James N. Kramer*

JAMES N. KRAMER
ALEXANDER K. TALARIDES
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-5700
jkramer@orrick.com
atalarides@orrick.com

JENNIFER M. KEIGHLEY
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
jkeighley@orrick.com

*Attorneys for Defendants Block, Inc., Jack Dorsey, Amrita Ahuja, and Jim McKelvey*

16