USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/29/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE BLOCK, INC. SECURITIES LITIGATION

22-CV-08636 (MMG)

**OPINION AND ORDER**

MARGARET M. GARNETT, United States District Judge:

The Court assumes familiarity with the facts and procedural history of this matter, which are fully set forth in the Court's September 9, 2025 Opinion and Order (the "Opinion") granting Defendants' motion to dismiss.[1] Dkt. No. 101.

Plaintiff Official Intelligence Party Ltd. ("OIP") has moved for reconsideration of the portion of the Opinion dismissing OIP's Section 12(a) claim. OIP argues that the Court erred by dismissing the Section 12(a) claim based on Plaintiffs' failure to adequately allege that Defendants knew or should have known of the December 10, 2021 data breach incident by the time of the December 14, 2021 shareholder meeting. The Opinion did not address Defendants' alternative basis for dismissal: that OIP's Section 12(a) claim was impermissibly extraterritorial. The Court will grant the motion for reconsideration solely to address that argument now, and affirms the Opinion's ultimate conclusion that OIP's claims must be dismissed.[2]

U.S. securities law generally applies only to transactions that occur in the United States. *Morrison v. Nat'l Australia Bank Ltd*, 561 U.S. 247, 273 (2010).[3] A transaction occurs in the

[1] The Court refers to filings as follows: the Consolidated Amended Complaint (Dkt. No. 87) as the "Complaint" in text and "CAC" in citations; Defendants' memorandum of law in support of its original motion to dismiss (Dkt. No. 93) as "Mot."; and Plaintiffs' opposition to that motion (Dkt. No. 94) as "Opp."

[2] "The decision to grant or deny a motion for reconsideration is in the sound discretion of a district court judge." *PC-Palladio, LLC v. Nassi*, No. 13-MC-00234 (JMF), 2014 WL 1316354, at *1 (S.D.N.Y. Apr. 2, 2014). OIP recognizes that the Court may address Defendants' other arguments in addressing the motion for reconsideration. Dkt. No. 106 at 5. *See, e.g.*, *Nysa-Ila Gai Fund v. Poggi*, 624 F. Supp. 443, 444 (S.D.N.Y. 1985) (granting motion for reconsideration to amend and affirm prior opinion).

[3] *Morrison* concerned the application of Section 10(b) of the Securities Exchange Act. 561 U.S.

United States if it is either (1) a transaction in securities listed on domestic exchanges; or (2) a domestic transaction in other securities (the "*Morrison* prongs"). *See In re Petrobras Sec.*, 862 F.3d at 262. The Court agrees with Defendants that OIP's Section 12(a)(2) claim satisfies neither *Morrison* prong and, therefore, must be dismissed as impermissibly extraterritorial.

**1. The Transaction Was Not in a Security Listed on a Domestic Exchange Because Block CDI is Only Traded on the Australian Stock Exchange**

Afterpay shareholders could elect to receive either Block Common Stock that is traded on the New York Stock Exchange (the "NYSE") or Block CHESS Depository Interests ("CDI") that is traded on the Australian Stock Exchange. CAC ¶¶ 9, 41. OIP opted to receive Block CDI.[4] *Id.* ¶ 7. Because Block CDI is not listed on a domestic exchange, OIP cannot satisfy *Morrison*'s first prong.[5] *See In re Smart Techs., Inc. S'holder Litig.*, 295 F.R.D. 50, 55 (S.D.N.Y. 2013) (excluding from class non-U.S. purchasers of a security); *In re Petrobras Sec.*, 862 F.3d at 262 (reasoning that plaintiffs who held a note that did not trade on any domestic exchanges needed to satisfy *Morrison*'s second prong to assert claims under federal securities law).

**2. There Was No "Domestic Transaction"**

Under *Morrison*'s second prong, OIP needed to allege that the transaction, *i.e.*, the merger, was a domestic transaction. "[T]o sufficiently allege a domestic securities transaction in securities not listed on a domestic exchange, . . . a plaintiff must allege facts suggesting irrevocable liability was incurred or title was transferred within the United States." *Absolute*

---

at 252–53. But its holding applies to U.S. securities law generally. *See In re Petrobras Sec.*, 862 F.3d 250, 259 (2d Cir. 2017) (applying *Morrison* to "claims under the Exchange Act and the Securities Act").

[4] Kevin Sawyer is the only other named plaintiff who was an Afterpay shareholder. CAC ¶ 8. Like OIP, he opted to receive Block CDIs. *Id.* Sawyer did not bring a Section 12(a) claim. *See* Opinion at 1 n.1. The Court accordingly limits its analysis to OIP.

[5] Plaintiff also purported to bring claims on behalf of individuals who received Block Common Stock. But Plaintiffs "cannot get around the standing requirement by asserting that other members of the class have standing." *In re Block, Inc. Sec. Litig.*, 2024 WL 639470, at *8 (S.D.N.Y. Feb. 15, 2024).

*Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012) ("*Absolute Activist*"). A plaintiff meets this burden by alleging facts, for example, "concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." *Id.* at 70; *see also Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.*, 849 F. App'x 289, 293 (2d Cir. 2021) ("Detailed factual allegations describing contract formation in the United States will typically satisfy the domestic transaction test.").

The Complaint nowhere alleges facts that could establish that "irrevocable liability was incurred" or "title was transferred" in the United States. Nor did Plaintiffs provide evidence of money exchanges, purchase orders, or contracts in the United States. Instead, all the Complaint's allegations point to Australia as the transaction's location. OIP received securities listed on the Australian stock exchange following a merger involving Australian law. The merger depended on "Afterpay shareholder approval during a Special Meeting [in Australia] . . ., an Australian court approving the Scheme . . ., and the completion of the acquisition." CAC ¶ 126. Afterpay convened the Special Meeting only with leave of an Australian Court. *Id.* ¶ 49. The supplemental materials that Afterpay shareholders received presented the "scheme value" and estimate of Afterpay share value in Australian dollars, only. *Id.* ¶ 62. The merger required approval from an Australian court. *Id.* ¶ 126. The merger "was legally effective" only after Afterpay "had lodged orders made by the Supreme Court of New South Wales with the [Australian Securities and Investment Commission]." *Id.* ¶ 66. And the merger consolidated Afterpay, an Australian public company, and Lanai, Block's indirect Australian subsidiary. *Id.* ¶ 107. All this evidence supports that "irrevocable liability [to exchange Afterpay shares for Block CDIs] was incurred" in Australia. *See Absolute Activist*, 677 F.3d at 68.

Neither Plaintiffs' original opposition nor OIP's reply on the motion for reconsideration pointed to any evidence refuting this conclusion. Instead, it seized on a sentence in *Absolute*

*Activist* that a plaintiff can allege the existence of a domestic transaction by alleging that "the seller incurred irrevocable liability within the United States to deliver a security." *See* Opp. at 31 (quoting *Absolute Activist*, 677 F.3d at 68). Plaintiffs argued that Block was a party to the merger contract and therefore had an obligation to deliver Block Common Stock. *Id.* "That legal obligation and related irrevocable liability which Block incurred was in the U.S. where it is incorporated under Delaware law and headquartered in California." Opp. at 31. This argument mistakenly assumes that irrevocable liability occurs wherever a seller resides. And it fails given, among other reasons, the Second Circuit's clear statement in *Absolute Activist* that "a party's residency or citizenship is irrelevant to the location of a given transaction." *Absolute Activist*, 677 F.3d at 70; *see also In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 265 (2d Cir. 2016) (holding that the location of Americans who gained shares due to a merger "is not relevant to the question of whether the merger qualifies as a 'domestic purchase or sale'").

**3. Plaintiffs' Equivalence Argument Fails**

Plaintiffs also argued in their opposition to the motion to dismiss that Block CDIs are the equivalent to Block Common Stock "as the two are economically equivalent, have the same voting rights and right to receive dividends, and each can be converted into the other." Opp. at 29. Plaintiffs argued that because the two are functionally equivalent, and Block Common Stock is traded on the NYSE, transactions in Block CDI satisfy *Morrison*. *Id.* Plaintiffs point to two cases to support this conclusion: *Canoo Inc. v. DD Global Holdings Ltd.* and *Valentini v. Citigroup, Inc*. *Id.* at 29–30.

Supreme Court and Second Circuit precedent do not support adopting Plaintiffs' "equivalence theory." In *Morrison*, the Supreme Court held that plaintiffs could not file a U.S. securities claim challenging a transaction that occurred outside the United States. 561 U.S. at 273. Crucial to *Morrison*'s reasoning, the transaction involved Australian "ordinary shares" that

were not listed on the NYSE. *Id.* at 251, 273. Tellingly, the Supreme Court noted that "[t]here are listed on the [NYSE], however, [defendant's] American Depository Receipts (ADRs), which represent the right to receive a specified number of [its] Ordinary Shares." *Id.* at 251. Although ADRs were equivalent to a certain number of ordinary shares, this equivalence did not affect the Supreme Court's holding. This provides a strong indication that Plaintiffs' equivalence theory is inconsistent with *Morrison*. Further, the Second Circuit in *City of Pontiac* held that even if the same securities are cross listed on domestic and international exchanges, *Morrison* does not permit the application of U.S. Securities law unless the securities transaction occurred on a domestic exchange. *City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 180 (2d Cir. 2014) ("*City of Pontiac*"). If the existence of identical stocks listed domestically and internationally does not satisfy *Morrison*'s first prong, it follows that the domestic listing of an allegedly "equivalent" security does not either.[6]

Next, neither of the cases Plaintiffs rely on—*Canoo Inc.* or *Valentini*—change this conclusion. In *Canoo Inc. v. DD Global Holdings Ltd.*, a defendant sold the plaintiff's common stock listed on the NASDAQ in a November 2021 sale. 2023 WL 6162296, at *1. The defendant later acquired notional shares of the plaintiff's common stock under a participation note in a March 2022 acquisition. *Id.* The plaintiff then brought a claim for short swing profits

[6] *City of Pontiac* held that "mere *listing* on a domestic exchange is not sufficient to establish domesticity if the relevant securities transaction did not *occur* on a domestic exchange." *In re Petrobras Sec.*, 862 F.3d at 262 (discussing *City of Pontiac*). This seems to contradict the plain language of *Morrison* that U.S. securities law applies to "transactions in securities *listed* on domestic exchanges and domestic transactions in other securities." *Morrison*, 561 U.S. at 267 (emphasis added). This tension has led several courts to hold that—in cases involving stocks listed domestically and internationally—*City of Pontiac* applies only if the transaction involved significant foreign contacts. *See, e.g.*, *Canoo Inc. v. DD Glob. Holdings Ltd.*, No. 1:22-CV-03747 (MKV), 2023 WL 6162296, at *5 (S.D.N.Y. Sept. 21, 2023). That conundrum is not presented in this case, because Block CDI is not listed domestically. *See In re Petrobras Sec.,* 862 F.3d at 262 ("The Notes, however, do not trade on any domestic exchange. Therefore, to assert claims under federal securities law, Noteholders must show in some other manner that the Notes they hold were acquired in a 'domestic transaction.'"). Moreover, even if Block CDI was listed domestically, *City of Pontiac* would still apply because this case involves significant foreign contacts. *See infra* pt. 2.

under Section 16(b) of Exchange Act (15 U.S.C. § 78p(b)). *Id.* at *1–*2. The common stock that the defendant had held was "was at all relevant times" listed on the NASDAQ. *Id.* at *5. Moreover Section 16(b) treats a "derivative security as the functional equivalent to the underlying equity security," hence the court treated the defendant's holding the participation note as equivalent to holding the stock. *Id.* n.4. In the present case, OIP never received a security that was listed on a U.S. exchange. Furthermore, OIP's claim concerns Section 12(a), not Section 16(b), so the Court has no basis for treating the Block CDI as an equivalent to the Block Common Stock. And, even if OIP's claim arose under Section 16(b), the Court could not treat Block CDI as equivalent to Block Common Stock because Block CDI is not a derivative security.

Finally, Plaintiffs argue the Court should follow the approach of *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304 (S.D.N.Y. 2011). *Valentini* involved a transaction in which plaintiffs received notes that—while not listed on a domestic exchange—a noteholder could convert into securities that were listed on a domestic exchange. *Id.* at 323. The *Valentini* court determined that the plaintiff failed *Morrison*'s first prong but met the second prong because "the notes were . . . all *linked* to securities listed on a domestic exchange." *Id.* The court's decision purported to apply the so-called "economic reality" test, which a separate court in this district had applied to hold that a plaintiff lacked standing to challenge a swap agreement for German stocks. *Id.* (citing *Elliott Assocs. v. Porsche Auto. Holding SE*, 759 F. Supp. 2d 469, 474–76 (S.D.N.Y. 2010)).

The portion of *Valentini* applying an "economic reality" analysis is likely no longer good law. *Valentini* borrowed this analysis from the district court's decision in *Elliot*. *See Valentini*, 837 F. Supp. at 324 (commenting that it was applying the same reasoning from *Elliott*). But defendants in *Elliott* appealed the court's decision, and the Second Circuit expressly affirmed the

judgment in *Elliot* "on the basis of different reasoning." *Park Central Global Hub. Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 201 (2d Cir. 2014). Since then, no court in this district has analyzed *Morrison*'s second prong under the "economic reality" test.[7] And the Second Circuit has since decided *Absolute Activist*, which clarified how district courts should analyze *Morrison*'s second prong. Nothing in *Absolute Activist* suggests that an "economic reality"-type test is appropriate when analyzing *Morrison*'s second prong. And the Court will not apply it here.

In conclusion, the Court hereby GRANTS the motion for reconsideration solely to AMEND and AFFIRM the Opinion as set forth herein.[8] The Clerk of Court is respectfully directed to terminate Dkt. No. 103.

Dated: September 29, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

[7] At least one court has explicitly questioned the test's viability given the "presumption against extraterritoriality" that *Morrison* emphasized. *See In re Optimal U.S. Litig.*, 865 F. Supp. 2d 451, 456 n.28 (S.D.N.Y. 2012).

[8] The Court need not address OIP's arguments regarding the substance of its Section 12(a) claim, because any such arguments are rendered moot by the extraterritoriality issue addressed herein.